**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| AFSHIN ZARINEBAF and ZACHARY CHERNIK, individually and on behalf of a class of similarly situated individuals, | Case No. 1:18-cv-06951 |
| Plaintiff, | Honorable Virginia M. Kendall |
| v. | |
| CHAMPION PETFOODS USA INC. and CHAMPION PETFOODS LP, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. BACKGROUND AND SUMMARY OF FACTUAL ALLEGATIONS .......... 2

III. ARGUMENT .......... 5

A. Plaintiffs Fail to Properly Allege Any Claim Under the Pleading Requirements of *Iqbal* and *Twombly*. .......... 5

1. Plaintiffs cannot state a claim based on the alleged presence of heavy metals, BPA, or pentobarbital in Champion's dog food. .......... 5

2. None of Champion's statements on its packaging are misleading or otherwise actionable. .......... 8

B. Plaintiffs' Claims Sounding in Fraud Fail to State a Claim Under Rule 9(b). .......... 13

C. Plaintiffs' Unjust Enrichment Claim (Count VI) Should be Dismissed. .......... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................5

*Ass'n Benefit Servs. v. Caremark Rx, Inc.*,
493 F.3d 841 (7th Cir. 2007)....................15

*Avery v. State Farm Mut. Auto. Ins. Co.*,
835 N.E.2d 801 (Ill. 2005)....................12

*Baldwin v. Star Sci., Inc.*,
78 F. Supp. 3d 724 (N.D. Ill. 2015)....................14

*Barbara's Sales, Inc. v. Intel Corp.*,
879 N.E. 2d 910 (Ill. 2007)....................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................5

*Corwin v. Conn. Valley Arms, Inc.*,
74 F. Supp. 3d 883 (N.D. Ill. 2014)....................12

*Crichton v. Golden Rule Ins. Co.*,
576 F.3d 392 (7th Cir. 2009)....................15

*Lateef v. Pharmavite LLC*, No. 12 C 5611,
2013 WL 1499029 (N.D. Ill. Apr. 10, 2013)....................9

*Leppert v. Champion Petfoods USA Inc.*, No. 18 C 4347,
2019 WL 216616 (N.D. Ill. Jan. 16, 2019)....................6, 9, 14, 15

*Loeb v. Champion Petfoods USA, Inc., et al.*, Case No. 18-CV-494-JPS,
2019 WL 464140 (E.D. Wis. Feb. 6, 2019)....................6, 13

*Martin v. Wendy's Int'l., Inc.*,
183 F. Supp. 3d 925 (N.D. Ill. 2016)....................11

*McMahon v. Bumble Bee Foods LLC*, No. 14 C 03346,
2015 WL 7755428 (N.D. Ill. Dec. 2, 2015)....................15

*Rocha v. Rudd*,
826 F.3d 905 (7th Cir. 2016)....................13

*Rosenthal Collins Grp., LLC v. Trading Techs. Int'l, Inc.*, No. 05 C 4088,
2005 WL 3557947 (N.D. Ill. Dec. 26, 2005)....................9

*In re Sears Roebuck & Co. Tools Mktg. and Sales Practices Litig.*, No. MDL-1703,
2009 WL 937256 (N.D. Ill. Apr. 6, 2009)....................14

*Spector v. Mondelez Int'l, Inc.*, No. 15 C 4298,
2017 WL 4283711 (N.D. Ill. Sept. 27, 2017)....................9

*Spector v. Mondelez Int'l, Inc.*,
178 F. Supp. 3d 657 (N.D. Ill. 2016) ....................9

*Tylka v. Gerber Prods. Co.*, No. 96 C 1647,
1999 WL 495126 (N.D. Ill. July 1, 1999)....................11

*In re VTech Data Breach Litig.*, No. 15 CV 10889,
2018 WL 1863953 (N.D. Ill. Apr. 18, 2018) ....................14

*Yassan v. J.P. Morgan Chase & Co.*,
708 F.3d 963 (7th Cir. 2013) ....................3

**Other Authorities**

Fed. R. Civ. Pro. 9(b)....................13, 14, 15

Fed. R. Civ. Pro. 12(b)(6) ....................5

http://www.championpetfoods.com/wpcontent/themes/championpetfoods/res/rese
arch/_Champion-Petfoods-White-Paper-Heavy Metals.pdf....................3

https://www. medicalnewstoday.com/articles/221205.php ....................7

Order Denying Motion to Dismiss, *Reitman v. Champion Petfoods USA Inc.*,
No. CV-18-1736 (C.D. Cal. Feb. 6, 2019)....................8

