IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AFSHIN ZARINEBAF and ZACHARY CHER-NIK, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | No. 18 C 6951 |
| *Plaintiffs*, | ) ) | Hon. Virginia M. Kendall |
| v. | ) ) | |
| CHAMPION PETFOODS USA INC. and CHAMPION PETFOODS LP, | ) ) ) | |
| *Defendants*. | ) ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Afshin Zarinebaf and Zachary Chernik filed a class action suit against Defendants Champion Petfoods USA, Inc. and Champion Petfoods LP on behalf of a putative class of Illinois consumers. (Dkt. 26.) The Complaint alleges common law fraud (Count III), violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/1, *et seq*. (Count IV), fraudulent omission (Count V), and unjust enrichment (Count VI).[1] (*Id*.) Defendants moved to dismiss all claims for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6), and all claims sounding in fraud (Counts III, IV, and V) for failure to state a claim with particularity as required by Federal Rule of Civil Procedure 9(b). (Dkt 34.) For the following reasons, Defendants' motion to dismiss is granted in part and denied in part.

## <u>BACKGROUND</u>

The following facts are based on the allegations in the Complaint as well as the May 2017 White Paper referred to in and attached (via an embedded link) to the Complaint and attached to

---

[1] The Complaint also contains claims for negligent misrepresentation (Count I) and negligence (Count II), which Plaintiffs voluntarily dismissed. (Dkt. 33.)

Defendants' Motion to Dismiss. (Dkt. 26; Dkt. 34-1); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 809 (7th Cir. 2018) ("A court deciding a motion to dismiss under Rule 12(b)(6) may consider documents that are attached to a complaint or that are central to the complaint, even if not physically attached to it."). The Court accepts all well-pleaded facts in the Complaint as true for purposes of the motion to dismiss and draws all inferences in Plaintiffs' favor. *Cmty. Bank*, 887 F.3d at 811.

Defendants manufacture, market, advertise, label, distribute, and sell pet food under the brand names Acana and Orijen throughout the United States, including in this District. (Dkt. 26 ¶ 2.) Defendants market the Acana and Orijen brands as being "Biologically Appropriate" and free of anything "nature did not intend for your dog to eat." (*Id.* ¶¶ 10, 56.) Defendants state that the brands "nourish as nature intended" and "deliver[] nutrients naturally." (*Id.* ¶¶ 59-60.) Defendants also state that the brands are made with "natural and not synthetic" nutrients and with "fresh and natural" ingredients "deemed fit for human consumption." (*Id.* ¶¶ 11-12, 60-61.) Defendants also advertise the brands as being "Never Outsourced" and made from fresh and regional ingredients delivered daily. (*Id.* ¶¶ 14-15, 57-58.) Defendants charge a premium for this purportedly higher-quality dog food. (*Id.* ¶ 3.)

On their website, Defendants advertise that they make their pet foods using "state-of-the art fresh food processing technologies," in their "own kitchen, where [they] oversee every detail of food preparation—from where [their] ingredients come from, to every cooking, quality and food safety process." (*Id.* ¶ 73.) Defendants state that their "[s]tandards . . . rival the human food processing industry for authenticity, nutritional integrity, and food safety." (*Id.*) Since 2016, Defendants have produced all Acana and Orijen pet foods sold in the United States in their DogStar

2

Kitchens facility in Bowling Green, Kentucky. (*Id.* ¶ 64.) Defendants tout this facility as having "the most advanced pet food kitchens on earth, with standards that rival the human food processing industry" and meet the EU's standard for pet food, which are stricter than those set by the FDA or Canadian Food Inspection Agency. (*Id.* ¶¶ 66, 88.)

