**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **AFSHIN ZARINEBAF** and **ZACHARY CHERNIK, JOAN MEYER**, individually and on behalf of a class of similarly situated individuals, | ) | Case No.: 1:18-cv-06951 |
| | ) | Hon. Virginia M. Kendall |
| Plaintiffs, | ) | |
| v. | ) | |
| **CHAMPION PETFOODS USA INC. and CHAMPION PETFOODS LP,** | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESS DR. GARY PUSILLO**

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. OVERVIEW OF DR. PUSILLO'S AFFIRMATIVE EXPERT REPORTS ........ 2

III. LEGAL STANDARD ........ 2

IV. ARGUMENT ........ 3

A. DR. PUSILLO IS NOT QUALIFIED TO RENDER THE OPINIONS PROFFERED ........ 3

B. DR. PUSILLO'S OPINIONS ARE NEITHER RELEVANT NOR HELPFUL TO THE FACTFINDER NOR SCIENTIFICALLY RELIABLE ........ 5

1. Dr. Pusillo's Opinions Implying that Champion's Dog Food is Unsafe is Not Helpful to the Jury and Not Based on Reliable Scientific Methodology ........ 6

2. Dr. Pusillo's Opinions About "Biologically Appropriate," "Fresh Regional Ingredients," and "Whole Prey" are Not Helpful to the Jury ........ 11

3. Dr. Pusillo's BPA-Related Opinions are Irrelevant and Not Based on Reliable Methodology ........ 13

V. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Honda Motor Co. v. Allen*,
600 F.3d 813 (7th Cir. 2010) ....................3

*Andersen v. City of Chicago*,
454 F. Supp. 3d 740 (N.D. Ill. 2020) (Kendall, J.) ....................10

*C.W. v. Textron, Inc.*,
807 F.3d 827 (7th Cir. 2015) ....................11

*Chapman v. Maytag Corp.*,
297 F.3d 682 (7th Cir. 2002) ....................9

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ....................3

*Ervin v. Johnson & Johnson, Inc.*,
492 F.3d 901 (7th Cir. 2007) ....................3

*GE v. Joiner*,
522 U.S. 136 (1997) ....................11

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) ....................5

*Klaczak v. Consol. Med. Transp.*,
458 F. Supp. 2d 622 (N.D. Ill. 2006) ....................6

*Krik v. Crane Co.*,
71 F. Supp. 3d 784 (N.D. Ill. 2014) ....................14

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) ....................11

*Lewis v. CITGO Petroleum Corp.*,
561 F.3d 698 (7th Cir. 2009) ....................3, 11

*McClain v. Metabolife Int'l, Inc.*,
401 F.3d 1233 (11th Cir. 2005) ....................8

*Moore v. P&G-Clairol, Inc.*,
781 F. Supp. 2d 694 (N.D. Ill. 2011) (Kendall, J.) ....................5, 15

*Navarro v. Fuji Heavy Indus., Inc.*,
117 F.3d 1027 (7th Cir. 1997) (Posner, J.) ....................6

*Owens v. Auxilium Pharms., Inc.*,
895 F.3d 971 (7th Cir. 2018) ....................13

*Reitman v. Champion Petfoods USA, Inc.*,
No. 2:18-cv-01736-DOC (C.D. Cal.)....................1

*Simpson v. Champion Petfoods USA, Inc.*,
397 F. Supp. 3d 952 (E.D. Ky. 2019)....................5

*Song v. Champion Petfoods USA, Inc.*,
No. 18-CV-3205 (PJS/KMM), 2020 WL 7624861 (D. Minn. Dec. 22, 2020)....................1, 5

*Timm v. Goodyear Dunlop Tires N. Am., Ltd.*,
932 F.3d 986 (7th Cir. 2019)....................3, 5, 14

*United States v. Dewitt*,
943 F.3d 1092 (7th Cir. 2019)....................13

*Ziegler v. Wellpet, LLC*,
No. 3:17-cv-04056-WHO, 2021 WL 756109 (N.D. Cal. Feb. 26, 2021)....................5

**Other Authorities**

Fed. R. Evid. 401....................2

Fed. R. Evid. 402....................2

Fed. R. Evid. 702....................2, 3, 6

## I. INTRODUCTION

Plaintiffs have designated Dr. Gary Pusillo as a purported expert on the "safety" of Defendants Champion Petfoods USA Inc. and Champion Petfoods LP's (collectively, "Champion") dog food products. Although the vast majority of the opinions that Dr. Pusillo advanced in his two affirmative reports[1] have now been abandoned and withdrawn by Plaintiffs, or stipulated to between the parties, Plaintiffs still seek to present Dr. Pusillo's opinions that (i) Champion's dog food and ingredients are not "certified for safety"; (ii) certain statements on Champion's packaging are untrue; and (iii) plastic containers and packaging materials used by Champion "can be a source of" bisphenol A ("BPA").[2]

