**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **AFSHIN ZARINEBAF, ZACHARY CHERNIK and JOAN MEYER,** individually and on behalf of a class of similarly situated individuals,<br><br>**PLAINTIFFS,**<br><br>V.<br><br>**CHAMPION PETFOODS USA, INC.** and **CHAMPION PETFOODS LP**,<br><br>**DEFENDANTS**. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:18-CV-06951<br><br>Honorable Virginia M. Kendall<br><br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' THIRD AMENDED COMPLAINT** |

## TABLE OF CONTENTS

I.  INTRODUCTION ....................................................................................................1

II. STATEMENT OF MATERIAL FACTS ................................................................3

    A.  CPF's Dog Food has Uniform Packaging Claims and Omissions..........................3

    B.  Biologically Appropriate, Fresh Regional Ingredients, and
        Delivering Nutrients Naturally are Specific, Measurable Marketing
        Promises..........................................................................................................4

    C.  The Packaging Claims and Omissions are Misleading........................................5

        *1.  CPF Should Have Disclosed to Plaintiffs that the Dog
            Food Contained Heavy Metals and Had a Risk of Containing
            BPA and Pentobarbital* .................................................................5

        *2.  CPF Should Have Disclosed that the Dog Food Included
            Frozen, Expired, And Regrind Ingredients* .................................7

        *3.  CPF Should Have Disclosed its Use of Non-Regional Ingredients to
            Consumers* ...................................................................................9

III. LEGAL STANDARD..............................................................................................10

IV. ARGUMENT............................................................................................................11

    A.  A Reasonable Jury Could Find the "Fresh" Promises are False and
        Misleading.........................................................................................................11

    B.  CPF's "Biologically Appropriate" Representation is Not Puffery ......................16

    C.  "Biologically Appropriate" is Misleading Because the Dog Food Includes
        Heavy Meals and Has a Risk of Including BPA..................................................19

    D.  "Biologically Appropriate" is Misleading Because the Dog Food Has a
        Risk of Containing Pentobarbital.......................................................................21

    E.  A Reasonable Jury Could Find the "Regional" Promises are False and
        Misleading.........................................................................................................24

    F.  A Reasonable Jury Could Find that the "Delivering Nutrients Naturally"
        Promise is False and Misleading.......................................................................27

    G.  There are Triable Issues as to Whether CPF Made Material Omissions ..............28

V.   CONCLUSION.............................................................................................................30

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Adkins v. Nestle Purina PetCare Co.*,
    973 F. Supp. 2d 905 (N.D. Ill. 2013) ........................................................................28

*Al Haj v. Pfizer Inc.*,
    No. 17 C 6730, 2019 WL 3202807 (N.D. Ill. July 16, 2019) ....................................12

*Beardsall v. CVS Pharmacy, Inc.*,
    953 F.3d 969 (7th Cir. 2020) .....................................................................................20

*Beaty v. Ford Motor Company*,
    No. 20-35141, 2021 WL 1235844 (9th Cir. Apr. 2, 2021) .........................................23

*Bell v. Publix Super Markets, Inc.*,
    982 F.3d 468 (7th Cir. 2020) ................................................................... *passim*

*Bietsch v. Sergeant's Pet Care Products, Inc.*,
    No. 15 C 5432, 2016 WL 1011512 (N.D. Ill. Mar. 15, 2016) ...................................18

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...................................................................................................10

*Connick v. Suzuki Motor Co.*,
    675 N.E.2d 584 (Ill. 1996).....................................................................................28, 29

*Forty-Eight Insulations, Inc. v. Aetna Cas. & Sur. Co.*,
    162 B.R. 143 (N.D. Ill. 1993) ...................................................................................16

*Gavin v. AT&T Corp.*,
    543 F. Supp. 2d 885 (N.D. Ill. 2008) ........................................................................29

*Gubala v. CVS Pharmacy, Inc.*,
    No. 14 C 9039, 2015 WL 3777627 (N.D. Ill. June 16, 2015) ...................................15

*High Road Holdings, LLC v. Ritchie Bros. Auctioneers (America), Inc.*,
    No. 1:07-cv-4590, 2008 WL 450470 (N.D. Ill. Feb. 15, 2008)..................................17

*Hot Wax v. Turtle Wax*,
    27 F. Supp. 2d 1043 (N.D. Ill. 1998) ........................................................................25

*Ibarrola v. Kind*,
    83 F. Supp. 3d 751 (N.D. Ill. 2015) ..........................................................................26

*In re Cassidy*,
    892 F.2d 637 (7th Cir. 1990) .....................................................................................16

*Kvapil v. Chippewa Cty., Wis.*,
752 F.3d 708 (7th Cir. 2014) ...................................................................10

*Leppert v. Champion Petfoods USA Inc.*,
No. 18-cv-4347, 2019 WL 216616 (N.D. Ill. Jan 16, 2019)...................19

*LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*,
661 F. Supp. 2d 940 (N.D. Ill. 2009) .....................................................25

*Loeb v. Champion Petfoods USA Inc.*
359 F. Supp. 3d 597 (E.D. Wis. 2019)....................................................19

*Loggerhead Tools, LLC v. Sears Holding Corp.*,
No. 12-cv-9033, 2016 WL 5080028 (N.D. Ill. 2016) .............................17

*Malin v. Hospira, Inc.*,
762 F.3d 552 (7th Cir. 2014) ...................................................................13

*Omnicare, Inc. v. UnitedHealth Grp., Inc.*,
629 F.3d 697 (7th Cir. 2011) ...................................................................11

*Rasho v. Jeffreys*,
No. 07-cv-1298, 2021 WL 1602093 (C.D. Ill. Apr. 23, 2021) .........16, 17

*Simpson v. Champion Petfoods USA, Inc.*,
397 F. Supp. 3d 952 (E.D. Ky. 2019) .....................................................20

*Song v. Champion Petfoods USA, Inc.*,
No. 18-cv-3205, 2020 WL 7624861 (D. Minn. Dec. 22, 2020) ...16, 20, 25

*Suchanek v. Sturm Foods, Inc.*,
764 F.3d 750 (7th Cir. 2014) .............................................................11, 16

*Tolan v. Cotton*,
134 S. Ct. 1861 (2014).............................................................................11

*Tolentino v. Friedman*,
46 F.3d 645 (7th Cir. 1995) .....................................................................21

*Tykla v. Gerber Prods. Corp.*
No. 96-cv-1647, 1999 WL 495126 (N.D. Ill. July 1, 1999) .....17, 18, 19, 28

*Washington v. Hyatt Hotels Corp.*
No. 1:19-cv-04724, 2020 WL 3058118 (N.D. Ill. June 9, 2020)............15

*Weaver v. Champion Petfoods USA, Inc.*,
471 F. Supp. 3d 876 (E.D. Wis. 2020).....................................................20

**RULES**

Federal Rule of Civil Procedure 56 ............................................................................10

**STATUTES**

Ill. Comp. Stat. 505/2........................................................................................................28

The Court should respectfully deny CPF's Motion for Summary Judgment as to Plaintiffs' Third Amended Complaint in its entirety for the reasons set forth below.[1]

## I.      INTRODUCTION

CPF is following a familiar playbook — moving for summary judgment on specific statements during briefing on class certification. It also continues its avoidance of applying the correct inquiry here – the reasonable consumer standard – by failing to show how its packaging claims are not misleading under the standard articulated in *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474-75 (7th Cir. 2020). In fact, CPF only mentions this decision in a footnote. But *Bell's* governing standard cannot be ignored in deciding what impression was given to reasonable consumers based on CPF's packaging claims. "Consumer-protection laws do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities, especially in the seconds usually spent picking a low-cost product." *Id.* at 476. And here, the evidence shows that at the minimum, there are triable issues as to whether a reasonable consumer's actual shopping experience would establish that the packaging claims are misleading. *Id.* at 475. CPF's motion is an end-around this principle, asking the Court to parse the words on packaging in a way not expected of the consumers on whose behalf this case has been brought. As a matter of law, therefore, CPF's motion should be denied. The grounds on which it is based are not grounds on which judgment should or can be entered against Plaintiffs.

