**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| AFSHIN ZARINEBAF, ZACHARY CHERNIK, and JOAN MEYER, individually and on behalf of a class of similarly situated individuals, | )<br>)<br>)<br>)<br>)    Case No. 1:18-cv-06951<br>) |
| Plaintiffs, | )<br>)    Honorable Virginia M. Kendall<br>) |
| v. | )<br>) |
| CHAMPION PETFOODS USA INC. and CHAMPION PETFOODS LP, | )<br>)<br>) |
| Defendants. | )<br>) |

<u>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**MOTION FOR CLASS CERTIFICATION**</u>

55041.1

## TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................................... 1

II.   THE PACKAGING CLAIMS AND OMISSIONS ..................................................... 1

III.  FACTUAL SUMMARY .............................................................................................. 4

    A.   The Material Packaging Claims and Omissions Are Misleading ................................. 4

    B.   CPF Knew the Packaging Claims and Omissions were Misleading............................ 7

        1.   Fresh Regional Ingredients .................................................................................... 7

            a.   The Dog Food Ingredients Are Not Fresh as Promised .............................. 7

            b.   The Ingredients are Not Regional as Promised ........................................... 9

        2.   The Undisclosed Presence of Heavy Metals Renders the Packaging Misleading............................................................................................ 10

        3.   BPA Is Not Fresh or Biologically Appropriate.................................................... 12

    C.   Plaintiffs Are Representative of the Classes.............................................................. 12

IV.   CLASS DEFINITIONS .............................................................................................. 13

V.    ARGUMENT............................................................................................................... 14

    A.   The Rule 23(a) Requirements ..................................................................................... 15

        1.   Numerosity is Satisfied ......................................................................................... 15

        2.   CPF's Uniform Conduct Establishes Numerous Common Issues of Fact and Law for All Class Members ............................................................ 15

        3.   Plaintiffs' Claims Are Typical .............................................................................. 17

        4.   Plaintiffs and Their Counsel Are Adequate Representatives............................... 19

    B.   Rule 23(b)(3) Is Satisfied........................................................................................... 20

        1.   Predominance.......................................................................................................... 20

            a.   Illinois Consumer Fraud Act ..................................................................... 20

            b.   Damages ...................................................................................................... 23

        2.   Superiority.............................................................................................................. 27

    C.   Rule 23(b)(2) Certification Is Also Appropriate....................................................... 28

    D.   In the Alternative, Rule 23(c)(4) Issues Class Should Be Certified .......................... 29

VI.   CONCLUSION............................................................................................................ 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Allegra v. Luxottica Retail N. Am.,*
2022 WL 42867 (E.D.N.Y. Jan. 5, 2022) ...................................................................24

*Am. Honda Motor Co. v. Allen,*
600 F.3d 813 (7th Cir. 2010) ...................................................................................24

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)...................................................................................................15

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds,*
568 U.S. 455 (2013)............................................................................................15, 20

*Astiana v. Kashi Co.,*
291 F.R.D. 493 (S.D. Cal. 2013) ............................................................................17

*Barnes v. Air Line Pilots Ass'n, Int'l,*
310 F.R.D. 551 (N.D. Ill. 2015)...............................................................................30

*Beaton v. SpeedyPC Software,*
907 F.3d 1018 (7th Cir. 2018) .................................................................................17

*Bell v. Publix Super Markets, Inc.,*
982 F.3d 468 (7th Cir. 2020) .............................................................................16, 21

*Benson v. Newell Brands, Inc.,*
2021 WL 5321510 (N.D. Ill. Nov. 16, 2021) ......................................16, 17, 18, 27

*Burns v. First Am. Bank,*
2006 WL 3754820 (N.D. Ill. Dec. 19, 2006)......................................................15, 20

*Butler v. Sears, Roebuck & Co.,*
727 F.3d 796 (7th Cir. 2013) .......................................................................20, 23, 24

*Cardenas v. Toyota Motor Corp.,*
2021 WL 5811741 (S.D. Fla. Dec. 6, 2021).............................................................27

*Carnegie v. Household Int'l, Inc.,*
376 F.3d 656 (7th Cir. 2004) ...................................................................................29

*Clark v. Tap Pharm. Prods., Inc.,*
798 N.E.2d 123 (Ill. Ct. App. 2003) .......................................................................22

*Comcast Corp. v. Behrend,*
569 U.S. 27 (2013)........................................................................................23, 24, 26

iii

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993)............................................................................................24

*De La Fuente v. Stokely-Van Camp, Inc.*,
    713 F.2d 225 (7th Cir. 1983) ...........................................................................18

*Earl v. Boeing Co.*,
    339 F.R.D. 391 (E.D. Tex. 2021).....................................................................24

*Endo v. Albertine*,
    147 F.R.D. 164 (N.D. Ill. 1993)........................................................................30

*Espenscheid v. DirectSat USA, LLC*,
    705 F.3d 770 (7th Cir. 2013) ...........................................................................29

*Flynn v. FCA US LLC*,
    327 F.R.D. 206 (S.D. Ill. 2018) .......................................................................27

*Fournigault v. Indep. One Mortg. Co.*,
    234 F.R.D. 641 (N.D. Ill. 2006)........................................................................19

*Gordon v. Boden*,
    586 N.E.2d 461 (Ill. App. Ct. 1991) ...............................................................17

*Hawes v. Macy's Stores W., Inc.*,
    2022 WL 194407 (S.D. Ohio Jan. 22, 2022) ..................................................26

*In re Allstate Ins. Co.*,
    400 F.3d 505 (7th Cir. 2005) ...........................................................................30

*In re ConAgra Foods, Inc.*,
    90 F. Supp. 3d 919 (C.D. Cal. 2015) ..........................................................22, 27

*In re Dial Complete Mktg. & Sales Practices Litig.*,
    312 F.R.D. 36 (D.N.H. 2015) ..........................................................................22

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
    334 F.R.D. 96 (E.D. Mich. 2019) ....................................................................29

*In re Fisher-Price Rock 'N Play Sleeper Mktg., Sales Pracs. & Prods. Liab. Litig.*,
    2021 WL 4988186 (W.D.N.Y. Oct. 19, 2021) ................................................24

*In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*
    2017 WL 1196990 (N.D. Ill. Mar. 31, 2017)................................................26, 27

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) .....................................................................27

*IWOI, LLC v. Monaco Coach Corp.*,
  581 F. Supp. 2d 994 (N.D. Ill. 2008) ......................................................................21

*Johns v. Bayer Corp.*,
  280 F.R.D. 551 (S.D. Cal. 2012) ............................................................................17

*Johnson v. Gen. Mills, Inc.*,
  275 F.R.D. 282 (C.D. Cal. 2011) ............................................................................17

*Kleen Prods. LLC v. Int'l Paper Co.*,
  831 F.3d 919 (7th Cir. 2016) ..................................................................................20

*Kramer v. Am. Bank & Tr. Co., N.A.*,
  2017 WL 1196965 (N.D. Ill. Mar. 31, 2017).........................................................26

*Krommenhock v. Post Foods, LLC*,
  334 F.R.D. 552 (N.D. Cal. 2020)............................................................................27

*McMahon v. LVNV Funding, LLC*,
  807 F.3d 872 (7th Cir. 2015) ..................................................................................29

*Mednick v. Precor, Inc.*,
  320 F.R.D. 140 (N.D. Ill. 2017)..................................................................16, 21, 29

*Milan v. Clif Bar & Co.*,
  2021 WL 4427427 (N.D. Cal. Sept. 27, 2021) .......................................................24

*Morse v. Bankers Life & Cas. Co.*,
  2000 WL 246245 (N.D. Ill. Feb. 24, 2000) ............................................................22

*Mullen v. GLV, Inc.*,
  330 F.R.D. 155 (N.D. Ill. 2019)..............................................................................23

*Mullins v. Direct Digital, LLC*,
  795 F.3d 654 (7th Cir. 2015) ............................................................................23, 27

*Mullins v. Premier Nutrition Corp.*,
  2016 WL 1535057 (N.D. Cal. Apr. 15, 2016) ........................................................17

*Rikos v. Procter & Gamble Co.*,
  799 F.3d 497 (6th Cir. 2015) ..................................................................................21

*Robert J. Kowalski, P.C. v. N. Trust Co.*,
  1985 WL 3935 (N.D. Ill. Nov. 13, 1985) ...............................................................23

*Rosario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992) ................................................................................16

*Saltzman v. Pella Corp.*,
    257 F.R.D. 471 (N.D. Ill. June 4, 2009) ........................................................................19, 28

*Sonner v. Schwabe N. Am., Inc.*,
    2019 WL 4266808 (C.D. Cal. July 2, 2019) ........................................................................17

*Stickles v. Atria Senior Living Inc.*,
    2021 WL 6117702 (N.D. Cal. Jan. 20, 2022) ......................................................................29

*Suchanek v. Sturm Foods, Inc.*,
    311 F.R.D. 239 (S.D. Ill. 2015) ................................................................................. *passim*