# I. INTRODUCTION

Plaintiffs Afshin Zarinebaf ("Zarinebaf") and Zachary Chernik ("Chernik" and collectively with Zarinebaf, "Plaintiffs") fail to adequately plead a claim that Defendants Champion Petfoods USA Inc. and Champion Petfoods LP (collectively, "Champion") sold anything other than dog food consistent with its packaging. Even assuming the factual allegations are true, the Second Amended Complaint ("SAC") fails to adequately allege that any of Champion's statements are misleading, deceptive, or untrue. Nor does it allege any plausible facts demonstrating that Champion had a legal duty to disclose safe levels of naturally occurring heavy metals, alleged tiny levels of BPA, or the presence of unknown pentobarbital in certain discrete ingredient shipments received from a supplier and not alleged to be in any of dog food purchased by Plaintiffs.

This lawsuit falsely accuses Champion of misleading pet lovers by selling ORIJEN and ACANA dog food that is "contaminated" with heavy metals (arsenic, mercury, lead and cadmium), bisphenol-A ("BPA"), and pentobarbital, without disclosing it. Champion could not possibly have a legal duty to include on its product packaging, or to otherwise disclose, the presence of naturally occurring heavy metals that are far below all identified safety references for dog food. To require a manufacturer to disclose every element or molecule that may be in its product, even if they are below every known safety level available, would lead to absurd results. Further, Plaintiffs fail to plead any facts suggesting that Champion had knowledge that BPA was present in trace levels in its dog food, or that Champion had a legal obligation to disclose trace levels of BPA in its dog food. Finally, Plaintiffs do not even plead that any of the dog food they purchased contained pentobarbital, so their haphazard allegations relating to pentobarbital in a shipment of beef tallow (fat) from a Champion supplier unrelated to Plaintiffs' own purchases cannot support a claim.

Separately, Plaintiffs now include allegations that Champion's dog food includes ingredients that are "non-regional" and "non-fresh." However, these allegations can be dispatched

because Champion's packaging reflects that Champion does not represent that all of its ingredients are regional or fresh. And, Plaintiffs fail to even identify which ingredients are "non-regional" and "non-fresh" and in turn whether those ingredients were present in the diets they purchased. Such conclusory allegations cannot support a claim.

At bottom, Plaintiffs have not alleged adequate facts demonstrating that they purchased any of Champion's dog food with any misrepresentations. Under *Twombly* and *Iqbal*, conclusory and implausible allegations of the type made here fall far short of adequately pleading a claim for relief.

## II. BACKGROUND AND SUMMARY OF FACTUAL ALLEGATIONS

Champion manufactures, markets, advertises, labels, distributes, and sells pet food under the brand names ORIJEN and ACANA throughout the United States. SAC at ¶ 2. Chernik alleges that he purchased, from April 2006 to July 2017, ORIJEN Six Fish, ORIJEN Adult, ORIJEN Regional Red, and a variety of ACANA products from a retailer, and not from Champion. *Id.* at ¶ 19. Zarinebaf alleges that he purchased, from July 2013 to September 2018, ORIJEN Six Fish, ORIJEN Regional Red, and ACANA Singles Lamb and Apple diets from retail stores, and not from Champion. *Id.* at ¶ 20. Both Plaintiffs purportedly saw and relied on "nutritional claims" on the packaging prior to their purchases. *Id.* at ¶¶ 19, 20.

According to Plaintiffs, Champion markets its pet food as: (i) "Biologically Appropriate"; (ii) "Fresh Regional Ingredients" and "Delivered Daily"; (iii) "Never Outsourced"; (iv) "Nourish[ing] as Nature Intended"; (v) "Delivering Nutrients Naturally"; (vi) "Made with Fresh and Natural Ingredients"; (vii) "Premium Meat and Fish Ingredients"; and (viii) "Ingredients deemed fit for human consumption." *Id.* at ¶ 70. Plaintiffs allege that Champion's statements are misleading due to the purported presence of heavy metals, BPA, pentobarbital, toxins, non-regional and non-fresh ingredients, and/or unnatural or other ingredients in its dog food. *Id.* at ¶¶

19, 20.