Nowhere on the packaging or in any advertising or marketing do Defendants disclose that the dog foods contain (or have a high risk of containing) heavy metals, pentobarbital, toxins, BPA, non-regional and non-fresh ingredients, or unnatural or other ingredients that do not conform to the dog foods' packaging or advertising. (*Id.* ¶ 6) Specifically, the dog foods are known to contain—presumably based on third-party scientific testing[2]—the following levels of heavy metals and BPA, which are "all known to pose health risks to humans and animals, including dogs:"

| Product Name | Arsenic (ug/kg) | BPA (ug/kg) | Cadmium (ug/kg) | Mercury (ug/kg) | Lead (ug/kg) |
|---|---|---|---|---|---|
| Acana Regionals Wild Atlantic New England | 3256.40 | 32.50 | 113.00 | 51.20 | 249.30 |
| Orijen Six Fish | 3169.80 | 39.50 | 200.50 | 54.90 | 38.70 |
| Orijen Original Chicken | 907.60 | 0.00 | 93.20 | 10.80 | 489.80 |
| Orijen Regional Red Angus Beef, Boar, Goat, Lamb, Pork | 849.40 | 43.60 | 123.10 | 21.40 | 167.70 |
| Acana Regionals Meadowland | 846.40 | 82.70 | 37.50 | 8.70 | 489.00 |
| Acana Regionals Appalachian Ranch | 358.20 | 82.90 | 32.50 | 14.90 | 336.70 |
| Acana Regionals Grasslands | 262.80 | 0.00 | 30.30 | 9.60 | 305.00 |
| Orijen Regional Red Angus Beef, Ranch Raised Lamb | 1066.50 | 37.70 | 62.10 | 21.70 | 138.50 |
| Acana Singles Duck & Pear | 523.40 | 102.70 | 30.90 | 15.40 | 537.40 |
| Acana Singles Lamb & Apple | 401.20 | 73.20 | 35.00 | 3.20 | 423.40 |
| Acana Heritage Free-Run | 292.90 | 62.20 | 27.80 | 3.30 | 290.20 |

[2] Plaintiffs do not specifically cite the source of this data in Paragraph 7 but state generally later in the Complaint that "after conducting third-party scientific testing, it is clear that the Contaminated Dog Foods do in fact contain levels of both heavy metals and/or BPA." (*Id.* ¶ 85.)

| | | | | | |
|---|---|---|---|---|---|
| Acana Heritage Freshwater | 977.70 | 0.00 | 56.20 | 27.40 | 486.80 |
| Orijen Tundra Freeze Dried | 23.13 | 6.02 | 27.64 | 5.35 | 12.26 |
| Orijen Adult Dog Freeze Dried | 23.21 | 13.41 | 7.74 | 9.45 | 7.33 |
| Orijen Regional Red Freeze Dried | 102.66 | 0.00 | 23.40 | 19.60 | 16.85 |
| Orijen Six Fish Wild-Caught | 2173.90 | 39.70 | 92.20 | 58.80 | 55.10 |
| Orijen Tundra Goat, Venison | 1628.50 | 40.30 | 134.50 | 43.60 | 471.80 |
| Orijen Grain Free Puppy | 791.20 | 32.20 | 87.20 | 12.20 | 490.80 |
| Orijen Singles Mackerel | 1510.70 | 40.10 | 112.20 | 29.60 | 251.10 |
| Acana Heritage Meats | 384.80 | 53.80 | 24.40 | 6.40 | 1731.90 |
| Acana Singles Pork & Squash | 373.70 | 57.60 | 25.60 | 4.00 | 329.60 |

(*Id.* ¶ 7.) The EU provides maximum levels for undesirable substances in animal feed and specifically requires that arsenic must not exceed 2 parts per million (or 2000 ppb). (*Id.* ¶ 68.) The testing results show that some of Defendants' products exceed that level. (*Id.*) Exposure to toxins like arsenic, mercury, cadmium, and lead can cause serious illness in humans and animals. (*Id.* ¶ 26.) BPA is an industrial chemical and has also been linked to various health issues, including reproductive disorders, heart disease, diabetes, cancer, and neurological problems. (*Id.* ¶ 53.)