Dr. Pusillo's hap-hazard affirmative reports reflect his lack of expertise and knowledge in any relevant area. First, Dr. Pusillo, an animal nutritionist, concedes that he is not qualified to opine on any topic for which he has been designated. He admits he is not a veterinary toxicologist, a food safety expert, or a veterinarian, thus unqualified to render opinion (i). He also admits he is not qualified to testify about opinion (iii), on the subject of BPA *at all*—much less able to provide an expert opinion on what levels of BPA is or is not safe for animal consumption. Further, since

[1] In the case *Reitman v. Champion Petfoods USA, Inc.*, No. 2:18-cv-01736-DOC (C.D. Cal.) (the "*Reitman* Action"), the plaintiffs there were represented by the same counsel as those here and advanced extremely similar claims and theories as Plaintiffs do here. There has been substantial overlap between the two cases. Plaintiffs and Champion stipulated that Dr. Pusillo's two affirmative expert reports originally served in the *Reitman* Action will serve as his affirmative reports in this action as if originally served in this action, as would all of Dr. Pusillo's depositions taken in *Reitman* and similar actions. Plaintiffs also served a rebuttal report for Dr. Pusillo in the case *Song v. Champion Petfoods*, No. 0:18-cv-03205-PJS-KMM (D. Minn.), and the Parties stipulated that would serve as his rebuttal report in this action. Champion is not moving to exclude the opinions in Dr. Pusillo's rebuttal report as it would be premature, but Champion reserves the right to object at trial to any of his rebuttal opinions, should they be proffered.

[2] Counsel for the parties met and conferred on Dr. Pusillo's reports (among other things), and counsel for Plaintiffs agreed to withdraw seven of the fourteen opinions in his Test Report and nineteen of the twenty-six opinions in his Safety Report. Dr. Pusillo's remaining opinions at issue are highlighted in yellow in "**Exhibit 1**" (Opinions #8-14 in the Test Report and Opinions #7-10, 12-13, 20 in the Safety Report). This Motion addresses the opinions that remain.

he does not profess to be an expert in advertising or consumer perception, Dr. Pusillo has no basis for opinion (ii), regarding Champion's marketing statements, not to mention that any expert opinion on whether Champion's statements are true or not would invade the province of the Court.

As reflected in his Safety Report, Dr. Pusillo seeks to testify that the presence of any level of heavy metals in Champion's dog food causes serious health problems, without regard to what concentrations or what length of exposure could cause them, even though he admits those are crucial factors for such an analysis. And his BPA opinions imply that something is "wrong" with Champion's dog food, but fail to provide any opinion to support that merits question head-on. In effect, Plaintiffs are trying to have it both ways—asserting on one hand that they are not claiming Champion's dog food is unsafe, but putting forth an expert to testify that the food can possibly cause health problems (which is scientifically and factually baseless in any event) on the other. This sort of two-step should not be permitted. Because there is no basis for permitting these opinions or his anticipated testimony to reach the jury consistent with Fed. R. Evid. 401, 402, or 702, the Court should exclude Dr. Pusillo's opinions and preclude him from testifying at trial.

## II. OVERVIEW OF DR. PUSILLO'S AFFIRMATIVE EXPERT REPORTS

Dr. Pusillo has tendered two affirmative reports in this case. The first sets forth his opinions on the "safety" of Champion's dog food and is titled Evaluation of Champion for Safety ("**Exhibit 2**," hereinafter, the "Safety Report"). The second sets forth his views on testing conducted on Champion's products and is titled Test Results of Champion for Heavy Metals and Plasticizers ("**Exhibit 3**," hereinafter, the "Test Report"). The opinions in both reports should be excluded.

## III. LEGAL STANDARD

The proponent of the expert bears the burden of demonstrating that the expert's testimony is admissible under Rule 702 and the *Daubert* standard by a preponderance of the evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Rule 702 permits an expert to

testify only if that testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Expert opinions may be considered only if (1) "the testimony is based on sufficient facts or data," (2) the testimony is the product of reliable principles and methods," and (3) the expert has reliably applied the principles and methods to the facts of the case." *Id.* at 702(b)-(d). To ensure these threshold requirements are satisfied, district courts are tasked with the role of "gatekeeper" over all proffered expert or scientific testimony. *See, e.g.*, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).

As the gatekeeper, the Court must ensure that the proffered expert has the requisite knowledge, skill, experience, training, or education relevant to such evidence or fact in issue. *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815–16 (7th Cir. 2010) (holding "when an expert's report or testimony is critical to class certification … a district court must conclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on a class certification motion"). The Court must also ensure that the "expert testimony is both relevant and reliable." *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007).