Even if the Court were to parse the statements on which CPF seeks summary judgment, the motion fails. CPF's dog food packaging evolved from generic representations to robust

---

[1] "CPF" refers collectively to defendants Champion Petfoods USA, Inc. and Champion Petfoods LP. "Plaintiffs" refers collectively to Zachary Chernik, Joan Meyer, and Afshin Zarinebaf.

marketing touting through statements and pictures that the food is Biologically Appropriate dog

food made with regionally sourced fresh and natural ingredients:

  

CPF knew its packaging was valuable real estate and chose to focus on these promises to

attract pet parents willing to pay premium prices for healthy and high quality food for their dogs.

CPF's promises of high quality ultra-premium dog food grew its presence in the premium dog

food market, when all the while it failed to actually deliver the promised high quality ultra-

premium dog food to its customers. CPF continues to grow its market share and charge high prices

by misleadingly promising consumers that its dog food is Biologically Appropriate and made

with fresh, regional ingredients. Plaintiffs were such consumers who believed in the packaging

promises plastered all over CPF's dog food packaging. In the end, Plaintiffs paid a premium price

for dog food that was not the quality as promised on the packaging.

Plaintiffs allege a single cohesive theory of liability—CPF's misrepresentations and

omissions reasonably misled consumers as to the actual content and quality of its dog food. And

as a result, reasonable consumers overpaid for the dog food. CPF's misrepresentations and

omissions are false and misleading for many reasons. Plaintiffs allege that CPF's dog food contains and/or is at risk of containing heavy metals, Bisphenol A ("BPA"), pentobarbital, non-fresh ingredients, such as expired and frozen ingredients and regrinds, and non-regional ingredients—none of which are disclosed on the packaging. CPF's inclusion of these ingredients and contaminants is contrary to its packaging and supports Plaintiffs' single overarching theory that CPF misrepresented the dog food's true content and quality. As discussed below, Plaintiffs have demonstrated the existence of numerous triable issues of material fact.

## II.    STATEMENT OF MATERIAL FACTS

### A.    CPF's Dog Food has Uniform Packaging Claims and Omissions

Plaintiffs purchased (1) Acana Heritage Free-Run Poultry; (2) Acana Regionals Grasslands; (3) Acana Heritage Meats; (4) Acana Singles Lamb & Apple; (5) Acana Singles Pork & Squash; (6) Acana Regionals Meadowland; (7) Acana Singles Wild Mackerel; (8) Orijen Six Fish; (9) Orijen Original; (10) Orijen Regional Red; and (11) Orijen Senior (the "Dog Food") from 2004 until June 2019, which CPF manufactured at its DogStar kitchen in Kentucky. (Statement of Undisputed Material Facts ("SUMF") ¶¶8-15.) During this time, CPF uniformly advertised the Dog Food as "Biologically Appropriate," made with "Fresh Regional Ingredients," and "Delivering Nutrients Naturally" (the "Packaging Claims"). (SUMF ¶¶18, 24, 33, 43; Additional Statement of Undisputed Material Facts ("ASUMF") ¶¶1-2; 8.) CPF also failed to disclose that the Dog Food contained heavy metals,[2] and non-fresh and non-regional ingredients and had the risk of including BPA and pentobarbital (the "Packaging Omissions") on all of the Dog Food packaging. (SUMF ¶20.)

_____

[2] "Heavy metals" refers to arsenic, cadmium, lead, and mercury.

CPF makes the Packaging Claims and omits the Packaging Omissions to convince consumers to purchase the Dog Food at ultra-premium prices. (ASUMF ¶¶1-6.) Because the Packaging Claims are critical, CPF mandates that they are "Printed on Every Bag." (ASUMF ¶1.) CPF considers its "Biologically Appropriate" and "Fresh Regional Ingredient" promises to be "Key Differentiators" that induce consumers to purchase CPF's dog food over its competitors' food. (ASUMF ¶5.) CPF internally acknowledges that its "greatest advantage" and "biggest opportunity" is to promise that the Dog Food is made with fresh, regional ingredients. (ASUMF ¶4.) It also uses "Delivering Nutrients Naturally" to promise that the Dog Food provides "nutrients in their freshest, most natural and flavorful form" and to support the impression that its "authentic fresh ingredients mirror those that Mother Nature Provides." (ASUMF ¶2.)

The Dog Food packaging also contains additional representations that emphasize its Packaging Claims. For instance, the Dog Food predominately features representations or images of "exemplar suppliers" that CPF advertises as its "trusted" suppliers of various fresh, regional, or local ingredients to reinforce that the Dog Food is made with fresh, regional ingredients. (ASUMF ¶¶56-57.)

**B.**      **Biologically Appropriate, Fresh Regional Ingredients, and Delivering Nutrients Naturally are Specific, Measurable Marketing Promises**

The Packaging Claims are specific, measurable marketing promises CPF made to consumers about material attributes of the Dog Food. (SUMF ¶¶19-20, 24, 27, 33-34; 43; ASUMF ¶¶1-14.) Reasonable consumers, such as Plaintiffs, interpret the Packaging Claims as promising that the Dog Food does not contain heavy metals or have a risk of containing BPA and pentobarbital (a barbiturate used to euthanize animals) and instead is made with fresh, regional, and natural ingredients supplied by trusted farmers. (SUMF ¶¶19-20, 24, 27, 33-34; 43; ASUMF ¶¶1-7, 9-14.) Plaintiffs' testimony and expert opinions also confirm that reasonable consumers

4

consider the presence of heavy metals, non-fresh ingredients, and non-regional ingredients as well as the risk of BPA, as material when making their purchasing decisions for premium-priced dog food. (*Id.*). If the presence of these non-conforming ingredients and contaminants were disclosed, reasonable consumers would be less likely to purchase the Dog Food at these ultra-premium prices. (SUMF ¶¶19-20, 24, 33-34, 43; ASUMF ¶16.)

### C. The Packaging Claims and Omissions are Misleading

#### 1. CPF Should Have Disclosed to Plaintiffs that the Dog Food Contained Heavy Metals and Had a Risk of Containing BPA and Pentobarbital

The Dog Food contains heavy metals and has a risk of containing BPA and pentobarbital. (SUMF ¶¶64, 84, 88, 89, 92; *see* ASUMF ¶15.) CPF acknowledges the materiality of heavy metals in pet food. Its employees even proposed an internal goal of "zero heavy metals," in order to align with CPF's "Fresh Regional Ingredients" claim. (ASUMF ¶20.) And while it acknowledges that not testing for heavy metal testing is "negligent," CPF has never adequately or consistently tested the Dog Food and ingredients for heavy metals. (ASUMF ¶15.)

CPF is also running blind as to BPA—it does not test for BPA and simply relies on ineffective, partial guarantees from some of its suppliers. (SUMF ¶¶70-75; ASUMF ¶24.) In addition, CPF's subpar quality assurance and manufacturing practices left some of the Dog Food, Acana Heritage Meats and Orijen Regional Red ("Red Meat Diets"), exposed to the material risk of pentobarbital contaminations. (SUMF ¶¶87-109; ASUMF ¶¶27-33.) CPF eventually sold close to 100,000 pounds of dog food in retail markets even after CPF concluded that it contained beef tallow contaminated with pentobarbital. (ASUMF ¶32.)