*Suchanek v. Sturm Foods, Inc.*,
    2018 WL 6617106 (N.D. Ill. July 3, 2018) ......................................................................1, 21

*Suchanek v. Sturm Foods, Inc.*
    764 F.3d 750 (7th Cir. 2014) .................................................................................... *passim*

*Swanagan v. Al Piemonte Ford Sales, Inc.*,
    1995 WL 493480 (N.D. Ill. Aug. 15, 1995) ........................................................................23

*Testone v. Barlean's Organic Oils, LLC*,
    2021 WL 4438391 (S.D. Cal. Sept. 28, 2021) ....................................................................24

*Tylka v. Gerber Prods. Co.*,
    178 F.R.D. 493 (N.D. Ill. 1998) ................................................................................ *passim*

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...............................................................................................................28

*Weidman v. Ford Motor Co.*,
    2022 WL 1071289 (E.D. Mich. Apr. 8, 2022) ....................................................................30

*Yamagata v. Reckitt Benckiser LLC*,
    2019 WL 3815718 (N.D. Cal. June 5, 2019) ......................................................................17

*Zeiger v. WellPet LLC*,
    526 F. Supp. 3d 652 (N.D. Cal. 2021) .................................................................................28

**RULES**

Federal Rule of Civil Procedure 23 ....................................................................... *passim*

**STATUTES**

Illinois Consumer Fraud Act .................................................................................. *passim*

## I. INTRODUCTION

There are no barriers to class certification here. Plaintiffs seek to certify a single Illinois Consumer Fraud Act ("ICFA") claim of false or misleading advertising of certain dog food made by CPF.[1] The accepted evidence in this case establishes how class-wide evidence will be used to answer the dispositive questions for an ICFA claim: (1) whether reasonable consumers were in fact misled by the challenged packaging claims and omissions; (2) whether the challenged packaging claims and omissions were material to a reasonable consumer; and (3) calculation of class-wide damages. (ECF 190 at 12-13, 15-21.) CPF's anticipated defenses will likewise be answered by the jury with class-wide evidence as to each proposed Class. Every question that will be presented to the jury will be decided in a single stroke as to all proposed class members based on class-wide evidence. *See Suchanek v. Sturm Foods, Inc.*, No. 11-cv-565, 2018 WL 6617106, at *16 (N.D. Ill. July 3, 2018) (a jury can determine deceptiveness under ICFA on a class-wide basis). Certification here is textbook. Since the requirements of Federal Rule of Civil Procedure ("Rule") 23 are satisfied in this case, class certification is proper.

## II. THE PACKAGING CLAIMS AND OMISSIONS

CPF touts its dog food as deserving of ultra-premium prices to a market of "Pet Lovers" based on well researched and developed curated packaging. This packaging was valuable real estate to CPF and every challenged statement and omission here was a material consideration for any reasonable consumer. Plaintiffs bring this class action lawsuit alleging misrepresentations on and material omissions from CPF's packaging that caused them to pay price premiums for the Dog Food.[2] Plaintiffs' ICFA claim rests on CPF's promises that its Dog Food is "*Biologically*

---

[1] "CPF" refers to Champion Petfoods USA, Inc. and Champion Petfoods LP.
[2] "Dog Food" refers to the following diets: (1) Acana Free-Run Poultry; (2) Acana Regionals Grasslands; (3) Acana Heritage Meats; (4) Acana Singles Lamb & Apple, (5) Acana Singles Pork & Squash, (6) Acana Regionals Meadowland, and (7) Acana Singles Wild Mackerel (collectively the "Acana Diets") and (8)

*Appropriate,*" that it is made with "*Fresh Regional Ingredients,*" and that it "*Deliver[s] Nutrients Naturally*" (collectively, the "Packaging Claims"). Both the Acana and Orijen Diets at issue bear at least three of the Packaging Claims:

| Packaging Claims | Acana | Orijen |
|:---:|:---:|:---:|
| *Deliver[s] Nutrients Naturally* | ✔ | |
| *Biologically Appropriate$^{TM}$* | ✔ | ✔ |
| *Fresh* | ✔ | ✔ |
| *Regional* | ✔ | ✔ |

The Packaging Claims dominate CPF's packaging and were read and relied upon by Plaintiffs:[3]

| Diet | Total Number of "Fresh" Claims | Total Number of "Regional" Claims | Total Number of "Biologically Appropriate" Claims |
|:---|:---:|:---:|:---:|
| Acana Heritage Free-Run Poultry 2016-2017. (ECF 95-2 at -32.) | 22 | 11 | 9 |
| Acana Heritage Free-Run Poultry 2018. (ECF 95-2 at -33.) | 28 | 7 | 9 |
| Acana Heritage Meats 2016-2017. (ECF 95-4 at -36.) | 19 | 10 | 9 |
| Acana Heritage Red Meat 2018. (ECF 114-1 at 13.) | 18 | 7 | 9 |
| Acana Regionals Grasslands 2016-2017. (ECF 95-3 at -39.) | 18 | 24 | 9 |

Orijen Six Fish, (9) Orijen Original, (10) Orijen Regional Red, (11) Orijen Senior (collectively, the "Orijen Diets").
[3] Unless otherwise noted, "¶" references are to the Third Amended Complaint (ECF 68) and references to "Ex. _" are exhibits to the Declaration of Rebecca A. Peterson in support of this motion.

| Diet | Total Number of "Fresh" Claims | Total Number of "Regional" Claims | Total Number of "Biologically Appropriate" Claims |
|---|---|---|---|
| Acana Regionals Grasslands 2018. (ECF 95-3 at -40.) | 17 | 23 | 9 |
| Acana Regionals Meadowland 2016-2017. (ECF 95-7 at -42.) | 18 | 24 | 9 |
| Acana Regionals Meadowland 2018. (ECF 95-7 at -43.) | 15 | 25 | 9 |
| Acana Singles Lamb & Apple 2016-2017. (ECF 95-5 at -50.) | 18 | 11 | 9 |
| Acana Singles Lamb & Apple 2018. (ECF 95-5 at -52.) | 12 | 5 | 5 |
| Acana Singles Pork & Squash 2016-2017. (ECF 95-6 at -56.) | 22 | 11 | 9 |
| Acana Singles Pork & Squash 2018. (ECF 95-6 at -57.) | 12 | 5 | 5 |
| Acana Singles Wild Mackerel 2016-2017. (ECF 95-8 at -55.) | 17 | 11 | 9 |
| Orijen Six Fish 2016. (ECF 95-9 at -84.) | 24 | 6 | 8 |
| Orijen Six Fish 2017. (ECF 95-9 at -88.) | 26 | 6 | 7 |
| Orijen Six Fish 2018. (ECF 95-9 at -89.) | 26 | 6 | 6 |
| Orijen Original 2016-2017. (ECF 95-10 at -61.) | 26 | 7 | 8 |
| Orijen Original 2018. (ECF 95-10 at -65.) | 26 | 7 | 7 |
| Orijen Regional Red 2016-2017. (ECF 95-11 at -77.) | 25 | 14 | 8 |

| Diet | Total Number of "Fresh" Claims | Total Number of "Regional" Claims | Total Number of "Biologically Appropriate" Claims |
|---|---|---|---|
| Orijen Regional Red 2018. (ECF 95-11 at -82.) | 25 | 17 | 6 |
| Orijen Senior 2016-2017. (ECF 95-12 at -1906.) | 26 | 9 | 6 |
| Orijen Senior 2018. (ECF 95-12 at -2883.) | 26 | 9 | 6 |

Based on these Packaging Claims, Plaintiffs allege that a reasonable consumer would not "understand that [CPF]'s dog food contained heavy metals, BPA [Bisphenol A], … [and] non-regional, non-fresh, or un-natural ingredients." (ECF 47 at 13-15; ECF 68 at ¶¶51-54, 75-142, 185-193.) Plaintiffs also allege that CPF "owed consumers a legal duty to disclose that the [] Dog Food contained and/or had a material risk of containing Heavy Metals, a material amount of non-fresh ingredients, a material amount of non-regional ingredients, [and] BPA[.]" ) (ECF 68 at ¶196.) None of the packaging discloses these omissions, which violates the ICFA. Ex. 1 at 71:8-10, 140:20-24, 141:15-142:18; (ECF 68 at ¶¶194-99, 211-12, 227-39; ECFs 95-2, -3, -4, -5, -6, -7, -8, -9, -10, -11, -12; ECF 114-1 at 13.)