With respect to heavy metals and BPA, Plaintiffs conclude that the statements are misleading based on a chart of testing data listing levels of arsenic, cadmium, mercury, lead, and BPA. *Id.* at ¶ 7. Plaintiffs do not include test data for pentobarbital. *See id.*

Plaintiffs' unverified data, however, demonstrates that the trace levels of naturally occurring heavy metals allegedly in Champion's dog foods are all far below the applicable safety levels set by the FDA, NRC, and the EU. In May 2017, Champion published a White Paper analyzing ORIJEN and ACANA foods in comparison to pet food safety standards (cited in paragraph 101 of the SAC and attached hereto as Exhibit A for ease of reference).[1] Specifically, Champion analyzed the amount of arsenic, cadmium, lead, and mercury in its ACANA and ORIJEN dog and cat foods. *See* Ex. A. The White Paper sets forth the following chart, which shows that the levels of heavy metals are far below the maximum tolerable limits ("MTLs") utilized by the FDA and the NRC:

| HEAVY METAL | ACANA & ORIJEN DOG FOODS | | NRC/FDA |
|---|---|---|---|
| | AVERAGE (mg/kg) | STANDARD DEVIATION (mg/kg) | Maximum Tolerable Limits (mg/kg) |
| Arsenic | 0.89 | 1.05 | 12.50 |
| Cadmium | 0.09 | 0.09 | 10.00 |
| Lead | 0.23 | 0.15 | 10.00 |
| Mercury | 0.02 | 0.02 | 0.27 |

Ex. A at 2. In short, this test data demonstrates that the levels of naturally occurring heavy metals are mere fractions of the permissible amounts: (1) the average arsenic level is 7% of the MTL set forth by the FDA; (2) the average cadmium level is 0.9% of the MTL set forth by the NRC; (3)

[1] Plaintiffs cite the White Paper in their SAC (¶¶ 102-04, n.27, http://www.championpetfoods.com/wpcontent/themes/championpetfoods/res/research/ Champion-Petfoods-White-Paper-Heavy Metals.pdf), as well as European Union regulations and standards (¶ 64) and as such, they are incorporated by reference in the SAC and should be considered for the purposes of this motion to dismiss. *See Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975 (7th Cir. 2013).

the average lead level is 2% of the MTL set forth by the NRC; and (4) the average mercury level is 7% of the MTL set forth by the FDA based on the NRC recommendations. *Id.*

Plaintiffs next allege that the levels of naturally occurring arsenic in certain of Champion's pet foods exceed EU standards. SAC at ¶ 64. The EU provides MTLs for certain substances in animal feed, such as lead, arsenic, mercury and cadmium[2] (*id.* and for ease of reference attached hereto as Exhibit B). Specifically, Plaintiffs allege that, according to EU limits, arsenic must not exceed 2 mg/kg[3] (*id.*), but they fail to recognize the distinction the EU draws between inorganic and organic arsenic. The EU has set a 2 mg/kg limit for *inorganic* arsenic, but a 10 mg/kg limit for *total* arsenic (organic plus inorganic). *See* Ex. B at 8. The SAC sets forth no test results for inorganic arsenic.

With respect to BPA, Plaintiffs do not allege any level or standard at which BPA would pose a danger to dogs giving rise to a duty to disclose, or to plead any facts suggesting that Champion had knowledge that BPA was present in trace levels in its dog food. And finally, with respect to pentobarbital, Plaintiffs allege that Champion was notified by its beef tallow (fat) supplier, JBS, on May 8, 2018 that Champion was sold beef tallow which had tested positive for pentobarbital. SAC at ¶ 48. Plaintiffs conclude that the beef tallow was used to manufacture thousands of pounds of dog food. *Id*. Nowhere do Plaintiffs allege that they purchased any of the dog food, or even the same diets, that allegedly contained beef tallow contaminated with pentobarbital.

---

[2] Plaintiffs do not allege that Champion's dog food exceeds the EU MTLs for lead, mercury, or cadmium.

[3] 2 mg/kg is equivalent to 2 parts per million (ppm). Paragraph 7 states the test results in µg/kg, which is parts per billion (ppb). Therefore, 1 mg/kg is the equivalent of 1,000 µg/kg.

## III. ARGUMENT

### A. Plaintiffs Fail to Properly Allege Any Claim Under the Pleading Requirements of *Iqbal* and *Twombly*.

For the reasons set forth below, Plaintiffs have failed to plead a plausible cause of action against Champion as none of Champion's representations are deceptive.

#### 1. Plaintiffs cannot state a claim based on the alleged presence of heavy metals, BPA, or pentobarbital in Champion's dog food.