The Clean Label Project found and informed Defendants that their cat and dog food products contained higher levels of heavy metals when compared to other pet foods. (*Id.* ¶ 100.) In response to these findings, Defendants issued a White Paper titled "Orijen and Acana Foods in Comparison to Pet Food Safety Standards" acknowledging the presence of heavy metals in their products. (*Id.* ¶ 101; Dkt. 34-1 at 1.) In the White Paper, Defendants stated that they "systematically test" their Orijen and Acana products for heavy metals in third-party laboratories and reported data from the last three years of third-party testing that shows heavy metals are present in their dog

food products only at levels lower than the maximum tolerable limits (MTLs) for animals set by

the National Research Council (NRC) and/or FDA:

| Heavy Metal | Average (mg/kg) | Standard Deviation (mg/kg) | NRC/FDA MTL (mg/kg) |
|---|---|---|---|
| Arsenic | 0.89 | 1.05 | 12.50 |
| Cadmium | 0.09 | 0.09 | 10.00 |
| Lead | 0.23 | 0.15 | 10.00 |
| Mercury | 0.02 | 0.02 | 0.27 |

(*Id.* ¶ 101; Dkt. 34-1 at 2.)  Defendants contend such levels of heavy metals in pet foods are ac-

ceptable and did not change the packaging, labeling, advertising, or marketing of their Orijen or

Acana brands to disclose the White Paper findings.  (*Id.* ¶¶ 102-03.)

Defendants also sold dog food containing pentobarbital, which was caused by cross-con-

tamination resulting from one of Defendants' suppliers having accepted euthanized horses in ear-

lier production runs for other customers.  (*Id.* ¶¶ 13, 48.)  Defendants were notified in May 2018

that one of their suppliers sold them beef tallow containing pentobarbital.  (*Id.* ¶ 48.)  There is no

safe level of pentobarbital in dog food and ingestion by a pet can lead to adverse health issues.  (*Id.*

¶ 41.)

Defendants source ingredients internationally (*e.g.*, from New Zealand, India, France, Den-

mark, Ireland, Australia, and Canada) and from across the United States.  (*Id.* ¶ 14.)  Defendants

use frozen products (some of which have been stored for years) and store the delivered meals at

their kitchens for several months prior to use.  (*Id.*)  Defendants do not test their ingredients or

finished products for heavy metals, pentobarbital, BPA, or other unnatural ingredients.  (*Id.* ¶ 9.)

Plaintiff Zarinebaf is an Illinois resident who purchased Orijen and Acana dog foods for

his two dogs from his local pet stores approximately once a month from 2013 through 2018.  (*Id.*

¶ 20.)  Plaintiff Chernik is an Illinois resident who purchased Orijen and Acana dog foods for his

19 dogs from his local pet stores approximately once a week from 2006 through 2017.  (*Id.* ¶ 19.)

Both Plaintiffs saw the nutritional claims on the packaging before purchasing the dog food, relied on those claims in deciding to purchase the dog food, paid a premium to purchase the dog food, and would not have purchased the dog food had Defendants disclosed that it contained heavy metals, pentobarbital, toxins, BPA, and non-regional and non-fresh ingredients. (*Id.* ¶¶ 19-20.)

Plaintiffs Zarinebaf and Chernik bring their claims individually and on behalf of all Illinois residents who purchased the "contaminated" dog food from July 1, 2013 to the present. (*Id.* ¶ 110.)

## DISCUSSION

Defendants first move to dismiss all claims under Rule 12(b)(6) on the grounds that Plaintiffs fail to state sufficient facts to support their contention that Defendants' statements were deceptive. Defendants then individually address the unjust enrichment claim under Rule 12(b)(6). Defendants also move to dismiss the fraud claims under Rule 9(b). The Court addresses these claims below, applying Illinois law. *See Selective Ins. Co. of S.C. v. Target Corp.*, 845 F.3d 263, 266 (7th Cir. 2016).

"To survive a motion to dismiss under 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). "[I]t is not enough for a complaint to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above the speculative level.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555) (emphasis in original). The Court

construes the complaint "in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in her favor." *Reynolds*, 623 F.3d at 1146. "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 566 U.S. at 678).

Rule 9(b) requires a party alleging fraud to "state with particularly the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This heightened pleading requirement was intended to protect against the "great harm to the reputation of a business firm or other enterprise a fraud claim can do." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Thus, pursuant to Rule 9(b), a plaintiff must "describe the 'who, what, when, where, and how' of the fraud— 'the first paragraph of any newspaper story.'" *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)).