## IV. ARGUMENT

### A. Dr. Pusillo is Not Qualified to Render the Opinions Proffered

To render an expert opinion, the witness must have the requisite knowledge, skill, experience, training or education relevant to such evidence or fact in issue. *Timm v. Goodyear Dunlop Tires N. Am., Ltd.*, 932 F.3d 986, 994–95 (7th Cir. 2019). Dr. Pusillo does not. Though his reports are laden with insinuations that Champion's dog food is unsafe because it may contain some amount of naturally occurring heavy metals and/or trace levels of environmentally ubiquitous BPA, he openly and repeatedly admits that he lacks even the most basic education or

expertise needed to opine as an expert on issues related to toxicology, chemistry, veterinary science, food safety, or BPA. Dr. Pusillo's forthright concessions in this regard are overwhelming:

- He admits he is not a toxicologist. (*See* Deposition of Dr. Gary Pusillo, dated April 26, 2019, ("**Exhibit 4**," hereinafter, "Pusillo Dep. Vol. 1") at 130:6-14 ["Q: Now, are you a toxicologist? A: No. Q: And so, therefore, you're not a veterinary toxicologist; correct? A: No."]; *see* Deposition of Dr. Gary Pusillo, dated May 31, 2019 ("**Exhibit 5**," hereinafter, "Pusillo Dep. Vol. 2") at 67:21-23 ["Q: What does dose response mean in the context of toxicology? A: I'm not a toxicologist."].)

- He admits he is not an analytical chemist and does not have a chemistry degree. (*See* Deposition of Dr. Gary Pusillo, dated Sept. 12, 2019 ("**Exhibit 6**," hereinafter, "Pusillo Dep. Vol. 3") at 10:24-11:1 ["Q: Do you hold yourself out as an analytical chemist? A: No."]; *id.* at 10:13-15 ["Q: In terms of your education, do you have a degree in chemistry? A: No."].)

- He admits he is not a veterinarian and does not have a veterinary degree. (Pusillo Dep. Vol. 1 at 130:11-14 ["Q: Do you have a veterinary degree? A: No. Q: Are you a veterinarian? A: No."].)

- He admits he is not a food-safety expert. (Pusillo Dep. Vol. 1 at 36:23-37:5 ["Q: Do you hold yourself out as a food safety expert? … A: I'm a nutritionist. Q: All right. A: And I want to do what's best for the animals. Q: Okay. But are you a food safety expert? A: I'm not a food safety expert."].)

- And he admits he is not an expert in BPA. (Pusillo Dep. Vol. 1 at 15:7-16 ["Q: Is [BPA] a monomer? A: A monomer as – as it relates to what? Q: I don't know. You're the scientist. I was asking you, is Bisphenol A known as a monomer? A: Well, I'm not a BPA expert. I was just asked to see if it was in the product. Q: Okay, and that was going to be --- you sort of foreshadowed my next question. Are you an expert in BPA? A: No."]; *id.* at 15:22-25 ["Do you have an opinion as to what was the source of the BPA levels in the various Acana and Orijen formulations? A: No, I don't."].)

Plaintiffs make no claim that the dog food malnourished Plaintiffs' or any other dogs, and thus Dr. Pusillo's expertise as a nutritionist is irrelevant. In short, while Dr. Pusillo is attempting to proffer expert opinions about the health and safety implications of Champion's dog food, he has no specialized knowledge, no skill, no experience, and no training in toxicology, chemistry, veterinary science, or food safety. Because he lacks even these barest minima of qualifications to

testify on the subjects for which he has been designated and are at issue, he should be excluded from testifying at trial.[3] *See* Timm, 932 F.3d at 995 (affirming district court's exclusion of experts who did not possess the requisite qualifications because their knowledge and experience did not extend to areas in which their opinions were offered); *Moore v. P&G-Clairol, Inc.*, 781 F. Supp. 2d 694, 703-04 (N.D. Ill. 2011) (Kendall, J.) (noting that "under Federal Rule of Evidence 702, an expert witness must be qualified to testify by 'knowledge, skill, experience, training, or education," and granting motion to exclude expert testimony where plaintiff's expert "has none of these qualifications.").