CPF's claim that "nearly all foods, whether for humans or pets contain some level of heavy metals," is unsupported by the evidence. (Dkt. 131 at 14.) Plaintiffs' expert, Dr. Gary Pusillo, and CPF's expert, Dr. Robert Poppenga, agree that CPF and other dog food manufacturers can control

and reduce the undesirable presence of non-nutritious heavy metals and avoid the risk of including unnatural chemicals like BPA and pentobarbital in dog food. (SUMF ¶¶53, 73, 88-89; ASUMF ¶¶18, 21-23, 25-27.) This conclusion is corroborated by the results CPF obtained in the limited instances it performed heavy metal testing. This testing showed that CPF's "great asset" (allegedly "fresh" ingredients) had non-detectable amounts of heavy metals, while other non-fresh ingredients, such as catfish meal, contained detectable amounts of heavy metals. (SUMF ¶53; ASUMF ¶18.) This is also consistent with the U.S. Food & Drug Association ("FDA") Total Diet study, which showed that the majority of poultry meat products, such as chicken breasts and turkey breasts, do not contain detectable amounts of heavy metals. (SUMF ¶53.) Specifically, the FDA tested 32 lots of oven-roasted chicken (skin removed) and turkey breast for arsenic, cadmium, and lead, and tested 15 lots of each for mercury. (*Id.*) According to the FDA Total Diet Study, 71.85% of the chicken breast tested non-detect (below 0.010 mg/kg) for arsenic; 93.75% tested non-detect (below 0.002 mg/kg) for cadmium; 100% tested non-detect (below 0.010 mg/kg) for lead; and 100% tested non-detect (below 0.010 mg/kg) for mercury. (*Id.*) Similarly, 75% of the turkey breast tested non-detect for arsenic; 96.875% tested non-detect for cadmium; 100% tested non-detect for lead; and 86.66% tested non-detect for mercury. (*Id.*) In comparison, the Dog Food tested positive for heavy metals at much higher levels when tested by Plaintiffs. Plaintiffs' testing showed arsenic levels up to 3.256 mg/kg; cadmium levels up to 0.200 mg/kg; lead levels up to 0.489 mg/kg; and mercury levels up to 0.0549 mg/kg. (*Id.*) CPF's own expert testing (by Dr. Poppenga), similarly confirms the consistent presence of heavy metals in the Dog Food. (*Id.*)

Plaintiffs did not expect the Dog Food to contain heavy metals or be at risk of containing BPA and pentobarbital based on the "Biologically Appropriate" and "Delivering Nutrients Naturally" promises. (SUMF ¶¶19, 43; ASUMF ¶¶7, 10, 14.) Plaintiffs are not alone in this

6

reasonable expectation.[3] Plaintiffs' expert, Bruce A. Silverman, opined that a reasonable consumer would find the presence of heavy metals and the risk of BPA and pentobarbital as inconsistent with the Packaging Claims. (*Id.*) Plaintiffs' expert, Stefan Boedeker, corroborated this opinion in a survey demonstrating that, based on the Biologically Appropriate and "Delivering Nutrients Naturally" promises, the vast majority (between 68.2% to 84.7%) of survey respondents did not expect the Dog Food to contain heavy metals or have the risk of containing BPA and pentobarbital. (*Id.*) Even CPF's own employees testified that, despite knowing heavy metals can be found in the environment, they thought the Dog Food did not contain heavy metals. (ASUMF ¶17.)

Based on the Packaging Claims, Plaintiffs and other reasonable consumers believe that the Dog Food does not contain heavy metals and does not have a risk of containing BPA or pentobarbital. (SUMF ¶19, 43; ASUMF ¶¶7, 10, 14.) CPF ensures that consumers do not become aware that the Dog Food contains heavy metals and has a risk of containing BPA and pentobarbital by failing to disclose the Packaging Omissions. (SUMF ¶¶20, 55; ASUMF ¶16.)

### 2. *CPF Should Have Disclosed that the Dog Food Included Frozen, Expired, And Regrind Ingredients*

CPF does not contest that every bag of Dog Food contained non-fresh ingredients. (SUMF ¶24; ASUMF ¶¶37, 39-40.) ███████████████████████████████████████

████████████████████████████████████████ (SUMF ¶24; ASUMF ¶¶35-40; 46-47.) CPF does not disclose any frozen ingredients on the Dog Food packaging. (SUMF ¶24; ASUMF ¶¶37, 39-40.)

---

[3] The National Research Council's ("NRC") maximum tolerable limits ("MTLs") are irrelevant here. There is no evidence that the NRC's MTLs dictate consumer expectations regarding heavy metals (as demonstrated by Plaintiffs' expert opinions) and the NRC MTLs are not official FDA regulations and are non-binding on pet food manufacturers. (ASUMF ¶19.)

CPF also regularly allows for expired ingredients to be used in its Dog Food. According to CPF's 30(b)(6) deponent, CPF uses expired ingredients in approximately one in twenty production runs. (ASUMF ¶¶41-45.)

The Dog Food also often contains "regrinds," which are dog and cat foods manufactured by CPF that have been rejected for sale but that CPF grinds, recooks, and introduces as an undisclosed ingredient in subsequent production runs. (ASUMF ¶¶47-52.) CPF uses regrinds in its production "more often than not." (ASUMF ¶49.) ████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████ (ASUMF ¶¶49, 50.) While CPF claims to allow no more than 5% of the ingredients in the Dog Food to be regrinds, internal records reveal it regularly exceeds this internal (but undisclosed) standard:



(ASUMF ¶49.)

Plaintiffs understood the "Fresh Regional Ingredients" claim to mean that CPF used "fresh" ingredients and did not include frozen or expired ingredients or regrinds. (SUMF ¶24; ASUMF ¶¶11-12.) When making purchasing decisions, Plaintiffs, like other reasonable consumers, did not comprehend that CPF's claim of "raw" referred to the industry specific definition by the Association of American Feed Control Officials ("AAFCO") (which does not even mention "frozen"). (SUMF ¶24; ASUMF ¶12.). CPF itself was aware that a reasonable consumer, including its own employees, had difficulty understanding the meaning of CPF's representations of "fresh" or "raw" ingredients or ingredients that are delivered "fresh" or "raw." (ASUMF ¶34.)

Plaintiffs' marketing expert (Silverman) opined that a reasonable consumer would find the inclusion of frozen and expired ingredients and regrinds as inconsistent and misleading based on the Packaging Claims. (SUMF ¶24.) Plaintiffs' consumer survey expert (Boedeker) confirmed that the large majority of consumers understand CPF's "Fresh Regional Ingredients" and "Biologically Appropriate" Packaging Claims to mean that CPF used only fresh ingredients, unless specifically stated otherwise. (SUMF ¶24; ASUMF ¶7.) CPF has knowledge of this consumer understanding— it acknowledged that its use of regrinds was inconsistent with its Packaging Claims and was

███████████████████████████████████████████████████████████

█████████████████ (SUMF ¶24; ASUMF ¶¶12, 48.)

### 3. CPF Should Have Disclosed its Use of Non-Regional Ingredients to Consumers

Every bag of the Dog Food contains undisclosed non-regional ingredients, such as turmeric from India and imported fish oils. (ASUMF ¶¶53-54.) During the relevant period here, CPF used herring oil imported from Denmark and pollock oil from Washington (more than 2,000 miles from CPF's DogStar kitchen) in the Dog Food. (*Id.*) Consistent with its inability to remain true to its "regional" claims, CPF now admits that it started using Chinese vitamins, such as B1 and B6, around May 2019. (ASUMF ¶58.)

In addition, the Dog Food packaging features "exemplar suppliers" to reinforce that the ingredients are sourced from local, trusted farmers. (ASUMF ¶¶56-57.) However, in 2016, CPF purchased less than 3% of its chicken from its advertised supplier. (ASUMF ¶56.) By 2018, CPF changed its packaging for Acana Heritage Free-Run Poultry to feature a new exemplar supplier. (ASUMF ¶57.) When doing so, CPF purposefully concealed the real identity of its new supplier, Tyson, Inc., by describing the supplier as "Hefton Farms," because "[it] shouldn't mention the name of the farm, since Tyson is a huge multinational conglomerate." (*Id.*) CPF regularly deceives

consumers regarding its ingredient sourcing because it knows this is material information to reasonable consumers. In 2016, CPF withheld the name of its other major chicken supplier (also a multinational conglomerate) because CPF employees were concerned about disseminating that this supplier had recently experienced "a Class 1 recall involving over 4.5 million pounds of chicken for contamination with plastic, wood, rubber, and metal." (SUMF ¶34.)

Plaintiffs testified that they believed CPF purchased its ingredients from regional suppliers, like those advertised on the Dog Food packaging. (SUMF ¶¶33-34; 62.) Plaintiffs' marketing expert opined that a reasonable consumer would find CPF's use of undisclosed, non-regional ingredients inconsistent with its "Fresh Regional Ingredients" claim. (SUMF ¶¶33-34.) After conducting a consumer survey with hundreds of respondents, Plaintiffs' survey expert confirmed that a majority of respondents did not expect the Dog Food to contain imported or non-regional ingredients based on CPF's "Fresh Regional Ingredients" claim. (SUMF ¶33; ASUMF ¶7.) Finally, CPF has debated changing the reference to regional in its "name" because it is no longer able to purchase enough ingredients locally. (SUMF ¶33; ASUMF ¶¶13, 55.)