## III.    FACTUAL SUMMARY

### A.    The Material Packaging Claims and Omissions Are Misleading

CPF's packaging uniformly promises that its Dog Food is Biologically Appropriate and made from fresh, regional ingredients, and that its Acana Diets "deliver[] nutrients naturally." (ECFs 95-2, -3, -4, -5, -6, -7, -8, -9, -10, -11, -12; ECF 114-1 at 13.) CPF did not choose these Packaging Claims by accident. (*See*, *e.g.*, ECF 189 at 13 (in denying CPF's motion to exclude Plaintiffs' marketing expert Silverman, this Court acknowledged that "Silverman explained that

4

in the advertising sector, companies want to understand consumers and how a product fits into their lifestyle, and how best to reach those consumers.").) CPF chose the Packaging Claims because it knew reasonable consumers would rely on these "key attributes" that differentiate the Dog Food from other premium dog food. (ECF 95-13 at -7812, -7818, -7831, -7842, -7853.) As CPF puts it, its target market of "Pet Lovers," like Plaintiffs, "want the best for their dogs…insist on the freshest and most nourishing ingredients, and hold us to the highest standards." (ECF 95-14 at -9068.)

"Biologically Appropriate" dog food made from Fresh Regional Ingredients is CPF's core marketing mission, which is "Printed on Every Bag." (*See* ECF 95-15 at -3677.) CPF knew it stood "to benefit from the continued customer demand for, and willingness to pay for, premium products" that guarantee Biologically Appropriate "protein dense formulations" and it targeted consumers who have a "keen…focus on knowing where ingredients come from." (*Id.* at -3660.)

The "fresh" and "regional" promises are a "great asset," that give CPF the "greatest advantage" over competitors and its "biggest opportunity" to convince reasonable consumers to purchase the Dog Food. (*See* ECF 95-16 at -3444 (admitting the "ability to **feature and tell this story is a great asset**. More pet lovers are looking beyond the ingredient panel to see where their ingredients come from.").) The Dog Food packaging also contains other images and text to bolster these claims, such as featuring "exemplar suppliers" that are CPF's "trusted" suppliers of specific fresh, regional, or local ingredients. (ECF 68 at ¶38; ECFs 95-2, -3, -4, -5, -6, -7, -8, -9, -10, -11, -12; ECF 114-1 at 13.) Every Acana Diet promises to "deliver[] nutrients naturally." (ECFs 95-2, -3, -4, -5, -6, -7, -8; ECF 114-1 at 13.) Consistent with its other packaging claims, CPF believes this promise induces consumers to trust that the Dog Food contains "nutrients in their freshest,

most natural and flavorful form" and "authentic fresh ingredients [that] mirror those Mother Nature provides." (ECF 95-17 at -8858.)

Despite these repeated uniform Packaging Claims of higher quality, healthy, and premium ingredients, CPF intentionally omitted material information it knew contradicted these promises. Specifically, no packaging discloses that the Dog Food contains or may contain heavy metals, BPA, and significant amounts of non-fresh ingredients (expired ingredients and/or regrinds) (collectively, the "Omissions"). CPF knows that consumers would be less likely or unwilling to purchase the Dog Food if such information was disclosed. (ECF 95-18 at ¶¶32(k), 225.)

The Packaging Claims and Omissions were misleading to a large majority of consumers, as a recent survey of premium pet food purchasers indicates:

| EXPECTATIONS SURVEY OF REASONABLE CONSUMERS | Orijen Diets | Acana Diets |
|---|---|---|
| **From the "Biologically Appropriate" statements on the Dog Food, consumers would expect that:** | | |
| The dog food shown does not contain heavy metals. | 82.8% | 84.3% |
| The dog food shown does not contain BPA (Bisphenol A). | 71.3% | 73.2% |
| The dog food shown only contains fresh ingredients, unless specifically stated otherwise on the packaging. | 89% | 83.9% |
| **From the "Fresh" statements on the Dog Food, consumers would expect that:** | | |
| The dog food shown contains only fresh ingredients unless specifically stated otherwise on the packaging. | 84.2% | 84.7% |
| The dog food shown does not contain any expired ingredients. | 79.4% | 88.4% |
| The dog food shown does not contain any reground dog food (dog food previously manufactured by this manufacturer but that did not meet its specifications for sale). | 78.5% | 76.9% |
| **From the "Regional" statements on the Dog Food, consumers would expect that:** | | |
| The dog food shown does not contain imported ingredients. | 73.7% | 76.9% |
| Each ingredient in the dog food shown is from the region where the food is made unless specifically stated otherwise on the packaging. | 79.4% | 77.3% |

| From the "Delivering nutrients naturally" statements on the Dog Food, consumers would expect that: | | |
|---|---|---|
| The dog food shown does not contain heavy metals. | n/a | 84.7% |
| The dog food shown does not contain BPA (Bisphenol A). | n/a | 74.4% |

(ECF 95-71 at Figures 12-23 ("Table 1"); *see also* ECF 95-18 at ¶¶32(k)-(l), 147.)

**B.** **CPF Knew the Packaging Claims and Omissions were Misleading**

**1.** **Fresh Regional Ingredients**

**a.** **The Dog Food Ingredients Are Not Fresh as Promised**

As a matter of regular business practice, CPF knowingly uses ingredients that are frozen, expired, and regrinds (i.e., old, nonconforming kibble that was rejected, reground, recooked, and reintroduced as an ingredient). (ECF 68 at ¶¶75-94); Ex. 1 at 143:5-17. For instance, most, if not all of the fish used in the Acana Singles Wild Mackerel, Orijen Six Fish, Orijen Adult, and Orijen Regional Red diets is frozen, before one of CPF's fish suppliers grinds it into a non-frozen state prior to delivery to CPF. (*See* ECF 95-19 at -6514 ("Our facility takes frozen blocks, grinds them in to a fresh slurry and ships the slurry in insulated food vats.")); Ex. 1 at 143:9-17. Moreover, CPF regularly manufactures its Dog Food with red meat—such as Acana Regionals Grasslands, Acana Heritage Meats, Acana Lamb & Apple, Orijen Adult, and Orijen Regional Red—using frozen meat ingredients from New Zealand. (ECF 95-20.) In 2017, CPF was purchasing half of its goat meat and almost all of its lamb and mutton meat from New Zealand in frozen form. (*Id.*) And despite the "fresh" promises, CPF itself sees no need to track the actual amount of fresh meat used. Its corporate designee admitted that it does not separately track how much fish, chicken, beef, lamb, bison, boar or any of the other meats is added fresh versus frozen. Ex. 1 at 117:1–23.[4]

---

[4] Based on this fact alone, CPF cannot show the statements are not misleading even under its raised defenses here since it has no idea what fresh ingredients and at what percentage were used at all.

CPF also routinely uses expired ingredients in its Dog Food, quality controlled only by subjective "smell tests" or a sensory evaluation by CPF's employees. (*See* ECF 95-21 (five-person panel assessed the "odor, color and consistency" of fresh meat products and found that the odor and color of 11-day-old ingredients were more acceptable than 9-day-old ingredients)); *see also* Ex. 1 at 61:6-13. Even when scientific testing suggests discarding expired ingredients, CPF will include them, such as the chicken meal used in Acana Free-Run Poultry and Acana Regionals Meadowland, based on its employees' subjective sensory say-so. (*See* ECF 95-22 (chicken meal "failed with High PV; accepted based on sensory evaluation by upper management.").)

At its Kentucky DogStar Kitchen, CPF included regrinds regularly in its production of the Dog Food and used ███████████████████████████████████████████ (ECF 95-23.) CPF's Kitchen Manager, Keith Arnold, testified that at its DogStar plant, regrinds were used more often than not in manufacturing its Dog Food. (ECF 95-24 at 73:4-6); Ex. 1 at 132:9-17. And while CPF's internal guidelines only permit 3-5% regrind ingredients to be utilized in the Dog Food, its manufacturing records show that this maximum is not routinely followed. (ECF 95-25 at 126:13-18; *see also* ECF 95-23, ████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████ Despite this, the company testified that it does not disclose its use of regrinds to consumers, Ex. 1 at 140:20–24, and does not believe such disclosure would be consistent with "what we stand for as a company with our nutritional philosophy," *id.* at 143:5–17. In other words, the practice runs counter to the CPF's promises of ultra-premium dog food. CPF's common practice and use of these undisclosed non-fresh ingredients renders the "fresh" promise misleading to reasonable consumers. *See* Table 1;

(ECF 95-18 at ¶¶203-204, 217.)

### b.     The Ingredients are Not Regional as Promised

CPF commonly uses undisclosed, non-regional ingredients in its Dog Food. For example, CPF sources its ingredients from undisclosed, international suppliers in



(ECF 95-26, 95-27, 95-28.)

(*See* ECF 95-20

Yet, to reinforce its "regional" claim, the Dog Food packaging displays images of "exemplar suppliers" to suggest that a material amount of ingredients are supplied by local farmers that CPF "knows and trusts." (ECFs 95-2, -3, -4, -5, -6, -7, -8, -9, -10, -11, -12; ECF 114-1 at 13; ECF 68 at ¶38.) This is literally false and certainly misleading. In 2016, for example,

(ECF 95-29.) Although CPF purchases all of its Atlantic fish from its advertised fish supplier, described by CPF as its "trusted supplier of fresh" fish, it actually purchases mostly *frozen* fish from this supplier. (ECF 95-8 to 95-9; ECF 95-19 at -6514.)