In the SAC, Plaintiffs allege that (i) Champion's dog foods contain levels of heavy metals and BPA making them "contaminated," such that various Champion advertising statements are misleading; and (ii) Champion had a duty to disclose the trace amounts of naturally occurring heavy metals in its food, the presence of BPA, and/or pentobarbital in beef fat (tallow) supplied by JBS. Even if the White Paper was not published in May 2017 (and incorporated into the SAC), the allegations here as to the alleged "contamination" of Champion's pet food, as applied to its advertising statements, are speculative. They do not nudge Plaintiffs' "claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (setting forth standard for motion to dismiss under Rule 12(b)(6)); *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

Focusing first on the heavy metals (which are not alleged to be anything other than naturally occurring in some of the ingredients), the initial complaint alleged no standard or baseline for the level of heavy metals that would be unsafe for pet food. Plaintiffs tried to correct this deficiency in the SAC by relying upon limits set by the EU, but their attempt falls short. *See* SAC at ¶¶ 66-68. Plaintiffs incorrectly allege that, according to EU limits, arsenic must not exceed 2 mg/kg. *Id*. In reality, the EU set a 2 mg/kg limit only for ***inorganic*** arsenic, but a 10 mg/kg limit for ***total*** arsenic. *See* Ex. B at 8. Plaintiffs do not allege that Champion's dog food contains inorganic arsenic at or above 2 mg/kg. Nor could they, because as reflected in the incorporated White Paper, "[s]ea plant and fish ingredients are the source of most arsenic found in animal food

including pet food. The majority of arsenic found in these sources is organic, and virtually non-toxic." Ex. A at 2. Applying the correct EU standard for arsenic to the alleged data in the SAC (which is for total arsenic), it is indisputable that Champion's pet food falls well within the EU limits. *See* SAC at ¶ 7; Ex. B at 8. And, without pleading a level of inorganic arsenic contained in Champion's dog food, the SAC does not plausibly plead that the EU standard was violated.

Additionally, as noted *supra* at 2-3, the third-party testing reflected in the White Paper demonstrates that the average levels of cadmium, mercury, and lead in Champion's pet food are far below the standards set by the FDA, NRC, and the EU. *See* Ex. A at 2; Ex. B at 9-11.

The mere presence of naturally occurring elements cannot be assumed to pose a health risk when the alleged levels are well below the EU standards relied on by Plaintiffs in the SAC. Indeed, this Court in *Leppert v. Champion Petfoods USA Inc.* held that "the mere presence of heavy metals and BPA in the Orijen and Acana brands renders these products 'unsafe' is mere speculation." No. 18 C 4347, 2019 WL 216616, at *6 (N.D. Ill. Jan. 16, 2019). Further, in a related case, *Loeb v. Champion Petfoods USA, Inc., et al.*, the court held that any contention by a plaintiff that Champion's packaging "is misleadingly advertised as healthy because of the mere presence of *any* heavy metals" is "absurd." Case No. 18-CV-494-JPS, 2019 WL 464140, at *6 n. 7 (E.D. Wis. Feb. 6, 2019). This Court should not wait for Summary Judgment. Plaintiffs have not alleged, nor could they, that the levels of heavy metals exceed any known baseline, reference point, guideline, or standard. Thus, just as in *Loeb*, Plaintiffs' allegations that Champion misrepresented the quality of its food due to the presence of heavy metals at safe levels is absurd.

Turning to BPA, the SAC fails to allege a level at which BPA would be unsafe for pets or exceeds any known baseline, reference point, guideline, or standard. Again, it is implausible to allege that Champion's dog food is misleadingly advertised due to the mere presence of BPA

without tying that presence to anything whatsoever. Beyond that fatal flaw, the SAC also acknowledges that Champion had not performed BPA testing and was assured by its packaging supplier that the packaging did not contain BPA. SAC at ¶ 104. Nevertheless, contrary to their own allegations, Plaintiffs nakedly allege that Champion "knew that their representations about the [dog food] were false in that the [dog food] contain or had a high risk of containing levels of heavy metals, pentobarbital, toxins, BPA, non-regional and non-fresh ingredients, and/or unnatural or other ingredients." *Id.* at ¶ 144. On its face, this allegation is conclusory, implausible, and not supported by Plaintiffs' own factual allegations. The SAC thus fails to plausibly allege that Champion knew about BPA in its pet food, or that such BPA – at the trace levels alleged – would pose a health risk to pets. Ultimately, all the SAC alleges as to BPA is that, unbeknownst to Champion, there was a small amount of BPA detected in some alleged testing of some of Champion's diets by some unidentified entity according to some unidentified technique that produced some result other than zero in some unidentified number of samples. Therefore, just like the heavy metal allegations, Plaintiffs' allegations that Champion misrepresented the quality of its food due to the presence of BPA is not adequate to state any claim.[4]

Finally, Plaintiffs latch on to the fact that one of Champion's suppliers notified Champion in May 2018 after-the-fact that it had shipped Champion beef tallow (fat) containing pentobarbital. Plaintiffs never plead, however, that they purchased any dog food containing pentobarbital, or that they even purchased the diets that allegedly contained pentobarbital.[5] Nor have Plaintiffs set forth

---

[4] To the extent Plaintiffs assert the tiny amount of BPA in Champion's dog food makes certain representations false because it is not natural, Plaintiffs own source relied on in the SAC acknowledges that "BPA is present all around us in the environment." *See* https://www.medicalnewstoday.com/articles/221205.php (cited in SAC ¶ at 53 n. 21) (last visited March 2, 2019). Plaintiffs do not and cannot allege that Champion included BPA as an ingredient.