### a.   Sufficiency of Claims Generally

Defendants first challenge all of Plaintiffs claims under Rule 12(b)(6), arguing that none of the alleged statements were deceptive or misleading as to the presence of heavy metals, BPA, or pentobarbital in their dog food products. Defendants begin by arguing that Plaintiffs cannot state a claim based on the alleged presence of heavy metals in Defendants' dog food because the Complaint does not provide any standard or baseline for the level at which heavy metals would be unsafe for pet consumption, making Plaintiffs' claims speculative. (Dkt. 34 at 5; Dkt. 40 at 2-3.) Defendants cite and attach to their motion EU standards for the maximum acceptable levels of organic and inorganic arsenic in pet food, arguing that the Complaint fails to distinguish between the two and that the third-party testing alleged in the Complaint shows that their products do not

exceed any of the EU limits. (Dkt. 34 at 5; Dkt. 34-2.) Defendants also take issue with Plaintiffs' "absurd" theory that the mere presence of heavy metals in dog food renders Defendants' packaging misleading, citing a recent case from the Eastern District of Wisconsin where the court granted summary judgment in Defendants' favor on similar claims. *See Loeb* v. *Champion Petfoods USA Inc.*, 359 F. Supp. 3d 597, 605 n.7 (E.D. Wis. 2019).

Plaintiffs argue that their claims are broader than Defendants contend because they go beyond pet safety. Plaintiffs point to their allegations that Defendants marketed their products as "natural, healthy, fresh, regional, or high quality, and possessing rigid quality controls" while failing to disclose the presence of heavy metals and other contaminants, which misled Plaintiffs and influenced their purchasing decisions. (Dkt. 39 at 4-5.) Plaintiffs concede that the Complaint does not allege that the levels of heavy metals were excessive or dangerous, but argue that it is irrelevant because they allege that the mere presence of heavy metals would be material to a reasonable consumer. (*Id.*)

The Court agrees that the success of Plaintiffs' claims does not depend on whether the dog food is safe or not, so it is irrelevant that Plaintiffs did not allege the levels at which heavy metals would render dog food unsafe for consumption. Plaintiffs have stated a plausible claim that they relied on Defendants' statements marketing their dog food as natural and high quality, but would not have purchased the dog food if they had known it contained heavy metals. That theory does not require Plaintiffs to plead that the dog food contained enough heavy metals to be unsafe or dangerous. *See Leppert v. Champion Petfoods USA Inc*., No. 18 C 4347, 2019 WL 216616, at *6 (N.D. Ill. Jan. 16, 2019) ("Plaintiffs' failure to allege facts sufficiently showing heavy metals and BPA were present at 'unsafe' levels does not doom Plaintiffs' remaining theories of the case based on Defendants' marketing the cat foods as healthy, natural and high quality. It is entirely plausible

that a consumer purchasing what she believes to be healthy, natural and high-quality cat food would not purchase that cat food if she knew it contained any amount of heavy metals and/or BPA.").

Defendants' other arguments are unavailing. Defendants attach EU pet food safety standards to their motion and urge the Court to conclude that their dog food products do not, as a matter of fact, exceed the relevant EU standards for arsenic. Doing so would require the Court to reach well beyond the Complaint and incorporated documents and make factual determinations about Plaintiffs' claims, which is inappropriate on a motion to dismiss. Even if the Court could make that determination at this stage, it would not defeat Plaintiffs' claims, because the claims do not depend on alleging that heavy metals were present at dangerous levels. Defendants' reliance on *Loeb* is also misplaced, because the case was resolved at summary judgment and involved narrower claims than these.

As for BPA, Defendants similarly argue that Plaintiffs' claims fail because they do not allege a level at which BPA is unsafe for pets. As explained above, Plaintiffs do not need to make that allegation to plausibly claim that they were misled by Defendants' statements that its products are natural and high quality despite containing BPA. *See Leppert*, 2019 WL 216616, at *6. Plaintiffs allege that BPA is known to pose a health risk to dogs, and it is entirely plausible that a consumer would believe that dog food containing BPA is not natural or high quality. *See id.* Defendants also argue that Plaintiffs' claims fail because Plaintiffs do not allege that Defendants knew their dog food contained BPA. To the contrary, Plaintiffs allege that "Defendants . . . had knowledge of the potential risk and inclusion of . . . BPA" in their dog food products. (Dkt. 26 ¶ 104; *see also* ¶ 144.) Defendants argue this allegation is conclusory and conflicts with other allegations in the Complaint. Defendants claim the Complaint also alleges that Defendants "w[ere]