**B. Dr. Pusillo's Opinions are Neither Relevant Nor Helpful to the Factfinder Nor Scientifically Reliable**

Dr. Pusillo's opinions are irrelevant to the disputes at issue in this case, and his testimony on extraneous subjects would be of no help to the Court or the jury in resolving those disputes. *See*

---

[3] Champion recognizes that recently a motion to exclude Dr. Pusillo was denied in part regarding the safety of Wellness dog food made by Wellpet due to the presence of lead and arsenic, but that he was excluded from testifying as to BPA. *See* *Ziegler v. Wellpet, LLC*, No. 3:17-cv-04056-WHO, 2021 WL 756109, at *9 (N.D. Cal. Feb. 26, 2021). Champion respectfully submits that the *Wellpet* opinion is irrelevant and distinguishable as the complaint there is premised on a theory of safety and the *Wellpet* court heavily relied on the issue of safety in its opinion. *Id.* at *16 (finding there was a "genuine dispute of material fact about the dangerousness of the amounts of arsenic and lead that can occur in the Wellness Products"). This may be in part because California law may impose a duty to disclose where an omission affects the central function of the product or creates a safety concern. *See* *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018) (holding "in this pure omissions case concerning no physical product defect relating to the central function of the chocolate and no safety defect, Plaintiff has not sufficiently pleaded that Mars had a duty to disclose on its labels the labor issues in its supply chain."). Moreover, the *Wellpet* court erroneously allowed Dr. Pusillo's "opinion" that heavy metals could bioaccumulate in dogs to a point of presenting a danger, which in turn could render Wellpet's marketing claims misleading. *Wellpet*, 2021 WL 756109, at *16. This hypothesis may be relevant in light of the safety claims affirmatively at issue in *Wellpet*, but coming from Dr. Pusillo the testimony nevertheless is speculation not grounded in any reliable methodology (*see infra* at 9-10, discussing dose-response relationship). In any event, Dr. Pusillo does not put forth an opinion on bioaccumulation in either of his affirmative expert reports in the instant action. Nor has the theory been posited in the SAC. On this basis alone, the *Wellpet* opinion should be disregarded. Finally, the *Wellpet* court went to great lengths to distinguish that case from the *Reitman* Action, and related cases *Song v. Champion Petfoods USA, Inc.*, No. 18-CV-3205 (PJS/KMM), 2020 WL 7624861 (D. Minn. Dec. 22, 2020), and *Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952 (E.D. Ky. 2019). *See* *Wellpet*, 2021 WL 756109, at *17, *29, n.6. Thus, the *Wellpet* opinion, and any evidence that might be advanced in that case by plaintiffs there, should have no bearing on this case.

Fed. R. Evid. 702(a) (expert's testimony must "help the trier of fact to understand the evidence or to determine a fact in issue"). "Expert testimony does not assist the trier of fact when the jury is able to evaluate the same evidence and is capable of drawing its own conclusions without the introduction of a proffered expert's testimony." *Klaczak v. Consol. Med. Transp.*, 458 F. Supp. 2d 622, 665 (N.D. Ill. 2006).

### 1. Dr. Pusillo's Opinions Implying that Champion's Dog Food is Unsafe is Not Helpful to the Jury and Not Based on Reliable Scientific Methodology

Dr. Pusillo claims that Champion's dog food diets "are not tested and certified for safety for dogs," (Ex. 1 at 5, Safety Report Opinion #7), with the implication being that Champion's food is unsafe for dogs. But neither of his two written affirmative reports nor his deposition shed any light on what objective science he is basing that opinion on. For that matter, he is unable to explain what "certified for safety for dogs" even means. He points to no details, no benchmarks, and no specific ingredients to support that conclusion. These opinions are rank *ipse dixit* and have no scientific basis. *See, e.g.*, *Navarro v. Fuji Heavy Indus., Inc.*, 117 F.3d 1027, 1031 (7th Cir. 1997) (Posner, J.) (affirming order striking expert's affidavit because it "amount[ed] to nothing more than [a] truism," and "a conclusion without any support is not based on expert knowledge and entitled to the dignity of evidence").

Dr. Pusillo attempts to justify his scientifically unsupported conclusion by opining that heavy metals are unsafe at any level and can cause terrifyingly severe maladies – none of which are at issue here. Safety Report at 18, lines 607-610; *see id*. at 19, lines 660-664. That assertion is based on the false premise that the ***mere presence*** of trace amounts of heavy metals – which are naturally occurring in many food sources for both dogs and humans – necessarily results in health problems. *Id*. In other words, because he lacks the necessary training or credentials to opine what levels might pose a safety risk, and because he has conducted no testing to confirm such levels

were exceeded here, Dr. Pusillo simply adopts a categorical position that different levels of metals do not matter – any amount is too much, regardless of whether a dog is (or ever could be) harmed. In his reports, he makes a number of vague, foreboding statements that heavy metals "can have adverse effects on animal health and growth" or that "heavy metals may create a health or quality of life concern." Safety Report at 19, lines 630, 660. He lists a number of ominous health problems that heavy metals may cause at levels that far exceed those in Champion's dog food, like "slow growth, "poor reproduction," "oxidative damage," and even "death." *Id.* at 19, lines 660-663. While he readily acknowledges that "[t]hese toxic effects depend on the ***concentration*** and ***length of exposure*** to the heavy metals," (*id.* at 19, lines 660-661), he does not identify what concentrations or what length of exposure can cause the reactions he lists.