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett¸* 477 U.S. 317, 322 (1986). "A genuine dispute as to any material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Kvapil v. Chippewa Cty., Wis.*, 752 F.3d 708, 712 (7th Cir. 2014) (citation omitted). "[D]istrict courts presiding over summary judgment

proceedings may not weigh conflicting evidence, . . . or make credibility determinations." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (internal citations and quotations omitted). Rather, the Court's role is "'to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

## IV. ARGUMENT

### A. A Reasonable Jury Could Find the "Fresh" Promises are False and Misleading

Summary judgment is improper as to the "fresh" promises. First, a jury should decide the objective question of whether CPF's packaging is misleading to a reasonable consumer. *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 758, 762-763 (7th Cir. 2014). Finding otherwise would "rob[] the jury of the opportunity to determine, as a matter of fact, whether the [fresh] statement is 'clearly misleading,' just 'misleading,' or 'not misleading at all.'" *Bell*, 982 F.3d at 494.

Second, Plaintiffs do not have to show that CPF "falsely advertised its dog food as ***only*** containing 'fresh' ingredients," (Dkt. 131 at 26), because that is not the standard. CPF "appears to assume that a package cannot be misleading if it does not contain literal falsehoods. But that is not the law." *Suchanek*, 764 F.3d at 761. The law only requires Plaintiffs to show the "fresh" claim is "likely to deceive reasonable consumers, which requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell*, 982 F.3d at 474-75 (quotations omitted). And, nothing in *Bell* indicates that it applies only to "100%" claims. (Dkt. 131 at 28-29 n.15.) The entire opinion is premised on the Court's rejection of "a rule that immunize[s] any ambiguous label so long as it is susceptible to one non-deceptive interpretation" and instead "[s]ticking to the reasonable consumer standard" to determine "real consumer behavior." *Bell*, 982 F.3d at 477. Whether the issue is a "100%" claim or the Packaging Claims, that standard is the same—"how consumers actually behave—how they

perceive advertising and how they make decisions. These are matters of fact, subject to proof that can be tested at trial." *Id.* at 481. CPF's excuse that is does not promise 100% fresh ingredients is thus not dispositive. Indeed, "where an advertisement conveys more than one meaning, one of which is false, the advertiser is liable for the misleading variation." *Id.* at 478.[4]

Third, CPF repeats the "fresh" misrepresentation an average of 21 times on its packaging. (Dkt. 124-3.) Yet it argues that this repeated promise is not misleading because it mentions a single freeze-dried ingredient on the front of the packaging (under "high" or "natural" (Dkt. 95-2 to 95-8) or the "FD" symbol (Dkt. 95-9, 95-10)), and because it discloses "raw" ingredients in the meat math or back panels (Dkt. 95-2 to 95-10).[5] However, "using fine-print text to obliquely walk back a prominent claim on the front of the box—particularly absent other product features that contextualize that claim, []—generally does not preclude a jury finding that the frontside claim was deceptive." *Al Haj v. Pfizer Inc.*, No. 17 C 6730, 2019 WL 3202807, at *5 (N.D. Ill. July 16, 2019) (internal citations omitted). As the Seventh Circuit has noted, a jury could find that CPF's practice of plastering "fresh" all over its packaging is misleading despite these disclosures because "reasonable consumers do not instinctively parse every front label or read every back label before placing groceries in their carts." Bell, 982 F.3d at 476. Whether CPF is correct in its belief that its "actual labeling" discloses not all the ingredients in the Dog Food are fresh (Dkt. 131 at 27), that

---

[4] Further, *Bell's* reasoning regarding the consumer experience is applicable to any grocery item irrespective of the cost. (Dkt. 131 at 28 n. 15.) Plaintiffs are no different than the "grocery shoppers [who] make quick decisions that do not involve careful consideration of all information available to them." *Bell*, 982 F.3d at 481. And even if they were more deliberate due to the high cost of the Dog Food, there is nothing on the packaging disclosing the Packaging Omissions.

[5] That CPF lists some freeze-dried ingredients in the ingredient panel is not dispositive. *See Bell*, 982 F.3d at 476 ("We therefore join our colleagues in at least three other circuits in holding that an accurate fine-print list of ingredients does not foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers.").

is an issue for the jury because "how consumers actually behave—how they perceive advertising and how they make decisions . . . are matters of fact." *Bell*, 982 F.3d at 481. The question is not what CPF believes its packaging conveys, but "'what does the person to whom the advertisement is addressed find to be the message . . . what does the public perceive the message to be?'" *Id.* at 479 (citation omitted).

Fourth, the Dog Food packaging's brief mentions of raw and freeze-dried ingredients do not make CPF's "fresh" claim any less misleading to the reasonable consumer. CPF admits that "[t]he ratio of fresh to raw chicken [fish, and pork] ingredients [and fruits and vegetables] varied, depending on a number of factors, including the time of year and supply." (Dkt. 114-6 at ¶¶28, 30, 32-33, 35.) A reasonable consumer would not infer "raw" to mean frozen, but rather would understand "raw" to mean fresh or refrigerated. (SUMF ¶24.) Plaintiffs' testimony evidences this reasonable interpretation:[6]

- When asked the difference between lamb that is raw and lamb that is frozen, Plaintiff Zarinebaf testified that "[t]he lamb is fresh, it's not regrind, it's not expired, it's not stored in the warehouse for a long period of time. And raw for me is not frozen." (SUMF ¶24; ASUMF ¶12.) He also testified that raw food should be handled in a "way [] that it protects [] freshness of the food and not expired and not frozen. Raw does not mean frozen." (SUMF ¶24) and that ("Raw means it's not frozen.") (SUMF ¶24; ASUMF ¶12.)

- Plaintiff Chernik likewise testified that raw and fresh are synonymous, and that raw means uncooked and unprocessed. (SUMF ¶24; ASUMF ¶12.) He also testified that raw means uncooked and unprocessed (*Id.*)

The same is true with respect to CPF's "freeze-dried" disclosures. When asked what freeze-dried lamb means, Plaintiff Zarinebaf responded that it meant the lamb was produced fresh, not "stored

---

[6] CPF "cherry-picked isolated phrases from [Plaintiffs'] deposition," but as demonstrated here, these snippets "amount[] to nothing more than [CPF] selectively quoting deposition language it likes and ignoring deposition language [CPF] does not like." *Malin v. Hospira, Inc.*, 762 F.3d 552, 564 (7th Cir. 2014). The parties' interpretation of the Plaintiffs' testimony is precisely the type of evidence that goes to a jury.

for many weeks or months" and "not regr[ound] and then sold later." (SUMF ¶24.) Plaintiff Chernik also testified that he associated the use of dried ingredients with Dog Food that was "less and less fresh." (*Id*.) Plaintiffs also repeatedly testified that "fresh" does not include expired or frozen ingredients. (SUMF ¶¶19, 24; *see also* SUMF ¶19 (Plaintiff Zarinebaf testifying that "Biologically appropriate for me is that, first of all, it's fresh. It's not expired."); SUMF ¶24 (Plaintiff Zarinebaf testifying "fresh" would never have frozen ingredients); *Id*. (Plaintiff Meyer testifying expired ingredients are not fresh); *Id*. (Plaintiff Meyer also testifying "fresh" meant CPF was processing ingredients at the time they were delivered fresh); *Id*. (Plaintiff Meyer further testifying fresh fish meant it was caught and delivered fresh to CPF); *Id*. (Plaintiff Chernik testifying he understood CPF's packaging to communicate the ingredients were "never frozen"); *Id*. (Plaintiff Chernik also testifying there is a difference between fresh and frozen); *Id*. (Plaintiff Chernik testifying "fresh" fish could be put on ice "to keep their temperature cool, but not to the point of making them frozen"); *Id*. (Plaintiff Chernik further testifying he did not expect regrinds to be in the Dog Food).)