CPF also omits the corporate identity of some of these exemplar suppliers to further reinforce its "regional" promise. CPF did not disclose that Hefton Farms is actually owned by Tyson, Inc. because it knew its "Pet Lovers" relied upon the regional representations. (*See* ECF 95-2 at -33; ECF 95-30 at -7672 ("My take is that we shouldn't mention the name of the farm, since Tyson is a huge multinational conglomerate…); ECF 95-31 (Hefton Farms is owned by Tyson).) CPF internally voiced concern over consumers asking whether it purchased chicken from their supplier Pilgrim's Pride because it "had a Class 1 recall involving over 4.5 million pounds of

chicken for contamination with plastic, wood, rubber, and metal." (ECF 95-32.) CPF purposefully chose not to disclose the identities of Tyson or Pilgrim's Pride to its consumers because consumers rely on its material Packaging Claims when making purchasing decisions. (ECFs 95-2, -3, -4, -5, -6, -7, -8, -9, -10, -11, -12; ECF 114-1 at 13.)

CPF's routine and undisclosed use of non-regional ingredients makes its "regional" packaging claim misleading and deceptive, which CPF itself admits. *See* Table 1; (ECF 95-18 at ¶¶214, 217; *see also* ECF 95-33 at -07 ("We have recently considered changing this [regional] definition [] as we have outgrown our ability to source from our local region.").)

### 2. The Undisclosed Presence of Heavy Metals Renders the Packaging Misleading

It is undisputed the Dog Food contains heavy metals. (*See* ECF 95-34 (CPF's White Paper admitting its foods contain heavy metals).) But the Dog Food packaging misleads reasonable consumers who, like CPF's own employees, believe Biologically Appropriate Dog Food would not contain heavy metals based on the Packaging Claims and Omissions. *See* Table 1; (ECF 95-18 at ¶¶172-173; ECF 95-35 at 14:22-24 ("I'm not aware of heavy metals being in our foods. I'm aware of heavy metals naturally occurring in the environment."); ECF 95-36 at 141:14-20; ECF 95-37 at 97:7-9; ECF 95-38 at 142:19-143:14); Ex. 2 at 88-89 (the Food and Drug Administration's request for $13.5 million from Congress to expand education and outreach programs on toxic elements to consumers demonstrates the need to educate reasonable consumers about the presence of heavy metals in food products). ████████████████████████████████████████

████████████████████████ (*See* ECF 95-13 at -7831 and -7842 ████████████████████████

████████████████████████████████ Given the undisclosed presence of heavy metals, the promise of "delivering nutrients naturally" is also misleading because consumers would reasonably expect that *all* of the Dog Food provides nutrition for their dogs. (ECF 95-18 at ¶¶126-

127; *see also* ECF 95-36 at 187:24-188:8 (["delivering nutrients naturally is] species-specific, as Mother Nature intended, which would be BPA-free, it would be, you know, heavy metal-free."].)

Despite this, CPF failed to prevent or at least reduce the inclusion of heavy metals, which CPF could have achieved by using only fresh ingredients with non-detectable amounts of heavy metals. (*See* ECF 95-39 at 92:1-7, 139:1-2 ("[CPF] should buy ingredients that don't have heavy metals in it"); ECF 95-40; ECF 68 at ¶66.) Although the Dog Food undeniably contains detectable amounts of heavy metals, CPF's own test results demonstrate that fresh meat ingredients, such as deboned chicken, can be purchased without detectable amounts of heavy metals. (ECF 95-41.) Instead, CPF incorporated dried ingredients in its Dog Food that contained amounts of heavy metals that even exceeded CPF's outdated and unreliable standard for heavy metals. (*See* ECF 95-42 (Eurofins testing results for CPF, showing spray dried herring with mercury levels of 0.65 ppm, exceeding the National Research Council's maximum tolerable limit of 0.267 ppm for mercury).)

CPF, at least when it comes to the presence of heavy metals in its Dog Food, is apparently more concerned about its packaging claims than about whether or not the product in the packaging actually reflects those claims. As discussed above, at least one CPF employee admitted being unaware that CPF Dog Food contained heavy metals, and at least one CPF internal document suggests that "zero…heavy metals" is a key attribute to the challenged packaging claims. CPF knows heavy metals in its Dog Food is a concern, yet it does not take its own heavy metals testing schedules seriously. (*See* ECF 95-44 ("[T]here are a number of risks that we are completely blind to…These include …heavy metals…."); ECF 95-45 ("It looks like the testing schedule hasn't been followed too well, all of the fish diets are supposed to get heavy metals analysis as part of their extra testing.").) In fact, CPF did not conduct a single heavy metal test on several of its Dog Foods for over a year and CPF did not test *any* Acana Lamb & Apple, Acana Pork & Squash, or Orijen

Regional Red for heavy metals between April 2016 and 2017. (*See* ECF 95-40 (heavy metal test results used as the basis for CPF's White Paper).) CPF knew testing its Dog Food for heavy metals was critical for consumers and its failure to do so is negligent. (*See* ECF 95-43 (Peter Muhlenfeld, VP of Sales & Marketing stating that failure to test for heavy metals would be negligent).)

### 3. BPA Is Not Fresh or Biologically Appropriate

BPA is a synthetic, chemical molecule that can be controlled and excluded from products. (ECF 95-46 at 133:9-134:10; ECF 95-47 at 187:3-5.) BPA-free products are commonly sold in retail markets. (ECF 95-46 at 133:22-134:10.) Although BPA can be controlled and excluded, CPF did not test its Dog Food, ingredients, or packaging for BPA because it concluded that BPA was a "negligible risk." (ECF 95-48.) Instead, CPF relied upon ineffective and limited guarantees from some of its packaging suppliers. (ECF 95-49 at 116:11-24; *see also* ECF 95-50 (Sun Coast Packaging, Inc. Continuing Product Guaranty: "product shipped to or on the order of Buyer after the date of this guaranty shall…Not contain *any intentionally added* [] (BPA).").) CPF's failure to properly test and screen resulted in BPA being in its Dog Food. (*See* ECF 95-51 at 2, 4-5.)

A reasonable consumer would not expect the Dog Food to contain BPA, given the Packaging Claims and Omissions. *See* Table 1; (ECF 95-18 at ¶¶179-180; ECF 95-36 at 70:1-4, 141:11-20, 187:24-188:4; ECF 95-37 at 96:24-97:1, 97:10-12; ECF 95-38 at 142:19-143:14.) BPA is an unnatural contaminant that is neither Biologically Appropriate, fresh, regional, nor natural and offers no nutritional value for dogs. Plaintiffs, like other reasonable consumers, do not have any viable means to discover that the Dog Food contains and/or may contain BPA because the Dog Food packaging does not disclose the presence and/or material risk of BPA.

### C. Plaintiffs Are Representative of the Classes

Plaintiff Chernik purchased the Dog Food from approximately April 2006 until approximately July 2017. (ECF 68 at ¶8; ECF 95-36 at 60:23-61:6.) During the Class Period, he

purchased various diets for his dogs, including Orijen Six Fish, Orijen Original, Orijen Regional Red, Orijen Senior, Acana Regionals Grasslands, Acana Heritage Meats, Acana Free-Run Poultry, Acana Singles Lamb & Apple, and Acana Singles Pork & Squash. (ECF 68 at ¶¶7-8; ECF 95-36 at 61:16-62:17, 98:25-101:6.) Plaintiff Meyer purchased the Dog Food from approximately 2004 until 2019. (ECF 68 at ¶10; ECF 95-37 at 30:25-31:19, 49:7-16.) During the Class Period, she purchased various diets for her dogs, including Orijen Original, Acana Singles Lamb & Apple, Acana Singles Wild Mackerel, Acana Heritage Meats, and Acana Regionals Meadowland. (ECF 68 at ¶¶9-10; ECF 95-37 at 53:12-23, 56:23-61:7.) Plaintiff Zarinebaf purchased the Dog Food from approximately July 2013 until September 2018. (ECF 68 at ¶8; ECF 95-38 at 46:22-47:6.) During the Class Period, he purchased various diets for his dogs, including Acana Singles Lamb & Apple. (ECF 68 at ¶¶8-9; ECF 95-38 at 66:11-71:24.)

Like the members of the putative Classes, Plaintiffs relied on the Packaging Claims and Omissions when making their purchasing decisions. (ECF 95-36 at 34:24-35:7, 36:6-9, 111:10-19, 112:8-16, 190:14-22; ECF 95-37 at 68:21-25, 76:7-17, 80:21-81:2, 84:23-85:4; ECF 95-38 at 38:24-39:12, 86:19-87:5, 96:23-97:11, 98:14-99:7, 112:11-16.) Plaintiffs were unaware the Dog Food may contain heavy metals, BPA, and non-regional and non-fresh ingredients, and would not have purchased the Dog Food had this information been disclosed. (ECF 95-36 at 70:1-4, 141:14-20, 205:6-13, 242:5-19; ECF 95-37 at 93:23-94:2, 94:13-21, 96:24-97:18; ECF 95-38 at 113:13-21, 142:19-143:14, 145:19-22, 176:19-177:14.) Plaintiffs have satisfied their duties and understand their responsibilities as representatives of the Classes they seek to represent. (ECF 95-36 at 239:9-23, 240:14-20, 242:2-24, 248:18-25; ECF 95-37 at 12:10-16, 19:22-20:1; ECF 95-38 at 163:21-164:15, 165:8-166:1.)