[5] In fact, of all the diets purchased by Plaintiffs, only the ORIJEN Regional Red diet has beef fat (tallow) in it. SAC at ¶¶ 19-20. Nevertheless, Plaintiffs have not pled that the Regional Red diet

any testing showing that pentobarbital was present in detectable amounts in any Champion final product. In contrast to what they alleged as to heavy metals and BPA, Plaintiffs do not allege test results showing a detectable level of pentobarbital in the finished products. This is fatal to the SAC pentobarbital-based claims because, as Plaintiffs pled, it is only "[t]he detection of pentobarbital in pet food [that] renders the product adulterated." *Id.* at ¶ 45. As a result, Plaintiffs' pentobarbital allegations also cannot support a claim under any of Plaintiffs' counts in the SAC.[6]

**2. None of Champion's statements on its packaging are misleading or otherwise actionable.**

Throughout the body of the SAC, and in the causes of action, Plaintiffs allege that nine different statements purportedly made by Champion are misleading or deceptive for a variety of reasons. However, after a review of each statement, it becomes clear that the statements are not deceptive, nonactionable puffery, or otherwise not attributed to Champion. For these reasons, Plaintiffs have failed to state any claim against Champion.

**"Biologically Appropriate"**

In the SAC, Plaintiffs contend Champion's "Biologically Appropriate" trademarked philosophy is misleading and requires additional disclosures because a reasonable consumer "would not understand that Champion's dog food contained (or had a risk of containing) heavy metals, toxins, pentobarbital, BPA, non-regional and non-fresh ingredients, and/or unnatural or other ingredients." SAC at ¶ 56. However, Champion's "Biologically Appropriate" philosophy is

---

purchased by Plaintiffs contained pentobarbital. Further, Chernik stopped purchasing Champion's dog food long before Champion received the contaminated lot from JBS. Therefore, the pentobarbital allegations are not relevant to his claims.

[6] Champion acknowledges that in a recent order in a related case, the court held that the plaintiffs had stated claims premised on similar allegations. Champion respectfully states that the court did not properly apply the *Iqbal* and *Twombly* standard, the causes of action and applicable law were different, and the order is not binding and is not persuasive. Order Denying Motion to Dismiss, *Reitman v. Champion Petfoods USA Inc.*, No. CV-18-1736 (C.D. Cal. Feb. 6, 2019) [D.E. 133].

not an actionable representation because it is "not specific, not concrete, not measurable, and therefore [is] puffery." *Rosenthal Collins Grp., LLC v. Trading Techs. Int'l, Inc.*, No. 05 C 4088, 2005 WL 3557947, at *10 (N.D. Ill. Dec. 26, 2005). As recognized by the SAC, "Biologically Appropriate" is Champion's "mission" or philosophy. SAC at ¶ 56. As such, Champion's "Biologically Appropriate" philosophy has "no objective measure from which a reasonable person can gauge [its] truth or falsity." *Lateef v. Pharmavite LLC*, No. 12 C 5611, 2013 WL 1499029, at *3 (N.D. Ill. Apr. 10, 2013). And, therefore, Champion's Biologically Appropriate philosophy constitutes puffery and is otherwise not actionable. *Id*. (holding statements such as "supporting healthy lifestyles" to be "general goals and platitudes" which "cannot serve as the basis of [plaintiff's] ICFA claim"); *Spector v. Mondelez Int'l, Inc.*, No. 15 C 4298, 2017 WL 4283711, at *2 (N.D. Ill. Sept. 27, 2017) (dismissing ICFA claim based on "the 4 hours of nutritious steady energy claim" as nonactionable puffery because the statement "does not imply there is substantiation for it").[7]

As Champion's packaging explains, "Biologically Appropriate" means that Champion's diets "mirror the richness, freshness, and variety of WholePrey meats that dogs are evolved to eat." *See* Packaging of ORIJEN Original attached hereto as Exhibit C.[8] Plaintiffs have not pled any facts to suggest that Champion's dog food does not contain the WholePrey meats alluded to in this description. Thus, even if Champion's "Biologically Appropriate" philosophy was actionable,

---

[7] Champion recognizes that in a related case, *Leppert*, 2019 WL 216616 at *7-8, the Court ruled that the "Biologically Appropriate" statement was a disputable fact. However, the Court did not have available to it the entirety of the packaging, as it does here, which is necessary to give the context for the Biologically Appropriate philosophy as an opinion of Champion's.