9

assured by [their] packaging supplier that the packaging did not contain BPA," citing Paragraph 104, but there is no such allegation in the Complaint. (*See* Dkt. 26 ¶ 104) ("Defendants have publicly stated they ask their suppliers if the packaging contains BPA while at the same time admitting that they in fact do not perform any tests to confirm that the [dog food] is BPA-free.") Plaintiffs have plausibly alleged that Defendants knew and failed to disclose that their dog food contained BPA.

Finally, as for pentobarbital, Defendants argue that Plaintiffs' claims fail because they do not allege they purchased any dog food containing pentobarbital, nor do they allege any testing showing that pentobarbital was detectable in Defendants' finished products. (Dkt. 34 at 7-8.) Plaintiffs allege: (1) that one of Defendants' suppliers notified Defendants in May 2018 that it sold them three shipments of beef tallow containing pentobarbital, which Defendants used to make thousands of pounds of dog food; (2) that Defendants sold dog food containing pentobarbital; and (3) that Plaintiff Zarinebaf purchased Orijen Regional Red in 2018. (Dkt. 26 ¶¶ 13, 20, 25(f) 48, 50.) On the last point, Plaintiffs claim that Paragraph 25(f) "identifies beef tallow as an ingredient in Orijen Regional Red." (Dkt. 39 at 11.) But the Complaint demonstrates that that is not the case. Paragraph 25(f) reads "Orijen Regional Red with Angus Beef, Wild Boar, Boer Goat, Romney Lamb, Yorkshire Pork & Wild Mackerel," and includes two photographs of dog food packaging:

 

"Angus Beef" is listed as an ingredient; beef tallow is not. The Court cannot identify beef tallow as being an ingredient listed on the packaging. Even drawing all inferences in Plaintiffs' favor, the Complaint does not allege that Orijen Regional Red contains beef tallow, which is the only ingredient alleged to have contained pentobarbital. As Defendants point out, then, there is an important allegation missing from the Complaint—that Plaintiffs purchased dog food containing pentobarbital. Without that allegation, Plaintiffs claims about Defendants' dog food containing pentobarbital are merely speculative and cannot give rise to a plausible claim.

### b. Particular Statements Relied Upon – Fraud and ICFA Claims

Defendants next argue that Plaintiffs' claims fail because the specific statements Plaintiffs rely on in the Complaint are either not deceptive or are not actionable statements of fact. The Complaint identifies several statements made in Defendants' packaging, labeling, and advertising campaign for Orijen and Acana foods but relies primarily on the following statements about the dog foods:

- "Biologically Appropriate" (Dkt. 26 ¶¶ 10, 56, 142, 151);

- "Fresh Regional Ingredients" and "Delivered daily" (*Id.* ¶¶ 57, 74, 142, 151);

- "Never Outsourced" (*Id.* ¶¶ 58, 74, 83, 142, 151);

- "Nourish as Nature Intended" (*Id.* ¶¶ 59, 142, 151);

- "Delivering Nutrients Naturally" and "Made with Fresh and Natural Ingredients" (*Id.* ¶¶ 60, 142, 151);

- "Premium Meat and Fish Ingredients" (*Id.* ¶¶ 142, 151); and

- "ingredients deemed fit for human consumption" (*Id.* ¶¶ 12, 61, 142, 151).

Plaintiffs cite these statements in support of their common law fraud and Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) claims, and the Court will examine the statements in the context of those claims.

To prevail on their ICFA claim, Plaintiffs must allege and ultimately prove " (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 856 (Ill. 2005) (internal quotation marks and citation omitted). In addition to these elements, common law fraud requires Plaintiffs to allege that they actually relied on the contested statements and that Defendants acted with scienter. *See Thacker v. Menard, Inc.*, 105 F.3d 832, 836 (7th Cir. 1997); *Athey Products Corp. v. Harris Bank Roselle*, 89 F.3d 430, 434 (7th Cir. 1996).