This is a concept known as the dose-response relationship, which is a fundamental concept in toxicology that Dr. Pusillo is not qualified to factor into his conclusions. When Dr. Pusillo was asked "[w]hat does dose response mean in the context of toxicology?" he admitted "I'm not a toxicologist." Pusillo Dep. Vol. 2 at 67:21-23. As explained by Champion's expert, Dr. Robert H. Poppenga, the dose-response

> "concept is that for every chemical there is a threshold above which a biological response occurs; as the exposure increases above the threshold, the response becomes more pronounced (in toxicology the response is often, but not always, a detrimental biological effect) (Osweiler, 2013). For each chemical, the dose-response depends on a number of factors, including the form of the chemical and the species of animal. In addition, absorption, metabolism, distribution, and elimination must be taken into account when analyzing exposure over a period of time. Dr. Pusillo does not discuss any of this[.]"

Dr. Poppenga's Rebuttal Expert Report, dated March 29, 2021 ("**Exhibit 7**") at p. 4. This alone is enough to exclude Dr. Pusillo's opinions. The Eleventh Circuit in *McClain v. Metabolife Int'l, Inc.*, acknowledged a defendant's expert's opinion "that the relationship between dose and effect (dose-response relationship) is the hallmark of basic toxicology … Dose is the single most

important factor to consider in evaluating whether an alleged exposure caused a specific adverse effect … Often low dose exposures—even for many years—will have no consequence at all, since the body is often able to completely detoxify low doses before they do any damage." 401 F.3d 1233, 1242 (11th Cir. 2005). That court held "[t]hese essential principles of toxicology directly contradict" the opinions of the plaintiffs' proffered expert, *id.*, and reversed the district court, holding "there was no basis for the court below to conclude that Plaintiffs' experts employed … intellectual rigor … [to] satisfy the foundational requirements of Rule 702, because their opinions were not based on sufficient data and were not the product of reliable methods." *Id.* at 1255. The Court's gatekeeper function is critically important in dealing with potential toxins in order to ensure that only opinions based on competent, reliable science are presented to the jury.

Indeed, Dr. Pusillo openly admits that he cannot determine a concentration or exposure level of arsenic, cadmium, mercury, or lead in dry kibble dog food which would cause an adverse reaction in dogs:

> Q: [H]ave you formed an opinion as to what level of lead in dry kibble dog food would be unsafe for dogs to consume?
>
> A: I have not been able – asked to do that.
>
> ***
>
> Q: …So as of now you have no expert opinion as to what level of lead in dry kibble dog food is safe for a dog to consume?
>
> A: I was asked to look at the heavy metals, and that's what I was asked to do. I'm not providing a – a safe level or a – a level that was something that I would use.
>
> Q: Okay. Same for arsenic. At this time you have no expert opinion as to what is a safe level of total arsenic in dry kibble dog food that would be safe for a dog to consume?
>
> A: No.
>
> ***

Q: …[L]et's go on to cadmium. At this time is it true that you do not have an expert opinion as to what level of cadmium in dry kibble dog food is safe for dogs to consume?

A: I don't have an opinion at this time.

Q: Let's go to mercury. Okay, at this time is it true that you do not have an expert opinion as to what level of mercury in dry kibble dog food is safe for dogs to consume?

A: I don't have an opinion at this time.

Pusillo Dep. Vol. 1 at 11:21-24, 12:11-22, 14:3-12. In essence, Plaintiffs are proposing to have Dr. Pusillo detail to the jury a laundry list of severe illnesses purportedly caused by naturally occurring heavy metals without providing any context or benchmark for what level of exposure, and length of exposure to heavy metals could potentially trigger these maladies. Indeed, "[u]nsubstantiated testimony, such as this, does not ensure that the expert's opinion has a reliable basis in knowledge and experience of his discipline." *Chapman v. Maytag Corp.*, 297 F.3d 682, 688 (7th Cir. 2002) (finding expert's theory was "unsupported by any article, text, study, scientific literature or scientific data produced by others in his field"). Moreover, since Plaintiffs have abandoned any claim of harm to their dogs, there is no reason to present these opinions to the jury other than to inflame unfair prejudice. Attempting to offer such opinions through an unqualified expert merely compounds the problem.