Finally, there is other evidence in the record for a jury to conclude that CPF's "fresh" claim is misleading. CPF ignores both Plaintiffs' consumer survey and expert opinion showing that the "fresh" claim is misleading despite the absence of a "100%" claim. (SUMF ¶24.) Indeed, 77-88% of survey respondents did not expect "fresh" to include expired or reground ingredients. (*Id*.) CPF offers no evidence to rebut Silverman's opinion that a reasonable consumer would be misled by the inclusion of frozen ingredients, expired ingredients, and regrinds. (*Id*.) CPF also has no legal or factual argument to refute reasonable consumers' belief that CPF only used fresh ingredients unless the packaging stated otherwise (which it did not). (*Id*.) Further, CPF does not contest that most, if not all, of the fish used in the Acana Singles Wild Mackerel, Orijen Six Fish, Orijen Adult,

14

and Orijen Regional Red diets is frozen. (SUMF ¶40; ASUMF ¶38.) It also does not contest that it plate freezes deboned chicken and chicken giblets, ingredients. (ASUMF ¶39.) 

(SUMF ¶24; ASUMF ¶12.) Nor does CPF dispute that it regularly manufactures the Dog Food with frozen red meat—such as Acana Regionals Grasslands, Acana Heritage Meats, Acana Lamb & Apple, Orijen Adult, and Orijen Regional Red. (SUMF ¶40.)

CPF also ignores its own documents and testimony (including of its corporate designee) demonstrating that CPF regularly uses regrinds, and frozen and expired ingredients. (SUMF ¶40; ASUMF ¶¶38, 42, 49; 54.) In fact, while CPF claims that a maximum 5% of ingredients in its Dog Food are regrinds, it regularly exceeds that practice. (ASUMF ¶49.)

(*Id.*

This evidence is precisely the type of evidence lacking in the cases cited by CPF. In both *Trujillo v. Apple Computer, Inc.* and *Washington v. Hyatt Hotels Corp.*, the alleged omissions were disclosed right on the box or during the booking process. 581 F. Supp. 2d 935, 938 (N.D. Ill. 2008); No. 1:19-cv-04724, 2020 WL 3058118, at *5 (N.D. Ill. June 9, 2020). Conversely, while CPF repeatedly argues that it never made "100%" claims, it never points to *any* disclosure of its regular use of frozen ingredients or its common practice of using expired ingredients and regrinds. *Cf Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2015 WL 3777627 at *6 (N.D. Ill. June 16, 2015) (where the product was "clearly [] labeled as being vanilla-flavored and containing additional natural and artificial ingredients at issue" and not simply "pure whey protein" as plaintiff alleged).

The record here clearly demonstrates there exists an issue of fact regarding CPF's "fresh" claim and that "[a] jury should [] decide[] the question [of] whether the packaging was likely to mislead reasonable consumers." *Suchanek*, 764 F.3d at 762.

### B.     CPF's "Biologically Appropriate" Representation is Not Puffery

CPF's "Biologically Appropriate" representation is an actionable statement of verifiable fact. CPF is judicially estopped from arguing otherwise, and none of CPF's cited authority supports the proposition that it is puffery.

Judicial estoppel "is used to prevent litigants from 'playing fast and loose with the courts' by asserting inconsistent positions in different suits in order to gain the upper hand." *Forty-Eight Insulations, Inc. v. Aetna Cas. & Sur. Co.*, 162 B.R. 143, 147 (N.D. Ill. 1993) (quoting *In re Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990)). "[T]he Seventh Circuit has imposed three limitations on asserting a judicial estoppel argument: (1) the facts of both cases must be the same; (2) the arguments must be clearly inconsistent; and (3) some type of bad faith or at least 'cynical gamesmanship' must be shown." *Id.* at 148 (internal citations omitted). CPF's argument satisfies these criteria. As recognized in authority upon which CPF relies, CPF has taken the position that "'biologically appropriate' is a factual statement that may be proved or disproved." *Song v. Champion Petfoods USA, Inc.*, No. 18-cv-3205, 2020 WL 7624861, at *5 (D. Minn. Dec. 22, 2020), *appeal docketed*, No. 20-3689 (8th Cir. Dec. 28, 2020). The bases of the plaintiffs' claims in *Song* are virtually identical to the present case. *Id.* at *1. CPF has blatantly changed its position on a core factual issue, which is the type of cynical gamesmanship judicial estoppel is meant to protect. *Rasho v. Jeffreys*, No. 07-cv-1298, 2021 WL 1602093, at *3 (C.D. Ill. Apr. 23, 2021); *see id.* ("[I]t is appropriate for the Court to hold Defendants to their initial position and to reject their arguments regarding Plaintiffs' alleged lack of proof.").

16

Even if CPF were not judicially estopped, its cited authority does not support that the Biologically Appropriate statement is puffery. In *High Road Holdings, LLC v. Ritchie Bros. Auctioneers (America), Inc.*, the defendant's website stated its auction process "'can maximize the return on'" the items auctioned. No. 1:07-cv-4590, 2008 WL 450470, at *1 (N.D. Ill. Feb. 15, 2008). The *High Road* court compared this "maximize" language to the sort of superlative language involved in claiming "baby food is the 'most wholesome nutritious safe food[] you can buy anywhere in the world [.]'" *Id.* at *4 (quoting *Tykla v. Gerber Prods. Corp.*¸ No. 96-cv-1647, 1999 WL 495126, at *8 (N.D. Ill. July 1, 1999)) (alteration in original). The Biologically Appropriate statement is not the same kind of superlative claim that "should put the reasonable consumer on alert that the comments are meaningless sales patter." *Tykla*, 1999 WL 495126, at *8. CPF's citation to *Loggerhead Tools, LLC v. Sears Holding Corp.*, No. 12-cv-9033, 2016 WL 5080028 (N.D. Ill. 2016), fares no better. *Loggerhead* dealt with statements that a tool was "unique," "innovative," and "operates in a different way." *Id.* at *3-5. The court found these general claims subjective, could not be proven to be literally false, and that plaintiff failed to show the terms caused consumer confusion. *Id.* at *5-6. None of those circumstances are present here.

As discussed above, recent Seventh Circuit precedent makes clear that the other "context" on the packaging is irrelevant if consumers are nonetheless misled by the prominent Biologically Appropriate statements. *Bell*, 982 F.3d at 476. Consumers are unlikely to scour the entire product packaging to consider the statements CPF claims establish the Biologically Appropriate statement is puffery. *Id.* at 481 ("We doubt it would surprise retailers and marketers if evidence showed that many grocery shoppers make quick decisions that do not involve careful consideration of all information available to them."). As *Bell* recognized, CPF could have conducted its own study to show that consumers are not actually misled by the Biologically Appropriate statements, *id.* at 480,

17

but CPF chose not to do so. Whether additional statements on the packaging sufficiently inform consumers is therefore a question of fact for the jury to decide.[7]

CPF misleadingly quotes *Tylka* to create the impression that any statement relating to "nutrition" is inherently so "nebulous" that "it cannot be said that the term reasonably misleads consumers." (Dkt. 131 at 21.) However, the full quote is: "Nutrition is a nebulous concept, *although quantifiable in some respects*. With respect to the use of the term in Gerber's advertisements, it cannot be said that the term reasonably misleads consumers." *Tylka*, 1999 WL 495126, at *8 (emphasis added). *Tylka* therefore stands not for the proposition that superlative language regarding nutrition that is prototypical to puffery cannot mislead consumers. That type of superlative language is not at issue here and Plaintiffs have produced evidence demonstrating that "Biologically Appropriate" is misleading. (ASUMF ¶7.)

The "Biologically Appropriate" statement here is more like the misrepresentations at issue in *Bietsch v. Sergeant's Pet Care Products, Inc.*, which rejected *Tylka*. No. 15-cv-5432, 2016 WL 1011512, at *1, 4 (N.D. Ill. Mar. 15, 2016). In *Bietsch*, which dealt with whether advertising for dog treats contained actionable statements, the court noted that the "packaging conveys that the [treats] are nutritious, promising a 'guaranteed analysis' of the essential nutrients contained in the [pet treats] in accordance with the 'AAFCO Dog Food Nutrient Profiles.'" *Id.* at *4. The court

---

[7] And the jury may well find that, at most, this "context" is meant to further mislead consumers. CPF makes factual statements that explain what Biologically Appropriate is meant to convey: "ORIJEN ORIGINAL is loaded with free-run chicken and turkey, wild-caught fish and whole nest-laid eggs — delivered FRESH or RAW, in richly nourishing WholePrey™ ratios. Prepared in our Kentucky DogStar® kitchens, Biologically Appropriate™ ORIJEN keeps your dog happy and strong." (Dkt. 95-10 at 2.) The packaging then goes on to list ingredients and a "guaranteed analysis" of nutrition information. (*Id.*) It also states: "ORIJEN ORIGINAL DOG FOOD IS FORMULATED TO MEET THE NUTRITIONAL LEVELS ESTABLISHED BY THE AAFCO DOG FOOD NUTRIENT PROFILES FOR ALL LIFE STAGES." (*Id.*) The overall context is clear: Biologically Appropriate is meant to convey the factual claim that the Dog Food contains wholesome ingredients that constitute a healthy diet for dogs.

found that "[t]he reference to these recognized standards suggests that Sergeant's nutrition claims are tested and verifiable, essentially placing a seal of approval on Sergeant's claims." *Id.* It noted that unlike in *Tylka*, the defendant was "not claiming to make the 'best' or the 'most' nutritious treats" but rather "used objectively verifiable terms" on its packaging that were actionable. *Id.* The same is true here.