## IV.     CLASS DEFINITIONS

Plaintiffs propose the following Classes:

13

***Acana Free-Run Poultry Class:*** All persons residing in of the State of Illinois who purchased Acana Free-Run Poultry from June 1, 2016, to the present;

***Acana Regionals Grasslands Class:*** All persons residing in of the State of Illinois who purchased Acana Regionals Grassland from June 1, 2016, to the present;

***Acana Heritage Meats Class:*** All persons residing in of the State of Illinois who purchased Acana Heritage Meats from June 1, 2016, to the present;

***Acana Singles Pork & Squash Class:*** All persons residing in of the State of Illinois who purchased Acana Singles Pork & Squash from June 1, 2016, to the present;

***Acana Regionals Meadowland Class:*** All persons residing in of the State of Illinois who purchased Acana Regionals Meadowland from June 1, 2016, to the present;

***Acana Singles Lamb & Apple Class:*** All persons residing in of the State of Illinois who purchased Acana Singles Lamb & Apple from June 1, 2016, to the present;

***Acana Singles Wild Mackerel Class:*** All persons residing in of the State of Illinois who purchased Acana Singles Wild Mackerel from June 1, 2016, to the present;

***Orijen Six Fish Class:*** All persons residing in of the State of Illinois who purchased Orijen Six Fish from June 1, 2016, to the present;

***Orijen Original Class:*** All persons residing in of the State of Illinois who purchased Orijen Original from June 1, 2016, to the present;

***Orijen Regional Red Class:*** All persons residing in of the State of Illinois who purchased Orijen Regional Red from June 1, 2016, to the present; and

***Orijen Senior Class:*** All persons residing in of the State of Illinois who purchased Orijen Senior from June 1, 2016, to the present.

Plaintiffs seek to pursue their claims under the ICFA on behalf of the putative Classes.[5]

## V.    ARGUMENT

To obtain class certification, Plaintiffs must satisfy the requirements of Rule 23(a) and at least one of the three subsections of Rule 23(b). *Tylka v. Gerber Prods. Co.*, 178 F.R.D. 493, 496

---

[5] Excluded from these Classes are persons or entities who purchased these foods for business use or resale, governmental entities, CPF and its affiliates, subsidiaries, employees, current and former officers, director, agents, representatives, and members of this Court and its staff.

(N.D. Ill. 1998).[6] Although the Court's analysis "must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim,'" *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 465-66 (2013), "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Id.* at 466; *see also Burns v. First Am. Bank*, No. 04 C 7682, 2006 WL 3754820, at *2 (N.D. Ill. Dec. 19, 2006) ("While this preliminary inquiry into the merits allows the Court to understand the elements of the parties' claims and defenses and the nature of the evidence that must be presented to adjudicate them, the Court will not assess the ultimate merits of those claims."). Federal courts routinely recognize that consumer protection claims are well-suited for class certification. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

## A.     The Rule 23(a) Requirements

### 1.     Numerosity is Satisfied

Rule 23(a)(1) requires the class be "so numerous that joinder of all members is impracticable." *Suchanek v. Sturm Foods, Inc.* ("*Suchanek II*"), 311 F.R.D. 239, 253 (S.D. Ill. 2015). "In terms of numbers, forty often is identified as the number sufficient..." *Burns,* 2006 WL 3754820, at *7. Numerosity is easily satisfied here because between 2016 and 2018, CPF's Illinois retail sales were in the ███████████████. (ECF 95-60.)

### 2.     CPF's Uniform Conduct Establishes Numerous Common Issues of Fact and Law for All Class Members

"Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc. ("Suchanek I")*, 764 F.3d 750, 756 (7th Cir. 2014) (collecting authorities); *see also Tylka*, 178

---

[6] Here, as throughout, all emphasis is deemed added and citations and footnotes are deemed omitted unless otherwise noted.

F.R.D. at 496-97 ("where a defendant directs standardized conduct toward the class, commonality is typically found"). "A common nucleus of operative facts is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Finally, commonality exists if "the question [is] whether the [defendant's] packaging was likely to deceive a reasonable consumer is common." *Suchanek I*, 764 F.3d at 757; *Mednick v. Precor, Inc.*, 320 F.R.D. 140, 151 (N.D. Ill. 2017) ("Courts routinely find that whether a product packaging, seen by all purchasers of the product, is misleading is an issue that satisfies commonality.").

Numerous common questions drive this case based on CPF's uniform conduct to the proposed class members, including:

- Whether the Packaging Claims and Omissions are false or misleading to reasonable consumers;

- Whether the Packaging Claims and Omissions are likely to deceive reasonable consumers;

- Whether the Packaging Claims and Omissions are material to reasonable consumers;

- Whether CPF intended to induce consumers to buy the Dog Food based on the Packaging Claims and Omissions;

- Whether CPF should have disclosed the presence or material risk of heavy metals, BPA, non-fresh ingredients, or non-regional ingredients; and

- Whether Plaintiffs and class members sustained damages.

Common evidence already accepted by this Court will answer these common questions— namely, Silverman's and Boedeker's expert testimony and related consumer survey, along with CPF's packaging and internal documents. *See Benson v. Newell Brands, Inc.*, No. 19 C 6836, 2021 WL 5321510, at *2 (N.D. Ill. Nov. 16, 2021) (commonality where "[t]he nature of the scientific evidence that plaintiffs intend to present […] is common to the class."); *see also Bell v. Publix*

*Super Markets, Inc.*, 982 F.3d 468, 475 (7th Cir. 2020) (The jury will be asked whether "…the general consuming public or [] targeted consumers, acting reasonably in the circumstances, could be misled."). These questions also all hinge on CPF's uniform conduct, the Packaging Claims and Omissions which create several class-wide questions of fact for a jury to resolve using this common evidence.[7] Thus, "the claims of every class member will rise or fall on the resolution of th[ese] question[s]." *Suchanek I*, 764 F.3d at 757; *see also Benson*, 2021 WL 5321510, at *2 (Commonality found where "[t]he claims of the entire Class and Subclass derive from a single course of conduct by defendants: the labeling and marketing of NUK pacifiers."). Without a doubt, CPF ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████[8] (ECF 95-61 at -442, 451.) The commonality requirement, as in many other deceptive advertising cases, is met.[9]

### 3.    Plaintiffs' Claims Are Typical

Typicality is satisfied where the plaintiffs' claims "arise from the same events or course of conduct that give[] rise to the putative class members' claims." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018). Factual variations do not defeat typicality as long as Plaintiffs' claims have "the same essential characteristics as the claims of the class at large.'" *Suchanek II*,

---

[7] (*See* ECF 190 at 13-14, 17-23 (identifying several genuine issues of material fact relating to how a reasonable consumer would interpret the Packaging Claims and Omissions); *see also* ECF 189 at 11, 13.)

[8] CPF uses the term "BAFRINO" to reference its "Biologically Appropriate", "Fresh Regional Ingredients", and "No Outsourcing" claims. The "NO" of the acronym is not at issue here.

[9] *See Mullins v. Premier Nutrition Corp.*, No. 13-cv-01271-RS, 2016 WL 1535057, at *3 (N.D. Cal. Apr. 15, 2016) (common questions included whether product packaging was "false or likely to deceive a reasonable consumer"); *Sonner v. Schwabe N. Am., Inc.*, No. 5:15-cv-01358 VAP (SPx), 2019 WL 4266808, at *5 (C.D. Cal. July 2, 2019) (same); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 556-58 (S.D. Cal. 2012) (same); *Yamagata v. Reckitt Benckiser LLC*, No. 17-cv-03529-VC, 2019 WL 3815718, at *1 (N.D. Cal. June 5, 2019) (same); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 501-02 (S.D. Cal. 2013) (same); *Johnson v. Gen. Mills, Inc.*, 275 F.R.D. 282, 286 (C.D. Cal. 2011) (same); *Gordon v. Boden*, 586 N.E.2d 461, 465-66 (Ill. App. Ct. 1991) (same).

311 F.R.D. at 254-55. In false advertising cases, typicality is readily met because class members are all subjected to the same alleged misconduct. *See Tylka*, 178 F.R.D. at 500-01 (even though some Plaintiffs "saw different ads or may not have seen an ad at all[,]" Rule 23(a)(3) was satisfied where "purported class would be alleging the same claims[,]" inter alia, false advertising, "based on the same legal theories[.]"). Here, Plaintiffs' claims are typical as they "'…arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and [their] claims are based on the same legal theory.'" *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).