[8] Champion's packaging in its entirety is properly considered on a Motion to Dismiss because Plaintiffs include images of portions of the packaging are included throughout the SAC. *See* SAC at ¶¶ 5, 25, 56, 57, 58, 59, 60, 61. *See* *Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657, 661 (N.D. Ill. 2016).

which it is not, Plaintiffs have not pled facts demonstrating that it is misleading or untrue.

**"Fresh Regional Ingredients," "Delivered Daily," and "Made with Fresh and Natural Ingredients"**

As an initial matter, Plaintiffs do not allege where Champion marketed its food as being "Made with Fresh and Natural Ingredients," and depict no image of a bag with such a statement. On this basis, this statement cannot be utilized to state a claim. Plaintiffs further contend that the statements "Fresh Regional Ingredients" and "Delivered Daily" are misleading or require additional disclosures because Champion's dog food allegedly contains ingredients that are imported, frozen, stored, adulterated, and/or contain heavy metals, BPA, or unidentified toxins. SAC at ¶ 57. To start, Champion does not represent that all of its ingredients are fresh, regional, or delivered daily. For example, the front of Champion's ORIJEN Original packaging states that its free-run chicken and turkey, wild-caught fish and nest-laid eggs are fresh regional ingredients delivered daily. *Id.* (image). Moreover, Plaintiffs fail to identify which ingredients were falsely marketed by Champion as being fresh, regional, or delivered daily. On this basis alone, Plaintiffs have not adequately pled that the statements are misleading. Second, with regard to ingredients that are frozen or stored, Champion discloses on the front of its packaging that the dog food contains "freeze-dried liver," and "raw" ingredients,[9] which includes frozen ingredients by definition. *See* Ex. C. Therefore, the statements cannot be misleading on this basis either. Finally, whether an ingredient is fresh, regional, or delivered daily is not affected in any way by whether the ingredient contains some level of heavy metals, BPA, or "toxins." For these reasons, the statements "Fresh Regional Ingredients" and "Delivered Daily" do not support a claim.

[9] The term "raw" is defined by AAFCO as "food in it is natural or crude state not having been subject to heat in the course of preparation as food." *See* AAFCO definition of "raw" attached hereto as Exhibit D.

**"Never Outsourced"**

Plaintiffs allege that Champion's "Never Outsourced" statement is misleading because its pet food includes "ingredients like meals and tallow that were not manufactured in [Champion's] Dogstar Kitchens." *Id.* at ¶ 58. This contention is illogical. None of Champion's ingredients are "manufactured in Dogstar Kitchens." Champion is not an ingredient supplier and must purchase its ingredients from a supplier. The "Never Outsourced" statement plainly refers to the finished foods, not ingredients. On its packaging, Champion explains "Never Outsourced" means "[w]e don't make foods for other companies and we don't allow our foods to be made by anyone else." *See* Ex. C. Plaintiffs have not pled any facts suggesting that Champion made foods for other companies or had other companies make their finished pet food. Thus, Plaintiffs have failed to plead any facts to suggest that the "Never Outsourced" statement is deceptive in any way.

**"Nourish as Nature Intended" and "Delivering Nutrients Naturally"**

Plaintiffs next take issue with ORIJEN's slogan, "Nourish as Nature Intended," as well as the statement "Delivering Nutrients Naturally." Plaintiffs contend the slogan and statement are misleading due to the inclusion or risk of inclusion of BPA or pentobarbital in the food. SAC at ¶ 60. However, ORIJEN's slogan, "Nourish as Nature Intended," constitutes puffery because it is "a general claim of superiority so vague as to be incapable of being proved or disproved." *Martin v. Wendy's Int'l., Inc.*, 183 F. Supp. 3d 925, 934 (N.D. Ill. 2016); *Tylka v. Gerber Prods. Co.*, No. 96 C 1647, 1999 WL 495126, at *8 (N.D. Ill. July 1, 1999) (holding statements such as "optimum nutrition," "nutritionally, you can't buy a better food than Gerber," and the "most wholesome nutritious safe foods you can buy anywhere in the world" to be puffery). As such, whether Champion's dog food is what "nature intended" is incapable of being proven and not actionable. Likewise, "Delivering Nutrients Naturally," is puffery under Illinois law. *Barbara's Sales, Inc. v.*