"Under the [I]CFA, a statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). Under Illinois law, mere puffery or a statement of seller's opinion is not actionable under either a common law fraud or ICFA claim "based on the sound reasoning that no reasonable consumer would rely on such an implicit assertion as the sole basis for making a purchase." *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 926 (Ill. 2007) ("Puffing in the usual sense signifies meaningless superlatives that no reasonable person would take seriously, and so it is not actionable as fraud") (citing *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999)). "Puffery is 'exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely.'" *Adkins v. Nestle Purina PetCare Co.*, 973 F. Supp. 2d 905, 919 (N.D. Ill. 2013) (citing *Rosenthal*

*Collins Grp., LLC v. Trading Techs., Int'l, Inc.*, No. 05 C 4088, 2005 WL 3557947, at *10-11 (N.D. Ill. Dec. 26, 2005)).

Defendants argue that the statements listed above are either not deceptive or not actionable statements of fact. Plaintiffs argue that whether a statement is deceptive or not is an issue of fact, not law, and should not be resolved on a Rule 12(b)(6) motion. But courts routinely analyze whether statements like these are deceptive as a matter of law under the ICFA, and the Court will do so here. *See Bober*, 246 F.3d at 938 ("Thus, in determining whether the allegations in Bober's complaint state a claim for relief that satisfies the requirements of Rule 12(b)(6), we ask whether the allegedly false and misleading statements on which Bober based his [I]CFA claim can be read to create a likelihood of deception or to have the capacity to deceive."); *see also, e.g.*, *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015) (dismissing claims after determining that plaintiff failed to plausibly allege that statements were deceptive as a matter of law under ICFA).

**"Biologically Appropriate."** Plaintiffs allege that "Biologically Appropriate" is a "misleading" "nutritional statement" because a reasonable consumer would not understand that Defendants' dog food contained heavy metals, BPA, pentobarbital, non-regional, non-fresh, or unnatural ingredients. (Dkt. 26 ¶ 56.) Defendants first argue that the phrase is nonactionable puffery because it is "not specific, not concrete, [and] not measurable." (Dkt. 34 at 8-9) (citing *Rosenthal Collins Grp.*, 2005 WL 3557947, at *10.) Defendants also argue that Plaintiffs have failed to show that it is deceptive because some of the dog food packaging provides an explanation for the phrase, and Plaintiffs have not pleaded facts showing that the explanation is false or misleading. The Court disagrees. "Biologically appropriate" is an "assertion[] of fact," and Plaintiffs have successfully alleged that the "[dog] food does not conform to th[is] fact because it contains heavy metals, which are associated with potential health risks and therefore not 'biologically

appropriate,' and BPA, which is an industrial chemical and therefore [not] 'biologically appropri-

ate.'" *Leppert*, 2019 WL 216616, at *7.

**"Fresh Regional Ingredients," "Delivered daily," and "Made with Fresh and Natural Ingredients."** Defendants argue that the phrases "Fresh Regional Ingredients" and "delivered daily" are not deceptive. But Plaintiffs successfully allege that the dog foods contain heavy metals and BPA, which are not "fresh regional ingredient[s]." *See id.* As for "delivered daily," however, Plaintiffs' have not alleged sufficient facts to show that the phrase is deceptive. Plaintiffs' only allegation to establish that the phrase is deceptive states that "Defendants utilized frozen products (some of which have been stored for years) and store the delivered meals at their Kitchens for several months prior to use." (Dkt. 26 ¶ 14.) Plaintiffs do not allege which ingredients are not delivered daily, nor do they allege how Defendants "utilized frozen products" or "stored . . . de-livered meals" for months before use. This allegation does not contain enough detail for the Court to draw the reasonable inference that the statement is deceptive. Finally, the phrase "Made with Fresh and Natural Ingredients" is not actionable because Plaintiffs do not allege how or where Defendants marketed its dog food using that phrase, nor do they include any pictures featuring the phrase on Defendants' packaging or advertisements or provide any details about how or where the phrase is used. Plaintiffs similarly have not alleged sufficient facts to show that the phrase is deceptive.