There are maximum limits of heavy metals in dog food set by the NRC and utilized by the FDA and regulatory standards set by the EU, which is why Champion tests its dog food to ensure that its products sold to the public remain significantly below those established levels. Dr. Pusillo is unable to point to any example of Champion's finished dog foods exceeding those levels in any respect, or point to any standard, reference, guidance or custom or practice that Champion's dog food violates. Instead, he takes the extreme and unsupported position that the mere presence of heavy metals in dog food – ***in any amount*** – can ***cause*** these maladies, which Plaintiffs' dogs have

not suffered. He has not studied this hypothesis for himself (neither the cause nor the effect), nor can he point to any research from any source that supports it. This cannot be called science by any definition. His testimony, taken to its logical conclusion, means that a single part-per-billion of any heavy metal contained in dog food could lead to health problems in dogs, even though he can point to no studies or scientific papers endorsing such an extreme position. Moreover, opinions about things that "could" happen but have not happened are rife with speculation, not to mention opinions about things that might "cause" events that have not occurred. That position is facially unreasonable and is not based on any objective science. Such a baseless opinion – that would cause substantial prejudice to Champion – should not be permitted to reach the jury. *See Andersen v. City of Chicago*, 454 F. Supp. 3d 740, 745 (N.D. Ill. 2020) (Kendall, J.) ("Brzeczek essentially asks this Court, and any factfinder, to take him at his word that his opinions are correct, without supporting them. That is not a reliable methodology.").

Further undermining his opinion that Champion's dog food ingredients are unsafe, Dr. Pusillo openly admits that he cannot actually identify a single ingredient that is unsafe.[4] Pusillo Dep. Vol. 1 at 30:20-31:8 ("Q: … is it fair to say that at this time you have not formed an opinion as to whether any specific ingredient used in Champion's dog food diets are unsafe; is that right? A: That would be – yes."). Dr. Pusillo's admitted inability to identify what levels of heavy metals make dog food unsafe, or what ingredients he claims are unsafe, render his unscientific opinion useless and it should be excluded.[5] *C.W. v. Textron, Inc.*, 807 F.3d 827, 837 (7th Cir. 2015) (finding

[4] In any event, Champion does not sell ingredients, but rather finished dog food that includes many ingredients and thus whether an ingredient per se exceeded a heavy metal MTL is irrelevant to whether the finished food violates an MTL. Thus, Dr. Pusillo's opinions about ingredients will not assist the jury.

[5] Moreover, significant portions of Dr. Pusillo's report discussing heavy metals were simply copy and pasted from other sources – often without proper attribution – and rely heavily on non-peer reviewed literature, sources that have been specifically discredited by the Food and Drug Administration (FDA), or private conversations he claims to have had with others at some unspecified time in the past. Indeed, Dr. Pusillo concedes that vast swaths of "his reports" consist of his "analyses" of the works of others expressed

expert "failed to connect the dots" and district court did not abuse discretion in concluding "that there is simply too great an analytical gap between the data and the opinion proffered.'") (quoting *GE v. Joiner*, 522 U.S. 136, 146 (1997)); *Lewis*, 561 F.3d at 706 (affirming exclusion of expert testimony where there were "several notable gaps" and expert "failed to support his conclusions" and "failed to consider and discount other potential causes").

### 2. Dr. Pusillo's Opinions About "Biologically Appropriate," "Fresh Regional Ingredients," and "Whole Prey" are Not Helpful to the Jury

Next, Dr. Pusillo opines that Champion's dog food is "not in agreement" with its nutritional philosophy that its food is "Biologically Appropriate." Ex. 1 at 5, Safety Report Opinion #8. But he cannot identify any particular ingredient in support of that conclusion:

> Q: … Do you have an opinion as to whether any particular ingredient used by Champion … in any of its dog food diets is not in agreement with Champion's definition of biologically appropriate?
>
> A: I plan on putting that in my rebuttal report.
>
> Q: As of right now you have no such opinions; correct?
>
> A: Correct.

Pusillo Dep. Vol. 1 at 46:6-14.

Similarly, he opines that Champion's dog food is "not in agreement" with Champion's statements that its dog food diets contain "fresh regional ingredients," (Ex. 1 at 5, Safety Report Opinion #9), but again he cannot identify any ingredient to support that conclusion either:

---

in their exact same words. Stripped of the euphemisms and put more simply, Dr. Pusillo admitted he plagiarized literally dozens of pages of other peoples' work and passed it off as his own. *See* Pusillo Dep. Vol. 1 at 109:2-22 ("Q: … isn't it just … simply a cut and paste out of this pamphlet by someone named Caldwell from 2018? … A: She had a publication, and I used some of her work … Q: … you didn't put quotations around what you cited for Dr. Caldwell, did you? A: No."); *id.* at 180:1-16 ("Q: … is that your original writing or are you taking that out of that Caldwell white paper that we looked at earlier? A: It's a combination of Caldwell and NRC."); *see also id.* at 112:2-7; 120:7-121:7; 144:3-6; Pusillo Dep. Vol. 2 at 88:16-23. In other words, the opinions he is put forward to give are not really his opinions at all. This alone is enough to exclude Dr. Pusillo and bar him from testifying as to anything at trial. Plagiarism does not arise to the "level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Q: …Sitting here today, do you have any opinion as to what ingredients used by Champion in its dog foods are not in agreement with Champion's definition of fresh regional ingredients?