Finally, this Court has already recognized that "Biologically Appropriate" is an assertion of fact. (Dkt. 47 at 13-14.) The Court came to the same conclusion in *Leppert v. Champion Petfoods USA Inc.*, No. 18-cv-4347, 2019 WL 216616, at *7 (N.D. Ill. Jan 16, 2019). CPF's presentation of non-analogous authority does nothing to undermine the Court's previous finding.

### C.    "Biologically Appropriate" is Misleading Because the Dog Food Includes Heavy Meals and Has a Risk of Including BPA

CPF argues that, because heavy metals and BPA are not present "at a level that would pose a danger" to dogs, it would be unreasonable for consumers to expect the Dog Food to not contain heavy metals and BPA at these levels. (Dkt. 131 at 22-23.) CPF's argument is based on a misunderstanding of Plaintiffs' claims. As this Court recognized in a similar case:

> Plaintiffs['] theory does not rely on any particular level of heavy metals or BPA as being 'unsafe' or dangerous; the mere fact that heavy metals and/or BPA are associated with potential health risk to animals and humans whatsoever could lead a consumer to believe that cat food containing these substances at any level is neither healthy, natural, nor high quality.

*Leppert*, 2019 WL 216616, at *6. In contrast, the plaintiff in *Loeb v. Champion Petfoods USA Inc.* alleged "excessive quantities" of heavy metals at concentrations that were "dangerous." 359 F. Supp. 3d 597, 603 (E.D. Wis. 2019).

CPF offers no evidence to support its own conclusion that "a consumer acting reasonably" would not take "Biologically Appropriate" to mean the Dog Food is free of heavy metals and BPA. (Dkt. 131 at 22-23.) On the other hand, Plaintiffs' expert *did* conduct a consumer survey and found

that consumers are in fact misled by the "Biologically Appropriate" due to the presence of heavy metals and BPA. (Dkt. 95 at 13; SUMF ¶19.)[8]

To support its argument, CPF cites to *Simpson*, *Song*, and *Weaver*. But these cases are incompatible with *Bell*. The reasonable consumer standard set forth in *Bell* does not allow consideration of: (1) what a company claims it intended the misrepresentation to mean; (2) the district court's opinion of what "Biologically Appropriate" means; or (3) the theoretical business implications of a company being held liable *if* a plaintiff was misled. 982 F.3d at 479-80, 482. In *Simpson v. Champion Petfoods USA, Inc.*, the court inserted its own understanding of what "Biologically Appropriate" meant rather than allowing evidence of what consumers actually believe it means. 397 F. Supp. 3d 952, 972-73 (E.D. Ky. 2019). Likewise, and in conflict with *Bell's* admonishment that courts "take care to avoid confusing a consumer's understanding . . . with a federal judge's understanding," *Bell¸* 982 F.3d at 480, the court in *Song* applied its own understanding of what a reasonable consumer would expect regarding the presence of heavy metals and BPA. *Song*, 2020 WL 7624861, at *5-6. And as with *Simpson*, *Song* was decided at the motion to dismiss stage without the benefit of consumer surveys. *Id.* at *1. Similarly, the court in *Weaver v. Champion Petfoods USA, Inc.* substituted its own understanding for the understanding of actual consumers. 471 F. Supp. 3d 876, 882 (E.D. Wis. 2020), *appeal docketed*, No. 20-2235 (7th Cir. July 9, 2020). CPF also cites to *Beardsall v. CVS Pharmacy, Inc.*, but as CPF's own quotation makes clear, the plaintiff in that case *expected* the presence of preservatives. 953 F.3d 969, 977 (7th Cir. 2020). CPF cites to no evidence demonstrating that Plaintiffs expected the Dog Food to

---

[8] CPF argues that the opinions and testimony offered by Plaintiffs' experts "should be excluded from this case." (Dkt. 131 at 23-24 n.12.) Plaintiffs have opposed CPF's motions to exclude the opinions and testimony of their experts and incorporate their briefing herein. (Dkt. 132, 135.)

contain heavy metals and/or BPA. Moreover, Plaintiffs' expert has conducted a survey that demonstrates consumers expect exactly the opposite. (Dkt. 95 at 13; SUMF ¶19.)

CPF also argues that Plaintiffs' BPA claims are "based on speculation" because "Plaintiffs cannot demonstrate that they ever purchased Champion dog food that contained BPA." (Dkt. 131 at 23.) However, this position is directly in conflict with the opinion from CPF's expert that "[b]ecause of the ubiquitous presence of BPA in our environment, it is nearly certain that BPA is present in most food products." (SUMF ¶70.) Unless CPF is suggesting that its own expert's opinion is unreliable, Plaintiffs' claims are not speculative with regard to the presence of BPA. At the very least, there is a genuine issue of material fact regarding the presence of BPA and since "all evidence and all inferences that can be drawn from the evidence are viewed in a light most favorably to the nonmoving party," there is no basis to grant CPF's motion as to this issue. *Tolentino v. Friedman*, 46 F.3d 645, 649 (7th Cir. 1995).

### D.     "Biologically Appropriate" is Misleading Because the Dog Food Has a Risk of Containing Pentobarbital

The material risk of pentobarbital alone renders the "Biologically Appropriate" claim false and misleading. Pentobarbital is a barbiturate used to euthanize animals and is biologically inappropriate for dogs to consume in any amount. (ASUMF ¶27.)  Through their testimony and proffered expert opinions, Plaintiffs have shown that reasonable consumers would find CPF's "Biologically Appropriate" claim to be false and misleading based on the risk of inclusion of pentobarbital. (SUMF ¶19; ASUMF ¶¶27; 33.) Reasonable consumers, such as Plaintiffs, consider the risk of pentobarbital contamination material to their purchasing decision and a reasonable consumer would be less likely to purchase the Dog Food, or refuse to purchase it at all, if CPF had disclosed the material risk of pentobarbital contamination. (*Id*.) In contrast, CPF offers no evidence to support that a reasonable consumer would not consider the risk of pentobarbital as material to

21

their purchasing decision besides the fact that the Red Meat diets did not contain more than two parts per billion ("ppb") of pentobarbital. (Dkt. 131 at 24-26.)

Ignoring the evidentiary record established by Plaintiffs, CPF instead claims that the risk of pentobarbital in the Red Meat diets is "speculative" and based on "conjecture" because "Plaintiffs have not and cannot demonstrate that they purchased dog food containing pentobarbital." (Dkt. 131 at 24.) Not so. Over the course of two years, CPF exposed the Red Meat Diets to the risk of pentobarbital by using beef tallow as an ingredient despite its material risk of containing pentobarbital. (SUMF ¶¶88, 89; ASUMF ¶¶27-33.) During these two years, Plaintiffs purchased Red Meat diets without realizing that the nature of beef tallow (as a high risk ingredient) and CPF's inadequate quality control exposed the Red Meat diets to the material risk of containing pentobarbital. (SUMF ¶¶88, 89, 94; ASUMF ¶¶ 28-31.)