The Packaging Claims and Omissions are uniform as to each Class because each package focuses on them to induce consumers to purchase the Dog Food. *See* Section III.A-B. "BAFRINO" is regarded as CPF's "roadmap" and mandate for "being trusted by pet lovers everywhere." (ECF 95-62 at 8; ECF 95-63.) CPF's USA Retail Program Guide described its mission as:

> WE MAKE BIOLOGICALLY APPROPRIATE™ PET FOODS FROM FRESH REGIONAL INGREDIENTS FROM START TO FINISH IN OUR AWARD-WINNING KITCHENS.

(ECF 95-64 at -4616.) CPF's practices as to non-fresh and non-regional ingredients are also similar and common to the Dog Food at issue in each Class and not a single package discloses the Omissions. *See* Section III.A-B. "[T]he class members were all exposed to the exact same course of conduct by [CPF]: the…packaging." *Suchanek II*, 311 F.R.D. at 255; *see also Benson*, 2021 WL 5321510, at *3 ("Typicality is satisfied here because plaintiffs and the proposed class members are subject to the same alleged practice—defendants' uniform labeling of their pacifiers—and their claims are based on the same legal theory that the labeling was deceptive."). Plaintiffs' and class members' claims all arise from the same conduct—CPF's mislabeling of its Dog Food—and the

same legal arguments and evidence will answer the liability issues for each Class.[10] Finally, the alleged injury, paying a price premium for the Dog Food, is also identical among Plaintiffs and the members of the Classes because the injury stems from CPF's uniform misrepresentations and material omissions. Typicality is easily satisfied.

### 4. Plaintiffs and Their Counsel Are Adequate Representatives

"The adequacy requirement is satisfied when the named representatives have 'a sufficient interest in the outcome of the case to ensure vigorous advocacy' and '[do] not have interests antagonistic to those of the class.'" *Suchanek II*, 311 F.R.D. at 256. To be adequate, a plaintiff must (1) retain competent counsel; (2) have a sufficient stake in the outcome of the litigation to ensure vigorous advocacy for the class; and (3) have no conflict of interest with the class. *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 480 (N.D. Ill. June 4, 2009); *see also Fournigault v. Indep. One Mortg. Co.*, 234 F.R.D. 641, 646 (N.D. Ill. 2006) (subclass representatives met the "low standard" of adequacy).

The interests of Plaintiffs and the absent class members are fully aligned as they "all have the same interest in proving the…[CPF] packaging was unfair or deceptive." *Suchanek II*, 311 F.R.D. at 257. Each Class is defined to include members who purchased the same Orijen or Acana Diet bearing the same Packaging Claims with no disclosure of the material Omissions. *See supra* Sections III.A; IV. Their claims will rise or fall on whether the Packaging Claims are untrue, deceptive, or misleading. Plaintiffs are adequate representatives. There is no dispute that class counsel are qualified lawyers experienced in the successful prosecution of class actions, and their respective firm resumes set forth their experience and expertise in the management and leadership of class action litigation. Exs. 3-8. These firms have already undertaken substantial work in this

---

[10] (*See* ECF 190 at 13 (whether liability as to Champion "based on these claims, when considering the evidence proffered here, is a question for the jury.").)

litigation and will continue to devote the resources necessary to see this case through to a successful outcome. Rule 23(a)'s adequacy requirement is satisfied.

## B.    Rule 23(b)(3) Is Satisfied

"In addition to satisfying the four requirements in Rule 23(a), a class also must fall within one of the Rule 23(b) categories." *Burns*, 2006 WL 3754820, at *9. A class may be certified under Rule 23(b)(3) if "the questions of law or fact predominate over any questions affecting individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### 1.    Predominance

The "'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation'…[a]nd…'common issues need only predominate, not outnumber individual issues.'" *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 802 (7th Cir. 2013). "[P]redominance of common *questions*" does not require proof that these questions will be answered "in favor of the class." *Amgen*, 568 U.S. 459, 460 (emphasis in original). As Judge Posner observed, "predominance… 'is a question of efficiency.'" *Butler*, 727 F.3d at 800. "[T]he existence of individual issues does not automatically defeat certification." *Burns,* 2006 WL 3754820, at *9. Thus, predominance is satisfied when "common questions represent a significant aspect of a case and…can be resolved for all members of a class in a single adjudication." *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 925 (7th Cir. 2016) (alteration in original); *Butler,* 727 F.3d at 801.

#### a.    Illinois Consumer Fraud Act

Plaintiffs' ICFA claim requires proof that (1) the defendant undertook a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of trade and commerce; (4) actual damage to the plaintiff occurred; and (5)

the damage complained of was proximately caused by the deception. (ECF 47 at 12 (citations omitted); ECF 190 at 9.) The ICFA does not require a showing of reliance and thus is no obstacle to class certification. *Tylka*, 178 F.R.D. at 499; *IWOI, LLC v. Monaco Coach Corp.*, 581 F. Supp. 2d 994, 1002 (N.D. Ill. 2008). "The 'test for the deceptiveness of a representation is keyed to a reasonable consumer, and deceptiveness is evaluated specifically in light of all the information available to the consumer.'" (ECF 190 at 10); *Bell*, 982 F.3d at 474-75. Indeed, "[w]hat matters most is how real consumers understand and react to the advertising." *Bell*, 982 F.3d at 476. And importantly, the determination of

> "whether a claim is either 'false' or 'misleading' is an issue of fact rather than law."…It is not for the judge to determine, based solely upon his or her own intuitive reaction, whether the advertisement is deceptive." Rather, the question is "what does the person to whom the advertisement is addressed find to be the message? That is, what does the public perceive the message to be?"

*Id.* at 479.

Here, all the elements of the ICFA claim involve predominant common questions that will be answered by the jury with class-wide evidence as to each proposed Class. Section V.A.2. The question of liability focuses entirely on CPF's uniform conduct and as the Packaging Claims and Omissions, like the claims of many ICFA cases, "w[ere] made to all putative class members, Illinois courts have concluded that causation is susceptible of class-wide proof and that individualized inquiries concerning causation do not predominate." *Rikos v. Procter & Gamble Co.,* 799 F.3d 497, 514 (6th Cir. 2015); *Tylka*, 178 F.R.D. at 499, 502 (finding predominance and certifying ICFA claims).

Plaintiffs' claims will stand or fall with respect to the Classes, rather than succeed as to some members of a Class but not for others. *See, e.g.*, *Suchanek*, 2018 WL 6617106, at *16 (a jury can determine deceptiveness under ICFA on a class-wide basis). For this reason, similar consumer cases have been certified. *See Mednick*, 320 F.R.D. at 152 (certifying multi-state class that included

21

ICFA claim with common "reasonable consumer" standard); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1001 (C.D. Cal. 2015) (certifying ICFA claims); *Clark v. Tap Pharm. Prods., Inc.*, 798 N.E.2d 123, 132 (Ill. Ct. App. 2003) (affirming certification of ICFA classes); *Morse v. Bankers Life & Cas. Co.,* No. 99-cv-0193, 2000 WL 246245, at *5-6 (N.D. Ill. Feb. 24, 2000) (certifying ICFA claims); *In re Dial Complete Mktg. & Sales Practices Litig.*, 312 F.R.D. 36, 65-66 (D.N.H. 2015) (same). Specifically, common evidence will be used to answer, on a class-wide basis, whether: (1) CPF made misrepresentations on, and omissions from, its Dog Food packaging; (2) the Packaging Claims and Omissions are material or likely to deceive a reasonable consumer, and (3) CPF had a duty to disclose. Plaintiffs can establish that the Packaging Claims are uniform since they did not vary during the class period for each Class (June 1, 2016, to the present). Sections II,III.A. The common evidence of the expert opinions of Boedeker and Silverman will demonstrate materiality of the Packaging Claims class-wide. (*See generally* ECF 95-18 at ¶¶32(c)-(e), 84, 121; ECF 95-71 at ¶¶179-180, Figures 12-23, Table 15; ECF 190 at 17-18, 20-23.) Other common evidence of materiality comes in the form of CPF's own internal documents that show CPF understood its "fresh" and "regional" packaging promises are a "great asset," and is its "biggest opportunity" and that it drove sales. S*ee* Section III.B.1. Finally, common evidence of both internal documents and testimony will show CPF knew the real risk of heavy metals and other contaminants like BPA but chose to conceal that information from consumers. *See* Sections III.B.2-3. This evidence demonstrates the Packaging Claims and Omissions are material to a reasonable consumer on a class-wide basis.