*Intel Corp.*, 879 N.E. 2d 910, 926 (Ill. 2007) ("Puffing denotes the exaggerations reasonably expected of a seller as to the degree of quality of his or her product, the truth or falsity of which cannot be precisely determined."). Further, even if the "Delivering Nutrients Naturally" statement were actionable, Plaintiffs have not alleged facts that it is untrue. Indeed, Plaintiffs do not allege that Champion marketed its dog food as only including natural ingredients. And, BPA and pentobarbital are not "ingredients." Therefore, even if this statement is actionable, the alleged inclusion of unnatural ingredients does not render this statement false or misleading.

**"Premium Meat and Fish Ingredients"**

In the SAC, Plaintiffs do not allege where Champion marketed its food as containing "Premium Meat and Fish Ingredients" and depict no image of a bag with such a statement. Nevertheless, they use this statement to support many of their claims. *See* SAC at ¶¶ 70, 72, 124, 137, 142, 151. However, because Plaintiffs fail to identify where Champion made this statement, they cannot rely on it to state a claim. And, even if they had identified where Champion represented that its dog food contained "Premium Meat and Fish Ingredients," the statement is puffery and not actionable. *See* *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 847 (Ill. 2005) ("Describing a product as 'quality' or as having 'high performance criteria' are the types of subjective characterizations that Illinois courts have repeatedly held to be mere puffing."); *Corwin v. Conn. Valley Arms, Inc.*, 74 F. Supp. 3d 883, 892 (N.D. Ill. 2014) (holding representations that bullets were "perfect with powder or pellet, premium, and easy to load" to be puffery).

**"Ingredients deemed fit for human consumption" prior to inclusion in our foods**

Plaintiffs allege that the statement "ingredients deemed fit for human consumption" is misleading and requires further disclosures because "[r]easonable consumers, like Plaintiffs, would not understand that the [dog foods] were made from ingredients that had a risk of containing

or did in fact contain BPA, pentobarbital, and/or had potential for a cross-contamination with euthanized horse meat." SAC at ¶ 61. Plaintiffs have not pled facts to support these conclusions. Indeed, on the packaging, Champion specifically represents which ingredients are deemed fit for human consumption prior to inclusion. *Id*. But Plaintiffs have not alleged that any ingredient represented as being deemed fit for human consumption contained pentobarbital (or BPA for that matter). Indeed, none of the packaging describes the ingredient beef tallow as fit for human consumption. Further, as to BPA, as noted *supra* at 6-7, Plaintiffs do not identify any baseline or standard for human food that Champion is violating. For these reasons, Plaintiffs have not pled facts to state any claim based on these statements being deceptive or misleading.

**B. Plaintiffs' Claims Sounding in Fraud Fail to State a Claim Under Rule 9(b).**

In addition to the foregoing reasons, Plaintiffs' claims for fraud (Count III), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Count IV), and fraud by omission (Count VII) fail because Plaintiffs do not plead the level of detail required to state a claim sounding in fraud. Indeed, each of these claims must satisfy the heightened pleading standard pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. *See Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) (holding plaintiff's fraud claim "must be dismissed because his allegations fall far short of the heightened pleading standards required under Rule 9(b)").

With respect to the heavy metals and BPA allegations, Plaintiffs fail to allege what levels of heavy metals or BPA would be considered unsafe for pets. And, the assertion that the *mere presence* of heavy metals renders Champion's representations misleading is absurd. *See Loeb*, 2019 WL 464140 at *6 n. 7. As to the allegations of the presence of pentobarbital, Plaintiffs have alleged no testing of Champion's finished food that shows the presence of pentobarbital or even allege that they purchased any products containing pentobarbital. Such conclusory allegations do not satisfy the requirements of Rule 9(b). Finally, Plaintiffs fail to identify which specific