**"Never Outsourced."** Defendants argue that Plaintiffs fail to plead facts suggesting the phrase "Never Outsourced" is deceptive. Plaintiffs allege the phrase is deceptive because Defend-ants "outsource the production of their meals" and because the dog foods "included ingredients like meals and tallow that were not manufactured in Defendants'" kitchens. (Dkt. 26 ¶¶ 15, 58.) Defendants argue that the allegation is illogical, because they "[are] not an ingredient supplier"

and they manufacture final products, not ingredients. Defendants also urge the Court to consider additional packaging that explains and provides context for the phrase "Never Outsourced." *See* Dkt. 34 at 11, Dkt. 34-5. These arguments are factual disputes that go beyond the scope of the Complaint and the incorporated documents. That said, Plaintiffs have not alleged sufficient detail to show that the phrase "Never Outsourced" is deceptive. The allegation that Defendants "outsource the production of their meals," without more detail, is conclusory and speculative. And because Plaintiffs do not provide more detail about how Defendants' use the phrase "Never Outsourced," the Court cannot draw any reasonable inferences about whether Defendants' alleged use of ingredients not manufactured in their kitchens makes that phrase deceptive.

**"Nourish as Nature Intended" and "Delivering Nutrients Naturally."** Defendants argue that these phrases are nonactionable puffery because they are "so vague as to be incapable of being proved or disproved." (Dkt. 34 at 11.) "Nourish as nature intended" is too vague to be disproven—it seems impossible to draw conclusions about what, exactly, "nature intends"—so it is nonactionable puffery. But "delivering nutrients naturally" is not so vague, and Plaintiffs have successfully pleaded that the dog foods contain BPA, which is not "natural." *See, e.g., Adkins*, 973 F. Supp. 2d at 919 ("Plaintiffs are correct that 'wholesome' at the very least conveys the safety of the treats to the consumer, and therefore cannot be puffery.").

**"Premium Meat and Fish Ingredients."** Plaintiffs do not allege any details about how or where Defendants used this phrase to market their products, nor do they include any pictures of packaging or advertising materials using this phrase. Plaintiffs' allegations about this phrase are entirely conclusory and lack the detail required to state a claim for relief under Rule 12(b)(6).

**"Ingredients Deemed Fit for Human Consumption."**

Plaintiffs have not pleaded sufficient facts to show that this phrase is deceptive. Defendants' packaging, read in full, lists which specific ingredients are deemed fit for human consumption and clarifies that those ingredients are "deemed fit for human consumption prior to inclusion in our foods." (Dkt. 26 ¶¶ 12, 61.) Plaintiffs have not pleaded any facts showing that the particular ingredients Defendants' list as "fit for human consumption" are adulterated or otherwise unfit to consume, so Plaintiffs have failed to show that the phrase is deceptive. *See also Leppert*, 2019 WL 216616, at *6.

To summarize, Plaintiffs may proceed on their claims based on Defendants' alleged use of the statements "Biologically Appropriate," "Fresh Regional Ingredients," and "Delivering Nutrients Naturally."

### c.    Fraud Claims and Rule 9(b)

Defendants move to dismiss the common law fraud, ICFA, and fraudulent omission claims (Counts III-V) under Rule 9(b) for failure to plead with particularity. "[A] complaint alleging a violation of consumer fraud must be pled with the same particularity and specificity as that required under common law fraud." *Connick v. Suzuki Motor Co.*, 675 N.E. 2d 584, 593 (Ill. 1996); *see also Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736-37 (7th Cir. 2014) (ICFA claim sounds in fraud and therefore is subject to Rule 9(b)'s heightened pleading standard).

Defendants first argue that Plaintiffs fail to plead with particularity the levels at which BPA and heavy metals would be unsafe for dogs, but as explained above, that is not Plaintiffs' theory and Plaintiffs do not need to allege that for their claims to survive. Defendants next argue that Plaintiffs' claims fail because they do not identify which specific misrepresentations they saw and relied on to induce them to purchase the dog food. Plaintiffs allege generally that they "saw the

16

nutritional claims on the packaging" and relied on them when deciding to purchase the dog food, (Dkt. 26 ¶¶ 19-20), and the Complaint then goes on in several paragraphs to describe in detail and provide pictures of some of the specific claims on the dog food packaging. (*Id.* ¶¶ 25, 56-61.) Drawing all inferences in Plaintiffs' favor, the Court reasonably assumes the nutritional claims Plaintiffs saw and relied upon included those describing the dog food as being "biologically appropriate," "delivering nutrients naturally," and made with "fresh regional ingredients." *See Leppert*, 2019 WL 216616, at *11.