A: I was going to go into detail on that in my rebuttal report on the fresh regional ingredients especially, but it's --- and the reason I – I was going to go into detail in that is because of some of the documents that I've found that show how many miles away they came from and where they're from.

Pusillo Dep. Vol. 1 at 47:10-19. He does not even know the operating definition from the American Association of Feed Control Officials (AAFCO) of what constitutes "fresh" ingredients, despite proposing to offer an expert opinion on whether Champion's ingredients meet it. *Id.* at 47:4-9 (admitting "I don't know what the definition of AAFCO would call fresh in all cases"), 52:13-15. ("Q. …Are you an expert as to the meanings of the words "fresh" and "raw" in the pet food industry? A. No.").

His attempt to salvage this conclusion based on the kibble form of dog food is unsuccessful. He explains that the "physical form [of kibble] will have a very different effect in the gastrointestinal tract then [sic] natural whole prey," (Safety Report at 26, lines 804-806), but the fact that Champion's dog food is produced in kibble form for practicality reasons is not in dispute in this case, and is not one of Plaintiffs' liability theories. This testimony from Dr. Pusillo is irrelevant to the claims and defenses in this litigation, would serve only to confuse the jury, and does not support any of his conclusions. Thus, it should be excluded.[6]

In addition, significant portions of Dr. Pusillo's reports engage in irrelevant positing about general health matters that are not linked in any way to the facts of this case and should thus be

---

[6] Similarly, Dr. Pusillo's "expert opinions" that Champion "uses supplements in their formulations" and uses "food additives and premixes" should be excluded because that "conclusion" is drawn by simply reading the ingredient panels on the bags and does not require an expert opinion. Ex. 1 at 5, Safety Report Opinions #12-13. Indeed, this opinion does not require "specialized knowledge" and "is unnecessary—and may even be properly excluded—[because] people of common understanding are as capable of comprehending the primary facts and of drawing correct conclusions from them[.]" *United States v. Dewitt*, 943 F.3d 1092, 1096 (7th Cir. 2019).

excluded. For example, page 27 of the Safety Report spends several paragraphs generally describing certain functions of a dog's anatomy, such as the function of the microbiome and the gut microbiota, and the apparently grave consequences that can result when those organs become imbalanced – none of which he would be qualified to diagnose anyway, given that he is not a veterinarian. Through all of the discussion regarding the importance of balance in a dog's "eating anatomy," there is no explanation of how – if at all – Champion's dog food affects any of those anatomical features or causes any imbalance. It is simply an expository narrative of organs in a dog's body with no explanation of how or why they are relevant to Champion or its dog food. Testimony that is not linked to the facts of the case are improper and should be excluded. *See Owens v. Auxilium Pharms., Inc.*, 895 F.3d 971, 973 (7th Cir. 2018) (affirming finding that "[expert's] testimony did not fit the facts of [the] case" and reasoning that the question of "whether an expert's approach lines up with basic facts of the case goes to the relevance and admissibility of the testimony itself."); *Krik v. Crane Co.*, 71 F. Supp. 3d 784, 790 (N.D. Ill. 2014) (finding "there is an insufficient fit between the [expert's] Videos and the facts of this case").

In short, Dr. Pusillo's opinions about the statements on Champion's bags are wholly unsupported by any factual or scientific evidence. Dr. Pusillo has no objective foundation upon which to base his broad conclusions, which renders his testimony unreliable and unhelpful to the jury. *See Timm*, 932 F.3d at 994 (reasoning proffered expert "needed to show that his conclusions were the fruit of a rigorous, objectively-verifiable approach—something more than mere speculation.").

**3. Dr. Pusillo's BPA-Related Opinions are Irrelevant and Not Based on Reliable Methodology**

Dr. Pusillo offers two opinions about BPA: (i) that plastic bins, plastic liners, bulk containers, paper bags lined with plastic, and other raw ingredient containers can be a source of

BPA; and (ii) packaging materials used by Champion can be a source of BPA. Ex. 1 at 3, Test Report Opinions #12-13. Each is irrelevant to the issues in dispute here.

First, these opinions are irrelevant because Dr. Pusillo has no opinion about whether a small level of BPA is or is not safe. His opinions relate to hypothetical sources of BPA and not the effects of BPA on dogs who consume the food. When asked what level of BPA would pose a danger to dogs, he candidly admitted that he "wasn't asked to come up with a level for danger for BPA" and that "[s]omebody else is probably going to address that" because he is "not an expert on BPA." Pusillo Dep. Vol. 2 at 112:5-13; s*ee also* Pusillo Dep. Vol. 1 at 91:6-8 ("Q: Does [the author] Rose set forth any criteria for what's a safe or unsafe level for … BPA. A: I don't recall."); *id.* at 108:22-109:1 ("Q: Well, I'm not asking about aspirations. I'm asking about safety parameters. What should the safety parameters be for dry kibble dog food with respect to BPA …? A: I don't have those now.").