From 2016 until May 2018, CPF purchased beef tallow from JBS, which is a large rendered ingredient supplier who had a pattern and practice of manufacturing beef tallow contaminated with pentobarbital. (SUMF ¶¶88-89, 92-93; ASUMF ¶¶27-33.)[9] The FDA's own testing evidences that **all** of the beef tallow CPF purchased from JBS between 2016 and May 2018 had a material risk of containing pentobarbital. (SUMF ¶109; ASUMF ¶30.) Indeed, the FDA's test results of JBS beef

---

[9] Since CPF first started purchasing beef tallow from JBS in 2016, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

tallow from November 2017 to January 2018 **all tested positive** for pentobarbital. (ASUMF ¶30.) This is sufficient evidence upon which a jury could conclude that all the beef tallow CPF purchased from JBS had the material risk of containing pentobarbital.

CPF tenuously argues that Plaintiffs do not have standing to bring claims premised upon the pentobarbital contamination because the Red Meat diets were tested and found to contain pentobarbital at levels below 2 ppb and that this risk of pentobarbital is somehow immaterial to a reasonable consumer. (Dkt. 131 at 24-26.) First, the argument that any consumer would find any level of barbiturates acceptable in pet food is implausible. Further, Plaintiffs have demonstrated that the inclusion of an ingredient that had a material risk of containing pentobarbital is material to consumers, even if the Red Meat diets contained pentobarbital below 2 ppb. (SUMF ¶19; ASUMF ¶¶27; 33.)

CPF offers no legal authority to support its contention that Plaintiffs do not have standing to pursue claims based on the risk of pentobarbital contamination. In fact, the Ninth Circuit recently opined on the issue of materiality for an alleged defect and found that, even if a defect occurs an estimated 0.05% of the time, a reasonable juror could find that risk material. *Beaty v. Ford Motor Company*, No. 20-35141, ___ F. App'x ___, 2021 WL 1235844, at *3 (9th Cir. Apr. 2, 2021). Similarly, a reasonable juror in the present matter could (and should) find that the risk of pentobarbital in the Red Meat Diets was a material fact for a consumer when deciding whether to purchase CPF's ultra-premium priced Dog Food and that the risk of pentobarbital failed to meet a reasonable consumer's expectations for "Biologically Appropriate" Dog Food. (SUMF ¶19; ASUMF ¶¶27; 33.)

### E.     A Reasonable Jury Could Find the "Regional" Promises are False and Misleading

The record demonstrates that there are material factual disputes as to whether the "regional" promise is misleading to reasonable consumers, including Plaintiffs. CPF again ignores the actual evidence in this case, including: (1) Plaintiffs' testimony; (2) Plaintiffs' expert opinions; (3) expert opinions and surveys; and (4) CPF's internal documents. (SUMF ¶33.) Each of these demonstrate CPF's "regional" promise is false and misleading.

CPF's use of Indian turmeric, imported fish oils, and Chinese vitamin premixes does not conform to CPF's "regional" promises and misleads consumers, including Plaintiffs, deciding to purchase the Dog Food.[10] (SUMF ¶33; ASUMF ¶¶13, 53, 54, 58.) Plaintiffs understood the "regional" packaging claims to mean that its ingredients were purchased from the advertised regional farmers and similar regional farms. (SUMF ¶33; ASUMF ¶¶56, 57.) This is also supported by both the Plaintiffs' consumer survey and expert opinion. (ASUMF ¶59, (Silverman opines that a reasonable consumer would not expect CPF to use non-regional ingredients and a vast majority of respondents would not expect imported ingredients in Dog the Food based on "regional" promises and that each ingredient was sourced regionally based on the "regional" promises).) Consistent with its misleading packaging, CPF's briefing fails to disclose that the "regional" chicken sourced from "Paducah, Kentucky," is not from "Clark Farms" or "Hefton Farms" as advertised, but rather large, multinational corporations that CPF knew, if disclosed, would make its Dog Food less appealing to its consumers. (ASUMF ¶¶56, 57.) CPF's internal records show that its employees actively and intentionally worked to hide its real chicken suppliers—Pilgrim's

---

[10] When CPF discloses some (but not all) of its non-regional ingredients, such as rainbow trout, CPF still misleads consumers into believing that these regional ingredients are fresh. (SUMF ¶¶33-34, 37-40.)

Pride and Tyson Inc.—from consumers to maintain the façade that small, family operated regional farms supplied its chicken. (SUMF ¶34; ASUMF ¶¶56, 57; Dkt. 95 at 16.)

To the extent CPF claims that it discloses some of its non-regional ingredients, such as fish from "New England's vast Atlantic waters," CPF advertises these ingredients as "fresh or raw." Most, if not all, of the fish used in Acana Singles Wild Mackerel, Orijen Six Fish, Orijen Adult, and Orijen Regional Red diets is frozen and then ground into a non-frozen state by one of CPF's fish suppliers prior to delivery. (SUMF ¶40.) Ultimately, CPF has admitted that its undisclosed use of non-regional ingredients is misleading and deceptive. (SUMF ¶33; ASUMF ¶¶13, 55; ("We have recently considered changing this [regional] definition[] as we have outgrown our ability to source from our local region.").)

Against this backdrop, CPF dedicates two pages to surgically parsing through the term "regional" and its intended definition, but it misses the point (Dkt. 131 at 29-30.) CPF argues they "did not make an untrue or misleading representation as to 'regional,' warranting entry of summary judgment as to this theory." (*Id.* at 31.) But "[h]ow reasonable consumers actually understand . . . labels is a question of fact." *Bell*, 982 F.3d at 483. And "given the existence of competing definitions, th[is] Court cannot find as a matter of law that [CPF dogfood] meets the definition of ['regional']." *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.,* 661 F. Supp. 2d 940, 949 (N.D. Ill. 2009); *see also Hot Wax v. Turtle Wax*, 27 F. Supp. 2d 1043, 1048 (N.D. Ill. 1998) (denying summary judgment based on conflicting testimony as to the correct definition of "wax"). Instead, the question becomes, "'what does the person to whom the advertisement is addressed find to be the message? That is, what does the ***public*** perceive the message to be?'" *Bell*, 982 F.3d at 479 (emphasis added) (internal citation omitted).

CPF tellingly brushes off the fact that the conclusions reached in *Ibarrola v. Kind*, 83 F. Supp. 3d 751 (N.D. Ill. 2015), were rejected in *Bell*, which alleged "deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." 982 F.3d at 477. According to CPF, its "regional" ingredient packaging label cannot be misleading, as a matter of law, because CPF uses *some* regional ingredients and never represented that its ingredients were "100% regional." This argument was rejected by *Bell*, which held that defendants' packaging claims regarding "100% Grated Parmesan Cheese" were misleading, even though cheese was a minor ingredient and some real cheese was in fact used. *See* 982 F.3d at 481-482 ("When consumers read '100% Grated Parmesan Cheese,' plaintiffs plausibly allege, they are not likely to understand that the phrase really means that the product is a blend of cheese and other substances that regulations allow to be called 'cheese' "). Further, CPF's use of *Ibarrola* as support for this notion is misplaced. In *Ibarrola*, the court found that no reasonable consumer would think the sugar contained in Kind's Healthy Grains products was in its natural, completely unrefined state as "sugar cane in its natural state is a grass that contains jointed stalks resembling bamboo." 83 F. Supp. 3d at 757. Here, in contrast, a reasonable consumer would, and in fact did, expect regional to mean that most, if not all, of the ingredients used in the Dog Food were regional to DogStar kitchens. (SUMF ¶33; ASUMF ¶13.)

Unlike *Ibarrola*, this action has a developed, factual record, including: (1) Plaintiffs' testimony; (2) the Expert Report of Bruce Silverman; (3) a valid consumer survey; and (4) CPF's own internal admission that its "regional" claim is inaccurate and misleading. Simply put, a jury could determine that a reasonable consumer would find CPF's "regional" packaging claim to be misleading given the presence of undisclosed, non-regional ingredients, such as turmeric from India, imported fish oils, and vitamins from China. In addition, CPF misleads consumers by

misrepresenting the quality of its "regional" ingredients, such as its frozen rainbow trout from Idaho and by deceptively keeping the identity of its big corporate chicken suppliers a secret. Ultimately, determining whether the Dog Food is regional is a question of fact, not a question of law, for the jury to decide.

### F. A Reasonable Jury Could Find that the "Delivering Nutrients Naturally" Promise is False and Misleading

CPF's "Delivering Nutrients Naturally" packaging claim is false and misleading because the Dog Food contains heavy metals, which are harmful and non-nutritious, and BPA, which is synthetic and unnatural. (Dkt. 95 at 17-18.) Reasonable consumers would not expect these non-nutritious or unnatural contaminants in the Dog Food, much less pay an ultra-premium price. (SUMF ¶43; ASUMF ¶14.)