This same common evidence is relevant to CPF's duty to disclose as it shows (1) uniform partial representations are misleading because CPF failed to disclose material omissions (the risk of and/or inclusion of heavy metals, BPA, and non-fresh ingredients), and (2) CPF had and

continues to have exclusive knowledge of the physical and chemical make-up of the Dog Food, as well as its manufacturing practices and policies, and its testing protocol for ingredient suppliers. (ECF 68 at ¶¶26, 196, 208-210.) This is sufficient common evidence for a class-wide determination on a duty to disclose. *See Mullen v. GLV, Inc.*, 330 F.R.D. 155, 166 (N.D. Ill. 2019) ("whether the defendants had an affirmative duty to disclose his alleged misconduct may similarly be resolved for the entire class at once"); *Robert J. Kowalski, P.C. v. N. Trust Co.*, No. 84 C 1087, 1985 WL 3935, at *3 (N.D. Ill. Nov. 13, 1985) (same); *Swanagan v. Al Piemonte Ford Sales, Inc.*, No. 94 C 4070, 1995 WL 493480, at *6 (N.D. Ill. Aug. 15, 1995) (finding statutory duty to disclose under ICFA and certifying claims). This case easily satisfies the predominance requirement.

### b. Damages

When looking at predominance, the Seventh Circuit instructs that "the court should begin with a 'rigorous analysis' into whether the plaintiffs' 'damages are susceptible of measurement across the entire class.'" *Suchanek I*, 764 F.3d at 760. Class damages must be "the result of the class-wide injury that the suit alleges." *Butler*, 727 F.3d at 799; *see also Mullins v. Direct Digital, LLC*, 795 F.3d 654, 671 (7th Cir. 2015) ("[T]he method of determining damages must match the plaintiff's theory of liability and be sufficiently reliable."). "Calculations need not be exact, but at the class-certification stage (as at trial), any model supporting a 'plaintiff's damages case must be consistent with its liability case[.]'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). It is not necessary to show that every class member has identical damages and, as the Seventh Circuit has clearly held:

> If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings…, the fact that damages are not identical across all class members should not preclude class certification. Otherwise defendants would be able to escape liability for tortious harms of enormous aggregate magnitude but so widely distributed as not to be remediable in individual suits.

*Butler*, 727 F.3d at 801.

Where expert testimony is critical to the class certification determination, district courts in this Circuit may resolve expert challenges by performing a full analysis under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) before deciding whether to certify the class first. *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815–16 (7th Cir. 2010) ("We hold that when an expert's report or testimony is critical to class certification, as it is here […] a district court must conclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on a class certification motion. That is, a court should perform a full *Daubert* analysis before certifying the class if the situation warrants."). This Court has done just that and concluded Boedeker's choice-based conjoint ("CBC") study and testimony are admissible and satisfy the analysis in *Daubert*. (ECF 189 at 4-10.)[11] This Court's rigorous *Daubert* analysis supports a finding that Plaintiffs' damages model satisfies Rule 23(b)(3). Boedeker's "price premium theory based on a conjoint analysis is an acceptable method for computing damages" (satisfying *Suchanek I*) and his damages estimates are "consistent with Plaintiffs' theory of damages that the harm is the premium they paid." (*Id.* at 8-9.) This law of the case satisfies *Comcast*.[12]

---

[11] *See also In re Fisher-Price Rock 'N Play Sleeper Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 1:19-MD-2903, 2021 WL 4988186, at *5-7 (W.D.N.Y. Oct. 19, 2021) (conjoint analysis satisfies *Daubert* criteria).

[12] *See Milan v. Clif Bar & Co.*, No. 18-CV-02354-JD, 2021 WL 4427427, at *6-7 (N.D. Cal. Sept. 27, 2021) (denying *Daubert* motion and finding Rule 23(b)(3) predominance requirement satisfied where conjoint analysis sufficient under *Comcast*); *see also Testone v. Barlean's Organic Oils, LLC,* No. 19-CV-169 JLS (BGS), 2021 WL 4438391, at *15-18 (S.D. Cal. Sept. 28, 2021) (Rule 23(b)(3) predominance requirement satisfied where proposed damages model would use conjoint analysis sufficient under *Comcast*); *Earl v. Boeing Co.,* 339 F.R.D. 391, 441-42 (E.D. Tex. 2021) (Rule 23(b)(3) predominance requirement satisfied where plaintiffs' damages model would use conjoint survey sufficient under *Comcast*, and in denying defendant's *Daubert* motions, found defendant's repeating of its arguments from their *Daubert* motions unpersuasive); *Allegra v. Luxottica Retail N. Am.*, No. 17CV5216PKCRLM, 2022 WL 42867, at *60-61 (E.D.N.Y. Jan. 5, 2022) (plaintiffs' damages model incorporating conjoint analysis was admissible under *Daubert* and was sufficient under *Comcast*).

Boedeker designed and conducted a CBC study to quantify the economic losses suffered by Plaintiffs and the Classes as a result of the Packaging Claims and Omissions. (ECF 95-71 at ¶12.) Using the CBC study, which combines an empirical survey and statistical analysis of the results, Boedeker was able to "calculate class-wide damages if [CPF] had disclosed [the] misrepresentations and omissions at the point of purchase." (*Id.*)

In a CBC study, survey respondents are shown product profiles with different levels of product attributes based on the idea that "consumers' preferences for a particular product are driven by attributes, features or descriptions/advertisements of attributes/features embodied in that product." (*Id.* at ¶¶61, 65.) Those product profiles included the Packaging Claims and Omissions. (*Id.* at ¶¶116, 121, Tables 5-7.) Boedeker conducted four conjoint surveys: one that showed respondents an Orijen Diet package to test the Orijen Packaging Claims; one that showed respondents an Acana Diet package to test the Acana Packaging Claims; one that tested the Omissions as to Orijen; and one that tested the Omissions as to Acana. (*Id.* at ¶¶116-140.) Each survey used price as an attribute based on the real-world prices of the diets at issue. (*Id.* at ¶123.)

Using these survey results, Boedeker then "applied a market simulation to estimate the economic loss associated with purchased [CPF's] product when it is revealed at the time and place of purchase that there were misrepresentations and certain key information had been omitted from the product." (*Id.* at ¶163.) From this, he calculated the change in market value corresponding to each Packaging Claim and Omission.

| | Attribute | Market Value or Price Premium |
|---|---|---|
| **Survey 1: Orijen Misstatements** | Biologically Appropriate | 10.8% |
| | Fresh | 15.2% |
| | Fresh & Regional | 15.2% |
| | Regional | 13.3% |
| | Nourish as Nature Intended | 10.9% |
| **Survey 2: Orijen Omissions** | Expired | 20.4% |
| | Heavy Metals | 43.4% |

|  | Attribute | Market Value or Price Premium |
|---|---|---|
|  | BPA | 28.8% |
|  | Regrinds | 9.7% |
| Survey 3: Acana Misstatements | Biologically Appropriate | 9.6% |
|  | Fresh | 14.0% |
|  | Fresh & Regional | 15.0% |
|  | Regional | 12.1% |
|  | Delivering Nutrients Naturally | 11.8% |
| Survey 4: Acana Omissions | Expired | 28.3% |
|  | Heavy Metals | 58.4% |
|  | BPA | 39.9% |
|  | Regrinds | 14.6% |

(ECF 95-71 at ¶163; Table 15.) Boedeker determined the change in market value that corresponds to each combination of Packaging Claims and Omissions.  (*Id.* at ¶169 (citing Appendix 4).)

Plaintiffs' damages model directly tracks their theory of the case—that Plaintiffs paid more for the Dog Food than they otherwise would have had they known the truth about the Packaging Claims and Omissions—and determines the price premium attributable to each of those Packaging Claims and Omissions, both alone and in combination with one another. (ECF 189 at 8-9.)[13] As this Court ruled, regarding Boedeker's damages model, "a price premium theory based on a conjoint analysis[,] is an **_acceptable method for computing damages_**." (*Id.* at 9.) It certainly satisfies *Comcast* and measures "only those damages attributable" to Plaintiffs' theory of liability. 569 U.S. at 35.  Federal courts across the country, including within this Circuit, have accepted class-wide damages models based on surveys. *See*, *e.g.*, *Suchanek II*, 311 F.R.D. at  246-48 (consumer survey was sufficiently reliable to support expert's opinion); *Hawes v. Macy's Stores*

---

[13] *See also In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, ("Fluidmaster"), No. 14-CV-5696, 2017 WL 1196990, at *57 (N.D. Ill. Mar. 31, 2017) ("A damages calculation that reflects the difference between the market price of the product as represented and as delivered is neither novel nor problematic from a class certification perspective."); *Kramer v. Am. Bank & Tr. Co., N.A.*, No. 11 C 8758, 2017 WL 1196965, at *8 (N.D. Ill. Mar. 31, 2017), *adhered to on reconsideration*, No. 11-CV-08758, 2018 WL 4052162 (N.D. Ill. Aug. 24, 2018) (finding Rule 23(b)(3)'s predominance requirement and *Comcast* were satisfied where the damages model "would measure only those damages attributable to the claimed violations" of law).