representation induced Plaintiffs to purchase Champion's dog food products. While Plaintiffs identify a host of representations that they contend are false (SAC at ¶¶ 142, 151), they do not state which of the representations they saw and caused them to purchase Champion's dog food.[10] Instead, they only state, in identical fashion, that they saw the "nutritional claims" on the packaging which they relied on. *Id*. at ¶¶ 19-20. Champion is left to guess as to what "nutritional claims" Plaintiffs are referring to. This is fatal to their ICFA and fraud claims because, "[t]o satisfy Rule 9(b), Plaintiff[s] must identify a specific misrepresentation that [they] saw, the date [they] saw it, and where [they] saw it." *Baldwin v. Star Scientific, Inc.*, 78 F. Supp. 3d 724, 738 (N.D. Ill. 2015); *In re Sears Roebuck & Co. Tools Mktg. and Sales Practices Litig.*, No. MDL-1703, 2009 WL 937256, at *6 (N.D. Ill. Apr. 6, 2009) ("Although specific advertisements are mentioned in the section of the complaint titled 'Substantive Allegations,' these plaintiffs do not allege that they saw any of these specific advertisements. Their failure to identify the misrepresentation they saw and relied upon is fatal to their claim."); *In re VTech Data Breach Litig.*, No. 15 CV 10889, 2018 WL 1863953, at *7 (N.D. Ill. Apr. 18, 2018) (dismissing plaintiffs' ICFA claim where plaintiffs failed to allege "what specific representations each plaintiff saw and when and where they saw them"). Additionally, Plaintiffs' failure to allege the specific representations relied upon is even more pronounced when considering Chernik allegedly purchased Champion dog food over an eleven-year period. SAC at ¶ 19. Undoubtedly, all of the representations asserted did not appear on Champion's packaging for all eleven years. Plaintiffs do not allege when these representations

---

[10] Champion recognizes that in the related *Leppert* case, "the Court reasonably assume[d] the nutritional claims [plaintiff] saw and relied upon included those describing the cat food as being 'biologically appropriate' and made from 'fresh, regional ingredients.'" 2019 WL 216616 at *11. However, in this case, Plaintiffs contend far more statements on the packaging are deceptive (*Compare* *Leppert* Complaint [D.E. 001] at ¶¶ 125, 155 *with* SAC at ¶¶ 142, 151), and Champion has cited additional authority for the proposition that Plaintiffs must specifically identify the statements they saw that induced them to purchase Champion's dog food.

were made. Because Plaintiffs have failed to satisfy the heightened pleading requirements of Rule 9(b), Counts III, IV, and VII must be dismissed.

Additionally, Plaintiffs' fraudulent omission claim must also fail because Plaintiffs have not pled facts establishing that Champion owed them a duty to disclose information concerning the levels of heavy metals, BPA, and/or pentobarbital in its dog food. A duty to disclose generally arises only when there is a fiduciary or other relationship of trust or confidence or where a party "makes an affirmative statement that it passes off as the whole truth while omitting material facts." *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 398 (7th Cir. 2009) (affirming dismissal of fraud claim where "there were no allegations giving rise to a duty to disclose"). Plaintiffs merely allege that Champion was in a "superior position to know" facts about their products and the ingredients therein and, apparently on that basis alone, had a duty to disclose the levels of heavy metals, BPA, and/or pentobarbital in its products. SAC at ¶ 169. However, this conclusory allegation relying entirely on asymmetric information does not give rise to a duty to disclose. *Leppert*, 2019 WL 216616 at *11 (dismissing fraudulent concealment claim based on similar allegations).[11]

**C. Plaintiffs' Unjust Enrichment Claim (Count VI) Should be Dismissed.**

Count VI attempts to assert a claim against Champion for unjust enrichment. Because the unjust enrichment claim is based on the same alleged misconduct underlying the fraud counts, *see* SAC at ¶¶ 176-181, the resolution of the fraud claims, *supra* at 13-15, is also dispositive of the unjust enrichment claim. *See* *Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007); *McMahon v. Bumble Bee Foods LLC*, No. 14 C 03346, 2015 WL 7755428, at *6 (N.D. Ill. Dec. 2, 2015).

[11] Plaintiffs go so far as to assert that Champion had a duty to ensure there were "no chemicals" in its dog food. SAC at ¶ 72. This allegation defies logic, as chemicals are present in all foods and all things.

Dated: March 6, 2019

Respectfully submitted,

/s/ Francis A. Citera
Francis A. Citera (ARDC # 6185263)
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: (312) 456-8400
Facsimile: (312) 456-8435
Email: citeraf@gtlaw.com

/s/ David A. Coulson
David A. Coulson (ARDC #6199911)
GREENBERG TRAURIG, P.A.
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0754
Facsimile: (305) 579-0717
Email: coulsond@gtlaw.com

***Attorneys for Defendants***
*Champion Petfoods USA Inc. and*
*Champion Petfoods LP*

## CERTIFICATE OF SERVICE

I, Francis A. Citera, hereby certify that on March 6, 2019, I caused to be electronically filed the foregoing **Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/ Francis A. Citera
FRANCIS A. CITERA