Defendants also argue the fraudulent omission claim (Count V) must be dismissed because Plaintiffs have not pleaded facts establishing that Defendants owed any duty to disclose information about the levels of heavy metals or BPA in their dog food. To state a fraudulent omission claim under Illinois law, "a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 737 (7th Cir. 2017) (quoting *Connick*, 675 N.E.2d at 593). A duty to disclose "may be based on a fiduciary relationship or a relationship of trust and confidence where defendant is in a position of influence and superiority over plaintiff" or "may arise when a defendant tells a half-truth and then becomes obligated to tell the full truth." *Id.* (quotation omitted).

Plaintiffs allege Defendants had a duty to disclose that their dog foods contained heavy metals and BPA because they "were in a superior position" to know the facts about their products including the actual ingredients and characteristics of their dog foods and knew Plaintiffs and the putative class could not reasonably have been expected to discover their misrepresentations prior to purchasing the dog foods. (Dkt. 26 ¶ 169.) A fraudulent omission claim based on a "relationship of trust and confidence" is particularly difficult to allege where, as here, no formal fiduciary relationship exists. *See Toulon*, 877 F.3d at 737 (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d

17

547, 571 (7th Cir. 2012) and recognizing that "state and federal courts in Illinois have rarely found a special trust relationship to exist in the absence of a more formal fiduciary one"). Plaintiffs must allege that Defendants "exercise overwhelming influence over [them] ... [and] asymmetric information alone does not show the degree of dominance needed to establish a special trust relationship." *Id.* (quoting *Wigod*, 673 F.3d 72–73). Plaintiffs fail to establish that Defendants had a duty to disclose based on Defendants' superior knowledge. *See also Leppert*, 2019 WL 216616, at *11.

Plaintiffs also allege that Defendants had a duty to disclose because they made affirmative representations, misleading statements, and partial disclosures about the quality and ingredients of the dog foods while choosing to remain silent about the inclusion of BPA and heavy metals. (Dkt. 26 ¶¶ 170-71.) "[A] duty to disclose may arise under Illinois law if the defendant makes an affirmative statement that it passes off as the whole truth while omitting material facts that render the statement a misleading 'half-truth.'" *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 397-98 (7th Cir. 2009.) Plaintiffs do not allege enough detail about which of Defendants' statements were "passed off as the whole truth," and their allegations on this point are too vague and conclusory to give rise to a duty to disclose under this theory. Because Plaintiffs fail to allege that Defendants owed them a duty to disclose, the Court dismisses Count V without prejudice.

### d. Unjust Enrichment

To state an unjust enrichment claim under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011). Defendants argue only that the unjust enrichment claim is based on the same conduct as the fraud claims, and so should be dismissed for the same reasons as the fraud claims. The Court is not dismissing the fraud claims in their entirety,

18

and Plaintiffs' unjust enrichment claim may proceed to the same extent as the fraud claims. *See id.* at 517 (recognizing that where "an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim"); s*ee also Leppert*, 2019 WL 216616, at *10.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss [Dkt. 26] is granted in part and denied in part. The Court dismisses without prejudice all claims based on allegations that Defendants' dog food contained pentobarbital. The Court also dismisses without prejudice all claims based on Defendants' alleged use of the phrases "Delivered daily," "Made with Fresh and Natural Ingredients," "Never Outsourced," "Nourish as Nature Intended," and "Premium Meat and Fish Ingredients." Finally, the Court dismisses the fraudulent omission claim (Count V) without prejudice. Plaintiffs have until 8/20/19 to re-plead these claims, if possible. Defendants' motion is otherwise denied.

Virginia M. Kendall
United States District Judge

Date: July 30, 2019

19