Regardless of whether Dr. Pusillo believes BPA is or is not present in Champion's products as packaged, he could not and did not deny the condemning fact that ExperTox, the lab hired by Plaintiffs, was unable to detect *any BPA whatsoever* in 38 samples from 19 diets of Champion's dog foods. Pusillo Dep. Vol. 1 at 21:11-18 ("Q: … did ExperTox find any levels of BPA in Champion's foods? A: No. Q: Okay, so – but one of the chemicals that ExperTox was testing for would have included BPA; is that correct? A: They were – they – their profile would have included looking at that also."); Pusillo Dep. Vol. 2 at 111:16-112:1 ("Q: And what is it that you asked ExperTox to test for? Was it plasticizers? A: Yeah, originally I think it was plasticizers. Q: And that would include BPA; correct? A: I believe that is what Doctor Lykissa said, that it would include that [BPA], yes. Q: And as it turns out, as you testified previously, Expertox did not detect BPA in the diets that were tested; correct? A: Right.").

Put simply, Dr. Pusillo's speculation about potential sources of BPA that might have wound up in Champion dog food are irrelevant to the facts in dispute when no BPA was detected by the tests that were conducted presumably to support his analysis. Testimony about potential hypothetical sources of BPA are unhelpful and misleading, especially when no BPA was found by ExperTox and Dr. Pusillo has no opinion about what level of BPA would be harmful to dogs. *See* *Moore*, 781 F. Supp. 2d at 704 (Kendall, J.) (finding expert's methodology unreliable where expert "did no testing … [he] stopped halfway through the scientific method by only hypothesizing. The essence of the scientific method is *testing* a hypothesis, something [the expert] failed to do here.").

## V. CONCLUSION

For the foregoing reasons, Dr. Pusillo's affirmative opinions should be excluded in their entirety, and he should be barred from testifying at trial.

[*Remainder of page left intentionally blank*]

Dated: April 29, 2021

Respectfully submitted,

s/ *David A. Coulson*
David A. Coulson (ARDC #6199911)
Jessica J. Fishfeld (ARDC #6313149)
Jared R. Kessler (Admitted *pro hac vice*)
Robert S. Galbo (Admitted *pro hac vice*)
Elisa H. Baca (Admitted *pro hac vice*)
GREENBERG TRAURIG P.A.
333 S.E. 2nd Avenue, Suite 4400
Miami, FL 33131
Tel: (305) 579-0754
Fax: (305) 579-0500
Email: coulsond@gtlaw.com
johnsonj@gtlaw.com
kesslerj@gtlaw.com
galbor@gtlaw.com
bacae@gtlaw.com

Francis A. Citera (ARDC # 6185263)
GREENBERG TRAURIG LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
Tel: (312) 456-8400
Fax: (312) 456-8435
Email: citeraf@gtlaw.com

Rick L. Shackelford, Esq. (*pro hac vice*)
GREENBERG TRAURIG LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Tel: (310) 586-3878
Fax: (310) 586-7800
Email: shackelfordr@gtlaw.com

***Attorneys for Defendants***
***Champion Petfoods USA Inc. and***
***Champion Petfoods LP***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of April, 2021, I served the foregoing document on all counsel of record identified on the below Service List via Registered Email.

*/s/ David A. Coulson*
DAVID A. COULSON

**SERVICE LIST**

Charles J. LaDuca
Katherine Van Dyck
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Tel: 202-789-3960
Email: charlesl@cuneolaw.com
Email: kvandyck@cuneolaw.com

Rebecca A. Peterson
Robert K. Shelquist
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Ave. S., Suite 2200
Minneapolis, MN 55401
Tel: 612-339-6900
Email: rapeterson@locklaw.com
Email: rkshelquist@locklaw.com

Kevin A. Seely
ROBBINS LLP
5040 Shoreham Place
San Diego, CA 92122
Tel: 619-525-3990
Email: KSeely@robbinsllp.com

Daniel E. Gustafson
GUSTAFSON GLUEK PLLC
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: 612-333-8844
Email: dgustafson@gustafsongluek.com

*Attorneys for Plaintiffs*

Kenneth A. Wexler
Kara A. Elgersma
Michelle Perkovic
WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
Tel: 312-346-0022
Email: kaw@wexlerwallace.com

Mark J. Tamblyn
WEXLER WALLACE LLP
333 University Ave., Suite 200
Sacramento, CA 95825
Tel: 916-565-7692
Email: mjt@wexlerwallace.com

Joseph J. DePalma
Susana Cruz Hodge
LITE DEPALMA GREENBERG, LLC
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Email: jdepalma@litedepalma.com
Email: scruzhodge@litedepalma.com