Again, Plaintiffs' testimony, expert Silverman's opinion, and Plaintiffs' consumer survey demonstrate that CPF's "Delivering Nutrients Naturally" claim misleads reasonable consumers into expecting that the Dog Food does not contain heavy metals or BPA. When asked how they interpreted CPF's packaging claim "Delivering Nutrients Naturally," Plaintiffs testified that they understood that non-nutritious and potentially harmful chemicals such as heavy metals would not be included and that they would not have purchased the Dog Food had they known it contained heavy metals and BPA. (SUMF ¶43; ASUMF ¶9.) Plaintiffs' marketing expert, Silverman, similarly opined that a reasonable consumer would perceive BPA to be unnatural and inconsistent with CPF's "Delivering Nutrients Naturally" packaging claim. (SUMF ¶43.) Silverman also opined that a reasonable consumer would consider the presence of BPA and heavy metals to be material to their purchasing decision and would be less likely to purchase the Dog Food if the presence of heavy metals or BPA was disclosed. (SUMF ¶¶56, 73; ASUMF ¶10.) The results of the consumer survey echo this reasonable expectation: 84.7% of respondents expected that the

27

Dog Food would not contain heavy metals, and 74.4% of respondents expected that the Dog Food would not contain BPA, based on "Delivering Nutrients Naturally." (SUMF ¶43, 56; ASUMF ¶¶7, 14.)

CPF's argues, in conclusory fashion and without expert opinions, that its "Delivering Nutrients Naturally" packaging claim is not misleading because some of its Dog Food is natural and nutritious. (Dkt. 131 at 31-32.) CPF is wrong, and its reliance on *Tylka* , 1999 WL 495126, is misplaced. In *Tylka*, the court noted that Gerber's advertisements were broad and "all encompassing," "address[ing] such a large market that they bespeak caution" because they covered "baby food generally" and not specific, individual products. 1999 WL 495126 at *8. Unlike *Tylka*, Plaintiffs' testimony and the expert opinions of both Boedeker and Silverman show that the presence of heavy metals and risks of BPA are material to reasonable consumers, and CPF, therefore, did not bespeak caution. Because CPF's packaging conveys to a consumer that the Dog Food delivers nutrients naturally, when they in fact contain harmful contaminants, the representations cannot be said to be puffery. *See Adkins v. Nestle Purina PetCare Co.*, 973 F. Supp. 2d 905, 919, 923 (N.D. Ill. 2013) (allowing plaintiffs to pursue claims based on statements that dog treats were "wholesome" and "nutritious," stating that "'wholesome' at the very least conveys the safety of the treats to the consumer"). Finally, the record shows Plaintiffs' reasonable understanding that the Dog Food did not contain heavy metals or BPA based on its "Delivering Nutrients Naturally" packaging claim. (SUMF ¶43; ASUMF ¶14.)

### G. There are Triable Issues as to Whether CPF Made Material Omissions

The omission or concealment of material information is actionable under the ICFA. *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 595 (Ill. 1996); 815 Ill. Comp. Stat. 505/2. Reliance is not required for omissions (or misrepresentation) claims. *Connick*, 675 N.E.2d at 593. Plaintiffs need only show that a material fact exists (1) "where a buyer would have acted differently knowing

the information," or (2) that "concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase." *Id.* at 595. CPF's motion should be denied because Plaintiffs have sufficiently demonstrated they can meet both alternative prongs, and "whether an omission is material in light of all the circumstances is a question of fact." *Gavin v. AT&T Corp.*, 543 F. Supp. 2d 885, 910 (N.D. Ill. 2008).

As discussed throughout this submission, extensive record evidence exists demonstrating that CPF's inclusion of heavy metals, non-fresh, and non-regional ingredients, and the risk of inclusion of pentobarbital and BPA is information material to consumers. Indeed, Plaintiffs' expectations survey and expert opinion demonstrates consumers do not expect the Dog Food to contain heavy metals and non-fresh and non-regional ingredients, or BPA and pentobarbital. (ASUMF ¶ 7.) Therefore, triable issues of fact exist regarding whether these omissions are material information (1) that would have caused Plaintiffs to act differently or (2) upon which Plaintiffs would have relied in making purchasing decisions.

CPF's argument that it did not omit this information is not plausible and unsupported. CPF zeroes in on what is on the Dog Food bags (not what is omitted), offering the Court *its* interpretation of what it communicates to consumers and premises its argument on the lack of "100%" claims. (Dkt. 131 at 33-34.) But as discussed in Section IV.A *supra*, whether CPF's fine print and partial disclosures have the capacity to mislead in light of the promises CPF makes on the Dog Food bags, is a question of fact for the jury. CPF then purposefully ignores the bases for Plaintiffs' omissions claims. CPF never points the Court to *where* it discloses that the Dog Food contains heavy metals and non-regional and frozen ingredients, and that there is a risk the food contains expired and reground ingredients, BPA, and pentobarbital. That is because it cannot.

These are material facts that CPF conceals from consumers to "avoid panic in the marketplace" and garner premium prices. (SUMF ¶96; ASUMF ¶32.)

CPF then argues it is "undisputed" that Plaintiffs knew the Dog Food contained heavy metals, that heavy metals are present in all dog food, are present at safe levels in the Dog Food, and do not affect or harm dogs. (Dkt. 131 at 34.) But Plaintiffs dispute every single one of these facts. (SUMF ¶¶53, 54, 60-67, 69.)

Finally, CPF's reliance on *Weaver* is misplaced. As discussed above, the *Weaver* court did not have consumer surveys or expert opinions before it showing that the Packaging Claims and Omissions were misleading. (Dkt. 95-18, Dkt. 95-71; SUMF ¶¶19, 24, 33, 43, 56, 73; ASUMF ¶¶7, 11, 12, 13, 14, 60.) Here, the consumer survey and expert opinion prove that despite lacking "100%" claims (a fact that drove the *Weaver* ruling), CPF's packaging communicates to reasonable consumers that the Dog Food is fresh and does not contain heavy metals, BPA, regrinds, or frozen and expired ingredients. That evidence (as well as Plaintiffs' testimony and CPF's own documents) establishes disputed issues of fact that cannot be decided as a matter of law.

## V.     CONCLUSION

For the reasons stated above, the Court should deny Defendants' Motion for Summary Judgment in its entirety.

Dated: June 21, 2021                         LOCKRIDGE GRINDAL NAUEN P.L.L.P.


By:  /s/ Rebecca A. Peterson
ROBERT K. SHELQUIST, *Pro Hac Vice*
REBECCA A. PETERSON, *Pro Hac Vice*
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rapeterson@locklaw.com
          rkshelquist@locklaw.com

WEXLER WALLACE LLP
KENNETH A. WEXLER
KARA A. ELGERSMA
MICHELLE PERKOVIC
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Tel: (312) 346-2222
Fax: (312) 346-0022
Email: kaw@wexlerwallace.com
       kae@wexlerwallace.com
       mp@wexlerwallace.com

WEXLER WALLACE LLP
MARK T. TAMBLYN, *Pro Hac Vice*
333 University Avenue, Suite 200
Sacramento, CA 95825
Tel: (916) 565-7692
Email: mjt@wexlerwallace.com

ROBBINS LLP
KEVIN A. SEELY (199982)
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: kseely@robbinsllp.com

GUSTAFSON GLUEK, PLLC
DANIEL E. GUSTAFSON, *Pro Hac Vice*
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
E-mail: dgustafson@gustafsongluek.com

CUNEO GILBERT & LADUCA, LLP
CHARLES J. LADUCA
KATHERINE VAN DYCK
4725 Wisconsin Ave NW, Suite 200
Washington, DC 20016
Telephone: 202-789-3960
Facsimile: 202-789-1813
E-mail: kvandyck@cuneolaw.com
        charles@cuneolaw.com

31

LITE DEPALMA GREENBERG & AFANDOR, LLC
JOSEPH J. DEPALMA
SUSANA CRUZ HODGE
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone:  (973) 623-3000
E-mail: jdepalma@litedepalma.com
       scruzhodge@litedepalma.com

**Attorneys for Plaintiffs**