*W., Inc.*, No. 1:17-CV-754, 2022 WL 194407, at *4-7 (S.D. Ohio Jan. 22, 2022) (denying defendant's motion to exclude Boedeker's proposed conjoint damages model, finding it a "reliable, broadly-accepted method to calculate class-wide damages"); *Flynn v. FCA US LLC*, 327 F.R.D. 206, 225 (S.D. Ill. 2018) (use of an "enhanced" form of conjoint survey analysis was sufficient for plaintiffs to "[meet] their burden of showing a proposed class-wide damage calculation that is consistent with their theory of liability."); *Fluidmaster*, 2017 WL 1196990, at *57 ("a 'price premium' theory based on a conjoint analysis has been accepted by several courts."); *Cardenas v. Toyota Motor Corp.*, No. 18-22798-CIV, 2021 WL 5811741,at *13 (S.D. Fla. Dec. 6, 2021); *ConAgra*, 90 F. Supp. 3d at 1031-32; *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 413-15 (S.D.N.Y. 2015) (accepting a proposed conjoint analysis); *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 567, 576 (N.D. Cal. 2020) (accepting damages model based on a CBC study).

### 2. Superiority

When assessing superiority, "the [C]ourt needs to assess the difficulty and complexity of the class-wide issues as compared with the individual issues." *Suchanek I*, 764 F.3d at 760. The class action mechanism is superior here. The common issues identified above "will be the most complex and costly to prove, while the individual issues and the information needed to prove them will be simpler and more accessible to individual litigants." *Id.* False labeling lawsuits "are cases where the class device is often essential 'to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'" *Mullins*, 795 F.3d at 658; *see also Benson*, 2021 WL 5321510, at *5 ("[C]lass-wide objective issues and questions focusing on defendants' conduct are the driving issues that predominate over individual ones and [] class action treatment is the superior way to litigate [Plaintiffs'] claims… The central issue in the case is whether defendants' packaging and marketing was likely to mislead a reasonable consumer."). Absent class treatment, individuals would be forced to present the same

legal and factual arguments in numerous trials. "For these reasons, it would be extraordinarily duplicative and wasteful of the time and resources of both the Court and the parties to litigate this question in individual cases." *Suchanek II*, 311 F.R.D. at 259. Resolving the few individual issues in this case "does not make the class format unmanageable or support the denial of class certification." *Id.* These issues—such as the amount of Dog Food purchased—are simplistic and easily resolved through attestations from class members. *Id.* at 259-60. It therefore "'makes good sense' to resolve the common issue of liability 'in one fell swoop.'" *Id.* at 260. Superiority is satisfied.

### C.     Rule 23(b)(2) Certification Is Also Appropriate

Plaintiffs also seek Rule 23(b)(2) certification to prohibit the future sale of dog food with misleading Packaging Claims and Omissions. "When a class seeks an indivisible injunction benefitting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute. Predominance and superiority are self-evident." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 362-63 (2011). "[T]here is no language in Rule 23(b) which expressly limits its remedies to either sections (1), (2), or (3) of Rule 23(b)." *Tylka*, 178 F.R.D. at 501-02. CPF uniformly makes the Packaging Claims and Omissions on its Dog Food in violation of the ICFA. Much like in *Tylka*, Plaintiffs allege that CPF sold mislabeled products in untrue, deceptive, and misleading packages; these actions, if true, are in direct opposition to the Classes. *Id.* at 501. And as the requested injunctive relief here would prohibit CPF's actions that "are alleged to be equally applicable to the entire class," "if successful, [it] would prohibit the alleged misrepresentations as to all class members." *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 698 (N.D. Cal. 2021). Rule 23(b)(2) certification is proper. *Saltzman*, 257 F.R.D. at 483.

### D. In the Alternative, Rule 23(c)(4) Issues Class Should Be Certified

Rule 23(c)(4) allows certification of liability or other distinct issues common to the class and bifurcate cases into liability and damages phases. *See McMahon v. LVNV Funding, LLC*, 807 F.3d 872, 876 (7th Cir. 2015); *Suchanek I*, 764 F.3d at 756 ("It is routine in class actions to have a final phase in which individualized proof must be submitted."). To this end, the Seventh Circuit has urged that, "where it is class treatment or nothing, the district court must carefully explore the possible ways of overcoming [class certification] problems." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 776 (7th Cir. 2013); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).

If this Court determines the requirements of Rule 23(b)(3) are not met, Rule 23(c)(4) certification is proper. The Court should certify the issues of whether CPF (1) made material misrepresentations and omissions, (2) was aware of the falsity of its representations and that it was making material omissions, (3) had a duty to disclose, and/or (4) that these representations and omissions had the likelihood or capacity to deceive a reasonable consumer. Certifying the Classes "with respect to particular issues" means that the Court can "'carve at the joint' [by]…deciding some issues on a class wide basis and leaving others for individualized determinations." *Mednick*, 320 F.R.D. at 143; *see also In re FCA US LLC Monostable Elec. Gearshift Litig.*, 334 F.R.D. 96, 110 (E.D. Mich. 2019), clarified on denial of reconsideration, 340 F.R.D. 251, 254 (E.D. Mich. 2022) (certifying three issue classes "to retain a case's class character where common questions predominate within certain issues and where class treatment of those issues is the superior method of resolution.").

Certifying these four issues would advance the resolution of this action, economize judicial resources, and provide a more efficient mechanism than repeated litigation of these issues. *See, e.g.*, *Stickles v. Atria Senior Living Inc.*, No. C 20-09220 WHA, 2021 WL 6117702 at *7-10 (N.D.

Cal. Jan. 20, 2022) (issue certification appropriate because "common questions predominate" as to the issue, adjudication of the issue will "significantly advance resolution of the case[,]" and there were "no superior procedural alternatives"); *Weidman v. Ford Motor Co.,* No. 18-CV-12719, 2022 WL 1071289, at *15 (E.D. Mich. Apr. 8, 2022) ("Resolving the certified issues could resolve every claim against" the Defendant 'in one fell swoop'."). These issues all depend on the same, non-individualized evidence that is far too costly for class members to compile and litigate on their own, and which would clog dockets if separately adjudicated. Even certification of a single issue can materially advance the ball for the Classes. For example, the issue of materiality is largely buttressed by expert opinion and CPF's documents—evidence that is common to each Class and that each Class should be able to collectively benefit from in a single proceeding. *See Endo v. Albertine*, 147 F.R.D. 164, 173 (N.D. Ill. 1993) (certifying "the issue of whether or not the alleged misstatements and omissions are material"); *In re Allstate Ins. Co.*, 400 F.3d 505, 508 (7th Cir. 2005) (suggesting partial certification of a Rule 23(b)(3) class "to determine whether Allstate had a policy of forcing its employee agents to quit," followed by "individual hearings…to determine which of the members of the class were actually affected by the policy," would be "a more efficient procedure than litigating the class-wide issue [] in more than a thousand separate lawsuits"); *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 559-60 (N.D. Ill. 2015) (individual subjective inquiries do not defeat certification). Accordingly, this Court should certify liability or any of the core liability issues common to the Classes pursuant to Rule 23(c)(4).

## VI. CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion for class certification.

30

Dated: May 24, 2022               LOCKRIDGE GRINDAL NAUEN P.L.L.P.

By: /s/ Rebecca A. Peterson
ROBERT K. SHELQUIST, *Pro Hac Vice*
REBECCA A. PETERSON, *Pro Hac Vice*
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rapeterson@locklaw.com
        rkshelquist@locklaw.com

WEXLER BOLEY & ELGERSMA LLP
KENNETH A. WEXLER
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Tel: (312) 346-2222
Fax: (312) 346-0022
Email: kaw@wbe-llp.com

WEXLER BOLEY & ELGERSMA LLP
MARK T. TAMBLYN, Pro Hac Vice
333 University Avenue, Suite 200
Sacramento, CA 95825
Tel: (916) 565-7692
Email: mjt@wbe-llp.com

ROBBINS LLP
KEVIN A. SEELY (199982)
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: kseely@robbinsllp.com

GUSTAFSON GLUEK, PLLC
DANIEL E. GUSTAFSON, *Pro Hac Vice*
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
E-mail: dgustafson@gustafsongluek.com

CUNEO GILBERT & LADUCA, LLP
CHARLES J. LADUCA
4725 Wisconsin Avenue NW, Suite 200
Washington, D.C. 20016
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
E-mail: charles@cuneolaw.com

LITE DEPALMA GREENBERG & AFANADOR, LLC
JOSEPH J. DEPALMA
SUSANA CRUZ HODGE
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
E-mail: jdepalma@litedepalma.com
          scruzhodge@litedepalma.com

**Attorneys for Plaintiffs**

<u>**CERTIFICATE OF SERVICE**</u>

I, Rebecca A. Peterson, hereby certify that on May 24, 2022, I caused to be electronically

filed the foregoing **Memorandum of Law in Support of Motion for Class Certification** with

the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all

counsel of record.

/s/ Rebecca A. Peterson
Rebecca A. Peterson
